# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM TORAIN<br>　　　Plaintiff<br>　　vs.<br>THE CITY OF PHILADELPHIA, et al.<br>　　　Defendants | :<br>:<br>: C.A. 14-1643<br>:<br>: |

## ORDER

**AND NOW,** this　　　day of　　　　　, 2021, upon consideration of Plaintiff's Motion to Compel, and any response thereto, it is hereby **ORDERED and DECREED** that Plaintiff's Motion to Compel is **GRANTED.** It is further **ORDERED** that the Confidential Informant file and all Confidential Informant Payment Vouchers must be produced for deposition within 5 days.

BY THE COURT:

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KAREEM TORAIN | : |
|---|---|
| Plaintiff | : |
| vs. | : C.A. 14-1643 |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendants | : |

## PLAINTIFF, KAREEM TORAIN'S MOTION TO COMPEL

Plaintiff, Kareem Torain, by and through his counsel, Michael Pileggi, hereby files his Motion to Compel. Plaintiff's accompanying Memorandum of Law in Support of serves as Plaintiff's motion.

Respectfully submitted,

_____mp6391_____
MICHAEL PILEGGI, ESQUIRE
Attorney for Plaintiff, Kareem Torain

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KAREEM TORAIN | : |
| Plaintiff | : |
| vs. | : C.A. 14-1643 |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendants | : |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Kareem Torain, by and through his counsel, Michael Pileggi, hereby files his Memorandum of Law in Support of Motion to Compel.

## I. INTRODUCTION

On March 20, 2014, Kareem Torain filed his Complaint pursuant to *42 U.S.C. § 1983* for violations of his civil and constitutional rights. More specifically, Plaintiff's Complaint avers as grounds for the § 1983 violations when he was falsely arrested and maliciously prosecuted by individual Defendants Philadelphia Police Officers Brian Monaghan, Brian Reynolds, Sean Kelly, Corporeal Sinclair and former Police Officer Jeffrey Walker. Further, Plaintiff also brings claims under a theory of municipal liability pursuant to *Monell v Department of Social Services*, 436 U.S. 658, 690-91, 694 (1978) against the City of Philadelphia. Discovery in this matter concludes December 3, 2021.

## II. FACTS

In or around January, 2001, Defendant Monaghan, a member of the Narcotics Field Unit received information from a *confidential source* regarding narcotic activity in the area of 5600 block of West Master Street, Philadelphia, Pennsylvania. Defendant Monaghan was the Affiant of the Affidavit of Probable Cause. According

to the *confidential source*, a property located at 5609 West Master Street was being used to package narcotics; a property located at 5607 West Master Street was being used as a stash house and sales of narcotics were being made from a front porch of a property located at 5605 West Master Street. According to the Affidavit of Probable Cause two black males identified as "Al" and "Pud" were involved in the narcotic activity.

On January 3, 2001 and January 4, 2001, members of the Narcotics Field Unit, including Defendants Monaghan, Walker, Kelly and Reynolds set up surveillance at the locations of 5605, 5607 and 5609 West Master Street and allegedly observed the exchange of small items between several individuals the police believed to be engaging in illegal activity. According to the Affidavit of Probable Cause, on January 4, 2001, Defendant Walker followed a Green Bonneville, license plate number ***DKC3310*** driven by Plaintiff Kareem Torain, from 56th and Master to a property located at 1621 North Conestoga Street where Defendant Walker observed Plaintiff exit his vehicle and enter the property. Police did not observe Plaintiff engage in any illegal activity. The Affidavit of Probable Cause further swears that approximately 20 minutes later Defendant Reynolds observed Plaintiff exit 1621 S. Conestoga Street and drive to the 1600 block of North 55th Street, exit his vehicle and enter the front door of the property located at 1628 South 55th Street. This building is a rooming house consisting of several apartments. The Affidavit of Probable Cause further swears that a short time later Defendant Walker observed three individuals enter 1628 S. 55th Street. Twenty minutes later the three individuals exited 1628 S. 55th Street where Defendant Reynolds allegedly saw one of these individuals looking at a "golf

ball" sized package of narcotics and then drove from the scene, followed by Defendant Reynolds. Defendant Walker remained at the scene continuing his surveillance of 1628 S. 55th Street. At 2:58 p.m. Plaintiff left 1628 N. 55th Street and drove the Green Bonneville *DKC3310*, which was then followed by Defendant Reynolds. Plaintiff's vehicle was stopped by Defendant Reynolds and Plaintiff was placed under arrest. No narcotics or contraband were confiscated from Plaintiff. Despite the fact that Defendants never observed Plaintiff engage in any illegal activity or had any narcotics or other contraband, Plaintiff was arrested and processed at 55th and Pine. According to Defendant Reynolds, a key was recovered from Plaintiff that was used later that day to enter Apartment #2 at 1628 S. 55th Street, before police procured a search warrant.

On January 4, 2000, Plaintiff was arrested and charged with possession with intent to deliver a controlled substance, weapon charges, conspiracy and other related offenses. On May 7, 2002, following a bench trial, Kareem Torain was convicted of possession with intent to deliver a controlled substance, knowing and intentional possession of a controlled substance, possession of an instrument of crime, possession of drug paraphernalia, and criminal conspiracy. The verdict in Plaintiff's criminal trial hinged in large part on the false and misleading testimony of Officer Walker and Officer Reynolds regarding Plaintiff's arrest in addition to the false and misleading information contained in the search warrant as attested to by Defendant Monaghan. The verdict in Plaintiff's criminal trial hinged in large part on the false and misleading information contained in the Affidavit of Probable Cause. On September 26, 2003, Plaintiff was sentenced to a mandatory term of five to ten years in prison on

the drug charge, a consecutive term of five to ten years for criminal conspiracy, and a consecutive term of two and one-half years for possession of an instrument of crime.

On October 7, 2002, Plaintiff filed post-sentence motions. Plaintiff's post-sentence motions were denied on March 6, 2003. He filed a direct appeal to the Superior Court of Pennsylvania. The Superior Court affirmed Plaintiff's judgment of sentence on September 6, 2005. The Pennsylvania Supreme Court denied further review on March 31, 2006.

On October 6, 2006, Plaintiff filed a petition under the Post-Conviction Relief Act (PCRA). On December 28, 2007, an Amended PCRA was filed followed by two supplemental petitions on December 12, 2008 and July 16, 2009, respectively. On February 28, 2014, after remaining incarcerated for over thirteen (13) years, Plaintiff's May 7, 2002 conviction was reversed.

On March 20, 2014, Kareem Torain filed his Complaint pursuant to *42 U.S.C. § 1983* for violations of his civil and constitutional rights. Plaintiff's case is one of many similar cases and has been consolidated. Ultimately, close to 200 related cases involving these Philadelphia Police Officers as well as other police officers were consolidated and twelve (12) Bellwether cases were chosen to be tried first. This case is included in the twelve Bellwether cases.

During discovery, Plaintiff it was revealed that the investigation conducted by the Defendants in this case (*Torain* case) and which ultimately led to Plaintiff's arrest actually was a continuation of a prior investigation, arrest and prosecution of Dennis Freeman. See (*U.S. v Dennis Freeman*, 2-00-cr-00692-001) (*Freeman* case). Dennis Freeman and several other individuals were arrested and prosecuted after a

"concerned citizen" provided information that Freeman and others were involved in narcotic activity in an around the same area as the Torain investigation. See a copy of Freeman Investigation Report attached hereto as Exhibit "1". Dennis Freeman was arrested on August 30, 2000, 4 months prior to the *Torain* arrest. Defendant Reynolds was the affiant on the *Freeman* case. According to Defendant Reynolds in *Freeman*, a "concerned citizen" provided the information that led to the arrest of Freeman. *Id.* It has now been discovered that this person named by Defendant Reynolds as a "concerned citizen" in the *Freeman* case, is the same person designated as a "confidential source" in the *Torain* case. Further, **plaintiff** has discovered the identity of this individual as well as other disturbing facts about the use of this individual by police. Plaintiff discovered that this *concerned citizen/confidential source* had been providing information and making many narcotic buys (approximately 275 buys) before he was ever signed up as a confidential informant. (Plaintiff has discovered that this individual was later signed up as a confidential informant during the pendency of the *Freeman* prosecution and only after the Court expressed concern about this person. Judge Robert Kelly ordered the disclosure of the individual's information to the defense, as well as an interview with this individual by defense attorneys). In addition, he was being paid by police for the information he provided and the buys that he made as a concerned citizen/confidential source. He had a prior criminal record for narcotic violations and even had a known outstanding warrant while providing information and participating in both the *Freeman* and *Torain* investigations. See letter from Michael Pileggi to Anne Taylor, dated November 1,

2021 attached hereto as Exhibit "2". Lastly, the parties agree that this person is now deceased and therefore no confidentiality or security concerns.

In sum, the *Torain* investigation was merely a continuation of the *Freeman* investigation. Ultimately Plaintiff discovered that the Green Bonneville license plate number ***DKC3310*** that Plaintiff was arrested driving was the same vehicle driven by an unknown black male in the *Freeman* case. See Exhibit "1". This unknown person (the only individual not ever apprehended) was observed by Defendant Reynolds in *Freeman*. Defendant Reynolds was the arresting officer of Plaintiff. In part, the nexus between the *Freeman* and *Torain* arrests is the concerned citizen/confidential source.

Plaintiff has been requesting the confidential informant file of Robert Morris and any Confidential Informant Vouchers that were used to pay this individual for several weeks. The City of Philadelphia has refused to produce this information, even though, similar information regarding confidential informants has been produced in other Bellwether cases in 2015. See NFU Discovery Log attached hereto as Exhibit "3". This information is germane to the credibility of the Defendant police officers, as well as to Plaintiff's *Monell* claim involving the misuse of informants.

Plaintiff's Motion to Compel the production of the identity of the concern citizen/confidential source/confidential informant, Mr. Morris' Confidential Informant file and all Confidential Informant Payment Vouchers associated with work Mr. Morris did for the Philadelphia Police Department in general and the individual Defendants in particular now follows.

## III. ARGUMENT

Rule 26(b) (1) of the Federal Rules of Civil Procedure supplies the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C). Fed.R.Civ.P. 26(b)(1).

Issues relating to the scope of discovery permitted under the Rules are to be resolved, almost exclusively, at the discretion of the Court. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. *Marroquin-Manrizuez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

Rule 33 of the Federal Rules of Civil Procedure provides for discovery through written interrogatories. Rule 33(a)(2) specifically states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). Fed.R.Civ.P. 33(a)(2). The Rule further directs that, in the case of a corporate party, the interrogatories must be answered by "any officer or agent, who must furnish the information available to the party." Fed.R.Civ.P. 33(b)(1)(B). Rule 34, in turn, provides similar and additional requirements with respect to requests for the production of documents in the "responding party's possession, custody, or control." Fed.R.Civ.P. 34(a)(1).

Rule 37 authorizes a party to move to compel disclosure if the discovery propounding discovery believes that it has received incomplete or inadequate answers to discover authorized under Rule 26. Fed.R.Civ.P. 37. With respect specifically to requests for production of documents and interrogatories, Rule 37 provides:

> (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
> ...
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>
> (iv) a party fails to respond that inspection will be permitted-or fails to permit inspection-as requested under Rule 34. Fed.R.Civ.P. 37(a)(3)(B).

Rule 37 further states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). Rule 37(a) further provides that if a court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the moving party's fees unless, *inter alia,* the movant filed the motion without attempting in good faith to obtain the discovery without resorting to court action, or where other circumstances make an award of expenses unjustified. Fed.R.Civ.P. 37(a)(5)(A).

Set against these standards, the Defendants have totally failed to respond to the outstanding request for production of documents.

## IV. CONCLUSION

In light of the above, Defendant should be ordered to provide full, complete and unobjected responses to Plaintiff's request for the Confidential Informant file and Confidential Informant Payment Vouchers within 5 days.

Respectfully submitted,

_____mp6391_____
MICHAEL PILEGGI, ESQUIRE
Attorney for Kareem Torain

EXHIBIT "1"

## CONTINUATION OF SEARCH AND SEIZURE WARRANT #97334

P/O REYNOLDS #4268 RECEIVED INFO. FROM A CONCERNED CITIZEN REGARDING THE ILLEGAL SALES NARCOTICS ON THE HIGHWAY OF 5500 LANSDOWNE AVE. (NORTHEAST CORNER OF ALLISON ST. & LANS AVE.) THE CONCERNED CITIZEN FUTHER STATED THE NARCOTICS FOR THE OPERATION ARE STORED AT JEFFERSON ST. THERE ARE SEVERAL B/M'S INVOLVED IN THE OPERATION & THERE NAMES ARE DENNI FREEMAN, HIS BROTHER JAMIE OR JAMMY, LEROY. THEY ALSO HAVE SEVERAL STREET WORKERS THAT THE CORNER OF ALLSION ST & LANSDOWNE AVE. THE CONCERNED CITIZEN FUTHER STATED THAT THE ALSO HAVE DIFFERENT VEHICLES THAT ARE USED FOR THE OPERATION. THEY ARE AS FOLLOWED: DEN FREEMAN DRIVES A BLACK MERC. BENZ PA #DKK2310, HIS BROTHER JAMIE OR JAMMY DRIVES A TAN ESCALADE PA #DKK2312, & LEROY DRIVES A BLACK JEEP GRAND CHEROKEE. THE BLACK JEEP GRAND CHEROKEE IS ALSO USED TO PICK-UP USC FROM THE STREET DEALERS & DROP OFF BUNDLES OF NARC TO THE STREET DEALER THAT THEY GET FROM 5412 JEFFERSON ST. THERE IS ALSO A BLACK BUICK W/ TINTED WINDOWS THAT THEY USE SOMTIMES.

ON 8/30/00 AT APPROX. 2:00PM P/O REYNOLDS #4268 CONDCUTED A SURVEILLANCE AT 5412 JEFFER ST. FOR ILLEGAL ACTIVITY. AT APPROX. 2:08PM P/O REYNOLDS #4268 RECEIVED INFO. FROM P/O #7126 THAT THE BLACK MERC. BENZ PA #DKK2310 JUST PARKED ON 55TH ST. BETWEEN JEFFERSON & LANCASTER AVE. & B/M #1(I'D DENNIS FREEMAN) EXITED WITH A BLACK PLASTIC BAG IN HIS HAND LOOKED AROUND BEFORE GOING INTO 5412 JEFFERSON ST. ONCE (DENNIS FREEMAN) CAME ONTO THE BLOCK OF JEFFERSON ST. P/O REYNOLDS #4269 OBSERVED (DENNIS FREEMAN) THEN GO INTO THE PR OF 5412 JEFFERSON ST. CARRYING THE BLACK PLASTIC BAG. AT APPROX. 2:45PM P/O REYNOLDS #4 OBSERVED A BLACK BUICK W/ TINTED WINDOWS PA #ALR9162 PULL UP TO 5412 JEFFERSON ST. & B/ (WEARING A WHITE TANK TOP, BLACK JEANS, & BLACK SNEAKERS W/ A TATTOO ON HIS RIGHT SHOUL TATTOO ON HIS LEFT BI-CEP & RUBBER BANDS ON HIS RIGHT WRIST) ENTERED THE PROPERTY. AT A 3:00PM B/M #2 EXITED THE PROPERTY LOOKING AROUND & HOLDING (2) CLEAR PLASTIC BAGGIES CO SMALLER RED OBJECTS, (BELIEVED TO BUNDLES OF NARCOTICS). B/M #2 THEN PLACED (1) BUNDLE NARCOTICS IN HIS FRONT PANTS POCKET & (1) IN HIS REAR PANTS POCKET. B/M #2 THEN LEFT 54 JEFFERSON ST. & WENT TO 55TH & MERION AVE. WHERE HE WAS PICKED UP BY THE BLACK BUICK W/ TINTED WINDOWS. THE BUICK WAS THEN FOLLOWED BY P/O'S TO THE AREA OF 5500 LANSDOWNE AVE. (NORTHEAST CORNER OF ALLISON ST. & LANSDOWNE AVE.). B/M #2 THEN EXITED THE BUICK WHERE B/M #3 (WEREAING A BLACK TEE, BLACK JEANS, & A GRAY & BLACK B/B CAP W/ "G" ON THE FRONT) B/M #2 & #3 WERE THEN KEPT UNDER SURVEILLANCE BY P/O WALKER #3730. P/O WALKER #3730 THE OBSERVED B/M #2 & #3 INVOLVED IN (4) NARC. TRANSACTIONS W/ UNKNOWN B/M'S. DURING EACH TRANSACTION B/M #2 & #3 WOULD HAVE A CONVERSATIONS W/ THE UNKNOWN B/M'S AT WHICH TIME T UNKNOWN B/M'S WOULD HAND B/M #3 AN UNDETERMINED AMOUNT OF USC FOR SMALL OBJECTS, THAT B WOULD RETRIEVE FROM HIS REAR PANTS POCKET. THE UNKNOWN B/M'S WOULD THEN LEAVE THE AREA. APPROX. 3:22PM P/O REYNOLDS #4268 OBSERVED A TAN CADI. ESCALADE PARK AT 55TH & JEFFERSON (SOUTHWEST CORNER) AT WHICH TIME B/M #4, WEARING A TAN DICKIE OUTFIT, EXITED LOOKING AR CARRYING A WHITE PLASTIC CONT. A BROWN BAG. B/M #4 THEN WENT INTO 5412 JEFFERSON ST. AT APPROX. 3:40PM P/O STUBBS WAS WITH A C/I WHO WAS BRIEFED & SEARCHED (SEARCH WAS NEGATIV PRIOR TO GOING TO 5500 LANSDOWNE AVE. (SOUHTEAST CORNER OF ALLISON ST. & LANSDOWNE AVE. MAKE A NARCOTICS PURCHASE. ONCE ON LOCATION THE C/I HAD A BRIEF CONVERSATION W/ B/M #3 WHICH TIME P/O WALKER #3730 OBSERVED B/M #3 POINT TO B/M #2. THE C/I THEN HAD A BRIEF CONVERSATION W/ B/M #2 HANDED HIM $40.00 USC PRE-RECORDED BUY MONEY (2 TWENTIES SERIAL #AC37759775B & AB74206164F) AT WHICH TIME B/M #2 THEN WENT INTO HIS REAR PANTS POCKET & RETRIEVED SMALL OBJECTS HANDING THEM TO THE C/I. THE C/I THEN RETURNED TO P/O STUBBS #3 TUNRED OVER (8) CLEAR VIALS W/ RED TOPS EACH CONT. AN OFF-WHITE CHUNKY SUBSTANCE, ALLEG CRACK COCAINE. THE C/I WAS ALWAYS KEPT UNDER SURVEILLANCE BY EITHER BY P/O STUBBS #3699 P/O WALKER #3730, WHO NEVER LOST SIGHT OF THE C/I. THE C/I WAS AGAIN SEARCHED BY P/O ST #3699 WITH NEGATIVE RESULTS. P/O REYNOLDS #4268 THEN CONDUCTED A B&D TEST "G" ON ONE OF ITEMS PURCHASED BY THE C/I WHICH WAS POSITIVE FOR THE PRESENCE OF COCAINE BASE. THOSE I WERE THEN PLACED ON PR #2281260.

ON 8/31/00 AT APPROX. 3:30PM P/O REYNOLDS #4268 RETURNED TO 5412 JEFFERSON ST. TO CONDU ANOTHER SURVEILLANCE FOR ILLEGAL ACTIVTY. AT APPROX. 3:45PM B/M #5 WEARING A BLUE T-SHI BLUE JEAN SHORTS, W/ A BEARD & WHITE SNEAKERS EXITED & GOT INTO A GREEN PONT. BONNEVILL #DKC3310. B/M #5 THEN LEFT THE AREA & WENT TO THE AREA OF ALLISON ST. & LANSDOWNE AVE.

SIGNATURE | SIGNATURE

# Investigation Report — Philadelphia Police Department

APPROX. 3:55PM THE GREEN BONNEVILLE THEN RETURNED TO 5412 JEFFERSON ST. AT WHICH TIME B/M BEEPED & B/M #1 (I'D AS DENNIS FREEMAN) EXITED 5412 JEFFERSON ST. CARRYING A BUNDLE OF CR COCAINE & GOT TO INTO THE GREEN BONNEVILLE. THE BONNEVILLE THEN LEFT THE AREA. P/O REYNOL #4268 GAVE A DESCRIPTION & DIRECTION TO BACK-UP OFFICERS. P/O KELLY #7126, P/O WALKER #37 & P/O NORMAN #5214 THEN CONDUCTED A ROVING SURVEILLANCE OF THE GREEN PONT. BONNEVILLE. AT APPROX. 4:05PM P/O KELLY #7126 OBSERVED B/M #1 (DENNIS FREEMAN) HAND A BUNDLE OF CRACK COCAINE TO A B/M. (LATER I'D AS MASCIO WRIGHT) WHO WAS AT ALLISON ST. & LANSDOWNE AVE. AT APPROX. 4:08PM P/O JOHNSON #4381 & P/O MITCHELL #4145 BRIEFED A C/I & SEARCHED THE C/I FO CONTRABND, WHICH WAS NEGATIVE. THE C/I THEN WENT UP TO (MASCIO WRIGHT) HAD A BRIEF CONVERSATION. THE C/I THEN HANDED MASCIO WRIGHT $40.00 USC PRE-RECORDED BUY MONEY MASCIO WRIGHT THEN HANDED THE C/I (8) CLEAR VIALS W/ RED TOPS EACH CONT. AN OFF-WHITE CHU SUBSTANCE, ALLEGED CRACK COCAINE. THE C/I THEN RETURNED TO P/O MITCHELL #4145 & P/O JOHNS #4381 & TUNRED OVER THE ITEMS PURCHASED. THE C/I WAS AGAIN SEARCHED W/ NEGATIVE RESULTS. APPROX. 4:20PM THE GREEN PONT. BONNEVILLE THEN WENT TO 5507 MASTER ST. & PARKED IN FRONT THE HOUSE. P/O WALKER #3730 THEN OBSERVED B/M #1 (DENNIS FREEMAN) THEN EXITED & GO INTO 5 MASTER ST., WITH A KEY, FOR APPROX. (1) MINUTE. B/M #1 (DENNIS FREEMAN) THEN EXITED 5507 MASTER ST. AND LOCKED THE DOOR WITH A KEY, HOLDING A BRONW BAG & LOOKING EAST & WEST OF MASTER ST. B/M #1 (DENNIS FREEMAN) THEN JOGGED BACK OVER TO THE GREEN PONT. BONNEVILLE. T ROVING SURVEILLANCE OFFICERS THEN FOLLOWED THE GREEN PONT. BONNEVILLE BACK TO 5412 JEFFER ST. P/O REYNOLDS #4268 THEN OBSERVED B/M #1 (DENNIS FREEMAN & B/M #5) GO INTO 5412 JEFFER ST. B/M #1 (DENNIS FREEMAN) WAS ALSO CARRYING THE BROWN BAG THAT HE GOT FROM 5507 MASTER AT APPROX. 4:45PM P/O REYNOLDS #4268 OBSERVED B/M #5 EXIT 5412 JEFFERSON ST. & LEAVE THE IN THE GREEN BONNEVILLE. AT APPROX. 4:50PM P/O REYNOLDS #4268 OBSERVED B/M #4 ARRIVE AT 5 JEFFERSON ST. IN THE CADI. ESCALADE. B/M #4 THEN WENT INTO 5412 JEFFERSON ST. CARRYING A BLACK PLASTIC BAG & AFETR APPROX. (3) MINUTES LATER B/M #4 LEFT 5412 JEFFERSON ST. & GOT THE CADI. ESCALADE. B/M #4 THEN LEFT THE AREA. AT APPROX. 5:17PM A B/F (LATER I'D AS NONI WILLIAMS) ARRIVED AT 5412 JEFFESON ST. IN A RED MERC. BENZ SHE THEN GOT OUT OF THE RED ME BENZ CARRYING A BLACK BAG OVER HER SHOULDER. NONI WILLIAMS THE JOGGED INTO 5412 JEFFERSON & LEFT AT APPROX. 5:13PM. AT APPROX. 5:15PM MEMBERS OF NFU/SW EXECUTED S&S WARRANT #97333 5412 JEFFERSON ST. NONI WILLIAMS WAS ARRESTED OUTSIDE BY P/O KELLY #7126. RECOVERED FROM WAS $179.00 USC & (1) MOTOROLA CELL PHONE. RECOVERED INSIDE 5412 JEFFERSON ST. WAS A LARG AMOUNT OF CRACK COCAINE, MARIJUANA, USC, NUMEROUS FIREARMS, & A LARGE AMOUNT OF PACKAGING MATERIAL USED TO PACKAGE CRACK COCAINE. DENNIS FREEMAN WAS ALSO ARRESTED INSIDE 5412 JEFFERSON ST. P/O JOHNSON #4381 & P/O MITCHELL #4145 ARRESTED MASCIO WRIGHT AT ALLISON ST LANSDOWNE AVE. RECOVERED FROM MACIO WRIGHT WAS $264.00 USC, $40.00 USC WAS THE PRE-RECORD BUY MONEY, & (1) CLEAR PLASTIC BAGGIE CONT. (1) CLEAR VIAL W/ A RED TOP CONT. AN OFF-WHIT CHUNKY SUBSTANCE, ALLEGED CRACK COCAINE. DEF. WRIGHT WAS THEN TRANS. TO SWDD FOR PROCESS AFTER EXECUTING S&S WARRANT #97333 AT 5412 JEFFERSON ST. NFU/SW THEN WENT TO 5507 MASTER & SECURED THE PROPERTY THERE FOR THE FEAR THAT EVIDENCE WOULD BE DESTROYED. P/O KELLY #71 CONDUCTED A REAL STATE CHECK FOR 5507 MASTER ST. WHICH SHOWED THAT B/M #1 WAS THE REGISTE OWNER OF THE PROPERTY. 5507 MASTER ST. IS A VACANT PROPERTY WHICH IS HAVING RENOVATIONS THAT THE PRESENT TIME. NO RESIDENCES ARE RESIDING AT 5507 MASTER ST. P/O REYNOLDS #4268 CONDUCTED A B&D TEST "G" ONE THE ITEMS PUECHASED BY THE C/I WHICH WAS POSITIVE FOR THE PRESENCE OF COCAINE BASE.

THE C/I HAS BEEN USED IN THE PAST & HAS PROVEN TO BE TRUSTWORHTY & RELIABLE.

BASED UPON INFORMATION RECEIVED, SURVEILLANCE, & THE C/I PURCHASE I YOUR AFFIANT P/O REYN #4268 RESPECTFULLY REQUEST A NIGHTTIME SEARCH BE APPROVED FOR 5507 MASTER ST.

SIGNATURE OF AFFIANT | BADGE | DIST/UNIT

SWORN TO (OR AFFIRM) AND SUBSCRIBED BEFORE ME THIS ____ DAY OF _____ 2000.

DATE COMMISSION EXPIRES: __/__/__

SIGANTURE OF ISSUING AUTHORITY

| SERGEANT | BADGE | PAYROLL | LIEUTENANT | BADGE | PAYROLL |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |

267

EXHIBIT "2"

**Michael Pileggi, Esquire**
**Attorney At Law**
303 Chestnut Street
Philadelphia, Pennsylvania 19106

215-627-8516 (Office)                                                                215-627-5105 (Fax)
Member of PA

November 1, 2021

Anne Taylor, Esquire
Chief Deputy City Solicitor
One Parkway, 1515 Arch Street
15th Floor
Philadelphia, PA 19102-1595

**Re: Concerned Citizen/Confidential Source/Confidential Informant**

Dear Ms. Taylor:

Enclosed please find detailed information regarding the concerned citizen/confidential source/confidential informant in the cases of *U.S. v Dennis Freeman*, 00-cr-692-1 and *Commonwealth of Pennsylvania v Kareem Torain*, CP-51-CR-1014888-2001. This was the individual that provided information to Officer Brian Reynolds in the *Freeman* case and Officer Brian Monaghan in the *Torain* case.

ROBERT MORRIS
5501 Litchfield Street
Philadelphia, Pa 19143
Date of Birth-2/20/1965
Social Security #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
Married to DeVita Moore
2 children
Laid off from Simons Iron Works

During the pendency of the *Freeman* case, Mr. Morris had worked with police since 1998 and was paid approximately 4,000 while engaging in 275 buys. He was arrest in 1997 and charged with PWID and he was also charged in 1999 for FTA. A bench warrant was issued in that case.

I had previously requested during Reynolds' deposition the Master/CI file on an individual described as "Al". Absent Reynolds or Monaghan giving you the name of this individual, I understand how difficult it was for you to get the file with this scant information. You should have no problem now.

Since the discovery deadline is fast approaching, please provide the full file and all CI vouchers associated with the buys and information provided to police in cases resulting in arrests that Mr. Moore was involved in either as a "concerned citizen", "confidential source" or "confidential informant" as requested at Brian Reynolds deposition within 10 days, otherwise I will have no choice but to file a motion. This request includes all information on this individual dating back to 1998 when police began using him as one of the above.

In addition, I requested to re-depose Brian Monaghan (limited to this issue only) several weeks ago and have not heard anything since. Please give me a date for his deposition. Of course, I want to have the discovery request prior to doing the deposition, so I propose that we set a date in the third week of November.

If you have any questions, you can reach me on my cell phone at 267 251 7084.

Sincerely yours,

Michael Pileggi, Esquire

EXHIBIT "3"

# NFU Document Discovery Logs

## Disk Produced: April 15, 2016

1. NFU 8652-8653 – C.I./Source Chart for Bellwether cases
2. NFU 8654-8673 – Confidential Source Information regarding Bellwether cases
3. NFU 8674-8705 – C.I. file 1255
4. NFU 8706-8746 – C.I. 1255 vouchers
5. NFU 8747-8814 – C.I. file 1294
6. NFU 8815-8877 – C.I. 1294 vouchers from 2012
7. NFU 8878 – 9006 – C.I. 1294 vouchers
8. NFU 9007-9079 – 2012 ICO Confidential Informant Quarterly Review
9. NFU 9080 – 9148 – C.I. file 1087
10. NFU 9149 – 9257 – C.I. 1087 vouchers file 1 of 2
11. NFU 9258 – 9346 – C.I. 1087 vouchers file 2 of 2
12. NFU 9347 – 9354 – C.I. file FS-251
13. NFU 9355 – 9422 – C.I. FS-251 vouchers
14. NFU 9423 – 10001 – C.I. FS-233 vouchers 1 of 5
15. NFU 10002 – 10537 – C.I. FS-233 vouchers 2 of 5
16. NFU 10538 – 11047 – C.I. FS-233/1087 vouchers 3 of 5
17. NFU 11048 – 11560 – C.I. 1087 vouchers 4 of 5
18. NFU 11561 – 12329 – C.I. 1087 vouchers 5 of 5
19. NFU 12330 – 12531 – Court Attendance Records for NFU Officers
20. NFU 12532 – 12614 – Sending and Receiving Reports/DARs for Marcia Hintz, Patrina Mitchell, Warren Layre, and Helen Guyon
21. NFU 12615-12643 – Marcia Hintz – additional police paperwork
22. NFU 12644 – 12655 – Patrina Mitchell – additional police paperwork
23. NFU 12656 – 12727 – NFU Officers' Arbitration Award Documents
24. NFU 12728 – 12880 – p/o Stephen Dmytryk – IAD files and Personnel file
25. NFU 12881 – 12989 – p/o Brian Monaghan – IAD files and Personnel file
26. NFU 12990 – 13116 – p/o Brian Monaghan – IAD file 91-0189
27. NFU 13117 – 13202 – p/o Brian Monaghan – IAD file 92-0126

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KAREEM TORAIN | : |
|---|---|
| Plaintiff | : |
| vs. | : C.A. 14-1643 |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendants | : |

### CERTIFICATION OF COUNSEL

1. Counsel hereby certifies that he made a good faith effort to resolve this discovery dispute by conferring with opposing counsel regarding the issues memorialized in Plaintiff's Motion to Compel.

2. Counsel certifies that he believes only court intervention can resolve this discovery dispute.

Michael Pileggi, Esquire