EXHIBIT "6"

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 1   PAGE 1

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
PHILADELPHIA MUNICIPAL COURT

| | |
|---|---|
| COMMONWEALTH | : M.C. 0101-0590 |
| vs. | : |
| ANTHONY HODGES | : |
| COMMONWEALTH | : M.C. 0101-0591 |
| vs. | : |
| KAREEM TORAIN | : |
| COMMONWEALTH | : M.C. 0101-0592 |
| vs. | : |
| ARTHUR TILLMAN | : |
| COMMONWEALTH | : M.C. 0101-0594 |
| vs. | : |
| KABIYAN DIGGS | : |
| COMMONWEALTH | : M.C. 0101-0648 |
| vs. | : |
| RAYMOND HOWARD | : |
| COMMONWEALTH | : M.C. 0101-0711 |
| vs. | : |
| MAURICE GREY | : |

PRELIMINARY HEARING
-----
OCTOBER 23, 2001
COURTROOM 1003, CRIMINAL JUSTICE CENTER
PHILADELPHIA, PENNSYLVANIA
-----
BEFORE:  THE HONORABLE MARSHA N. NEIFIELD, J.

Bonnie Smith, RPR, Official Court Reporter
(215) 683-8045

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 2 PAGE 2

PAGE 4

4

1
2 PROCEEDINGS
3 -----
4 MS. ROBINSON: COUNSEL HAS ALREADY
5 GRACIOUSLY AGREED TO STIPULATE TO THE SEIZURE
6 ANALYSIS.
7 COMMONWEALTH CALLS OFFICER BRIAN
8 MONAGHAN. ALL MY WITNESSES ARE SEQUESTERED.
9 IF THERE ARE ANY DEFENSE WITNESSES, I'D ASK
10 THEY BE SEQUESTERED.
11 THE COURT: NOBODY SEEMS TO BE AWARE OF
12 ANY DEFENSE WITNESSES.
13 MR. SCIOLLA: THERE ARE NONE.
14 -----
15 POLICE OFFICER BRIAN MONAGHAN, BADGE
16 NO. 6061, NARCOTICS FIELD UNIT, PHILADELPHIA
17 POLICE DEPARTMENT, CALLED AS A WITNESS ON
18 BEHALF OF THE COMMONWEALTH, HAVING BEEN DULY
19 SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:
20 -----
21 MS. ROBINSON: MAY I PROCEED, YOUR HONOR?
22 THE COURT: YOU MAY.
23 -----
24 DIRECT EXAMINATION
25 -----

APPEARANCES:

LOUISA ASHMEAD ROBINSON, ESQ.
ASSISTANT DISTRICT ATTORNEY
FOR THE COMMONWEALTH

GIOVANNI CAMPBELL, ESQ.
FOR DEFENDANT ANTHONY HODGES

GUY SCIOLLA, ESQ.
FOR DEFENDANT KAREEM TORAIN

BRIAN MC MONAGLE, ESQ.
FOR DEFENDANTS RABIYAN DIGGS AND
ARTHUR TILLMAN

FRANK SPINA, II, ESQ.
FOR DEFENDANT RAYMOND HOWARD

DOUGLAS STERN, ESQ.
FOR DEFENDANT MAURICE GREY

-----

PAGE 3

3

1
2
3
4 I N D E X
5
6 COMMONWEALTH'S EVIDENCE  DIRECT CROSS REDIRECT RECROSS
7 OFF. BRIAN MONAGHAN
   BY MS. ROBINSON           5     ---    ---     ---
8  BY MR. CAMPBELL          ---    34     ---     ---
   BY MR. SCIOLLA           ---    41     ---     ---
9  BY MR. STERN             ---    44     ---     ---
   BY MR. SPINA             ---    47     ---     ---
10 BY MR. MC MONAGLE        ---    55     ---     ---
11 OFF. JEFFREY WALKER
   BY MR. SCIOLLA           ---    62     ---     ---
12 BY MR. MC MONAGLE        ---    63     ---     ---
13 -------
14
15
16
17
18
19
20
21
22
23
24
25

PAGE 5

5

1 Off. Brian Monaghan - Direct
2 BY MS. ROBINSON:
3 Q. OFFICER MONAGHAN, I'D LIKE TO DIRECT YOUR
4 ATTENTION TO JANUARY 2ND, 2001.
5 DID YOU HAVE LOCATION ON THAT DATE AT
6 APPROXIMATELY 3:45 P.M. TO SET UP A SURVEILLANCE NEAR
7 THE 5600 BLOCK OF WEST MASTER STREET?
8 A. YES, I DID.
9 Q. AND ON THAT DATE AND OCCASION DID YOU HAVE
10 OCCASION TO OBSERVE ANYONE WHO YOU SEE HERE TODAY IN
11 COURT?
12 A. YES, I DID.
13 Q. WOULD YOU PLEASE POINT TO THAT INDIVIDUAL?
14 A. THE DEFENDANT IN THE GRAY SHIRT, GAVE HIS NAME
15 ANTHONY HODGE, THE DEFENDANT IN THE RED SHIRT, GAVE
16 HIS NAME -- I SEEN HIM ON THE 4TH, YOUR HONOR, HIS
17 NAME IS --
18 MR. SCIOLLA: I'M GOING TO OBJECT.
19 THE COURT: JUST TELL ME ABOUT
20 JANUARY 2ND. WE'LL GET TO THE 4TH.
21 THE WITNESS: JANUARY 2ND, ONLY ONE I
22 NOTICED WAS THE MALE IN THE GRAY SHIRT.
23 BY MS. ROBINSON:
24 Q. AND ON THAT DATE, WHAT, IF ANYTHING, DID YOU
25 SEE THE DEFENDANT ANTHONY HODGES DOING?

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 3 PAGE 6

**PAGE 6**

Off. Brian Monaghan - Direct

```
 1                                                            6
 2   A.    YOUR HONOR, I SET UP A SURVEILLANCE WITH MY
 3   PARTNER, POLICE OFFICER SEAN KELLY, K-E-L-L-Y, BADGE
 4   NO. 7126, IN THE AREA OF THE 5600 BLOCK OF WEST MASTER
 5   STREET, YOUR HONOR.  I OBSERVED TWO BLACK MALES,
 6   YOUR HONOR.  I OBSERVED THE DEFENDANT IN THE GRAY
 7   SHIRT, ALSO ANOTHER MALE LATER I.D.'D AS DARNELL
 8   DE LEE.  YOUR HONOR, THEY WERE STANDING --
 9         MR. MC MONAGLE:  NO DISRESPECT, I
10   NOTICE OFFICER MONAGHAN IS READING FROM
11   SOMETHING.  I JUST ASK, IS IT THE '49 HE'S
12   READING FROM?
13         THE WITNESS:  YES, IT IS, YOUR HONOR.
14   I'M JUST REFRESHING DATES AND TIMES.
15         THE COURT:  THAT'S FINE.
16         MS. ROBINSON:  AND ALL COUNSEL HAVE BEEN
17   PROVIDED WITH A COPY OF THE '49.
18   BY MS. ROBINSON:
19   Q.    YOU MAY PROCEED, OFFICER MONAGHAN.
20   A.    YOUR HONOR, THEY WERE STANDING ON THE PORCH OF
21   5605.  THREE HOUSES -- WE WERE DOING THE SURVEILLANCE
22   ON 5605, '07, AND 5609.
23   Q.    AND JUST SO THE RECORD'S CLEAR, COULD YOU
24   DESCRIBE THOSE HOUSES IN RELATIONSHIP TO ONE ANOTHER,
25   HOW THEY APPEARED, TO HER HONOR?
```

**PAGE 7**

Off. Brian Monaghan - Direct

```
 1                                                            7
 2   A.    YOUR HONOR, THE HOUSES, THEY'RE ROW HOUSES,
 3   CONSECUTIVE ROW HOUSES.
 4   Q.    AND WHICH ONE IS TO THE RIGHT, LEFT, CENTER?
 5   A.    5605, RIGHT, 5607, CENTER AND 5609 TO THE LEFT.
 6   FAR LEFT IS ITHAN STREET.
 7   Q.    AND YOU MAY PROCEED.  WHAT DID YOU SEE?
 8   A.    AROUND 3:45 P.M. I OBSERVED THE DEFENDANT
 9   HODGES, HE WENT TOWARDS THE DOORWAY OF 5605.  AT THIS
10   TIME I OBSERVED THAT THE DOOR OPENED AND AN OBJECT,
11   GOLF BALL SIZE OBJECT WAS HANDED OUTSIDE THAT DOOR.  I
12   COULDN'T SEE WHO OPENED THE DOOR OR WHO HANDED IT.  HE
13   THEN GAVE THE OTHER MALE, DE LEE, SMALL OBJECTS FROM
14   THAT, ENDED UP BEING A CLEAR BAGGIE, YOUR HONOR.
15         BETWEEN THE TIME OF 3:45 AND ABOUT 5:00, YOUR
16   HONOR, I OBSERVED HODGES IN THE GRAY SHIRT AND DE LEE
17   SELL TO NUMEROUS BLACK MALES AND BLACK FEMALES,
18   YOUR HONOR, ON DIFFERENT OCCASIONS.  THEY WOULD ACCEPT
19   U.S. CURRENCY, AT WHICH TIME THEY WOULD TAKE OBJECTS
20   FROM THE CLEAR BAGGIE THAT HODGES HAD, AND DE LEE
21   WOULD TAKE THEM FROM HIS PERSON.  THEY WOULD GIVE THE
22   SMALL PACKETS TO THE BLACK MALES AND BLACK FEMALES WHO
23   THEN LEFT THE AREA, YOUR HONOR.  YOUR HONOR, I SAW
24   NUMEROUS SALES.  IT WAS PRETTY BUSY IN THAT TIME
25   PERIOD.
```

**PAGE 8**

Off. Brian Monaghan - Direct

```
 1                                                            8
 2   Q.    COULD YOU PUT ANY KIND OF NUMBER ON IT, OFFICER
 3   MONAGHAN?
 4   A.    I WOULD SAY CLOSE TO MAYBE TEN, MAYBE LITTLE
 5   BIT MORE THAN TEN OCCASIONS.
 6   Q.    AFTER YOU SAW THIS, WHAT, IF ANYTHING, DID YOU
 7   NOTICE DURING THE COURSE OF YOUR SURVEILLANCE?
 8   A.    YOUR HONOR, I STILL KEPT UP THE SURVEILLANCE.
 9   ABOUT 5:12 P.M. IN THE 5500 BLOCK OF MASTER STREET I
10   OBSERVED A GRAY-COLORED OLDSMOBILE PULL UP, TWO BLACK
11   MALES IN IT.  PASSENGER GOT OUT, YOUR HONOR, HE WALKED
12   WESTBOUND ON MASTER STREET TO 5607.  IT WAS THE MIDDLE
13   PORCH, YOUR HONOR.
14         THE DEFENDANT IN THE GRAY SHIRT AND DE LEE
15   WAS STANDING ON THAT PORCH.  THEY HAD A BRIEF
16   CONVERSATION, YOUR HONOR.  THE BLACK MALE WAS
17   CARRYING SOME TYPE OF A BLACK BAG, LIKE A CARRY-ALL
18   BAG, YOUR HONOR.  THEY WENT INTO THAT PROPERTY FOR
19   ABOUT MAYBE A LITTLE LESS THAN TEN MINUTES THEY WERE
20   IN THAT PROPERTY, YOUR HONOR, AT WHICH TIME THE MALE
21   CAME OUT.
22         YOUR HONOR, FROM WHERE I WAS I SAW, I WAS USING
23   BINOCULARS, I COULD SEE THAT HE HAD A PRETTY GOOD
24   SIZED BAGGIE CONTAINING --
25         MR. GIOVANNI:  WHO'S "HE"?
```

**PAGE 9**

Off. Brian Monaghan - Direct

```
 1                                                            9
 2         THE WITNESS:  THE UNKNOWN BLACK MALE WHO
 3   CAME OUT.
 4         BOTH MALES, YOUR HONOR, HODGES AND DE
 5   LEE, BOTH FOLLOWED HIM OUT.  IT WAS A CLEAR
 6   BAGGIE, LOOKED LIKE IT HAD GREEN SUBSTANCE
 7   INSIDE THAT BAGGIE.
 8         YOUR HONOR, HE PUT IT INTO THE BLACK
 9   MALE'S CAR, AT WHICH TIME THE OLDSMOBILE LEFT
10   THE AREA; I NOTIFIED BACKUP OFFICERS.  THAT
11   VEHICLE WAS LOST.  THE VEHICLE PULLED OVER AT
12   4710 MERION, YOUR HONOR, I BELIEVE, YOUR HONOR
13   AND THE PERSON WENT INTO THE HOUSE.  HE WAS
14   NEVER LOCATED OR I.D.'D, YOUR HONOR.
15   BY MS. ROBINSON:
16   Q.    MOVING ON TO WEDNESDAY, JANUARY 3RD, 2001, DID
17   YOU HAVE OCCASION AT APPROXIMATELY 11 IN THE MORNING
18   TO AGAIN SET UP A SURVEILLANCE OF THE LOCATIONS OF
19   5605, 5607, AND 5609 WEST MASTER STREET IN
20   PHILADELPHIA?
21   A.    YES, I DID.
22         YOUR HONOR, IT WAS ABOUT 11 A.M.  I WAS WITH MY
23   PARTNER AGAIN, POLICE OFFICER SEAN KELLY, BADGE
24   NO. 7126.  YOUR HONOR, ABOUT 11:30 I OBSERVED A
25   DARK-COLORED BUICK, IT WAS A PENNSYLVANIA TAG,
```

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 4   PAGE 10

Off. Brian Monaghan - Direct                10
1
2   DKD-2171. IT PULLED UP IN FRONT OF THAT LOCATION,
3   YOUR HONOR, AND A BLACK MALE EXITED BY THE NAME OF
4   DARNELL DE LEE, THE MALE THAT I SAW PREVIOUS ON THE
5   2ND YOUR HONOR, THAT WAS WITH THE MALE IN THE GRAY
6   SHIRT.
7        YOUR HONOR, ABOUT 11:52, DE LEE WENT UP, HE WAS
8   STANDING ON THE PORCH OF 5606, AT WHICH TIME HE WENT
9   TOWARDS THE DOORWAY.  YOUR HONOR, I COULDN'T SEE AT
10  THE TIME THAT HE KNOCKED ON THE DOOR, BUT THE DOOR
11  OPENED, AND AS HE TURNED AROUND, HE WAS HOLDING A
12  CLEAR BAGGIE, A GOLF BALL SIZED ONE IN HIS HAND.
13       YOUR HONOR, BETWEEN 11:30 AND 11:58 DE LEE,
14  DARNELL DE LEE, SOLD TO NUMEROUS MALES AND FEMALES
15  THAT CAME UP TO THE PORCH, SAME AS THE DAY BEFORE.  HE
16  ACCEPTED U.S. CURRENCY.  IN EXCHANGE HE GAVE SMALL
17  OBJECTS FROM THAT CLEAR BAGGIE, THE GOLF BALL SIZED
18  OBJECT, YOUR HONOR.
19  Q.   CAN YOU PUT ANY KIND OF NUMBER ON HOW MANY
20  INDIVIDUALS HE SOLD TO DURING THAT COURSE OF TIME?
21  A.   ANYWHERE BETWEEN FIVE, MAYBE TEN PEOPLE AT THAT
22  TIME.
23  Q.   AND THEN AT 11:58 A.M. DID YOU HAVE OCCASION TO
24  SEE ANYONE ELSE?
25  A.   YES, I DID.

PAGE 11

Off. Brian Monaghan - Direct                11
1
2        YOUR HONOR, 11:58 A.M. A BLACK MALE, WHO WAS
3   LATER I.D.'D AS MIGEL MOON, HE'S SITTING IN THE GRAY
4   SHIRT, YOUR HONOR, IN THE BACK OF THE COURTROOM WITH
5   THE BRAIDS ON, YOUR HONOR, HE EXITED 5605, YOUR HONOR.
6   HE HAD A DARK JACKET ON.  HE HAD A BLUE AND WHITE
7   TITANS BASEBALL CAP ON.
8        YOUR HONOR, HE HAD A CONVERSATION WITH DE LEE
9   WHO WAS STANDING ON THAT PORCH AT THAT TIME.  YOUR
10  HONOR, IN THAT TIME, A COUPLE MINUTES, I BELIEVE IT
11  WAS A BLACK MALE CAME UP WITH A TAN OUTFIT ON.  HE
12  ACCEPTED -- MOON ACCEPTED U.S. CURRENCY FROM HIM IN
13  EXCHANGE FOR SMALL OBJECTS, AND MOON WAS CARRYING A
14  CLEAR BAGGIE, YOUR HONOR.  INSIDE THE BAGGIE I COULD
15  SEE THERE WERE GREEN TINTED PACKETS.
16       YOUR HONOR, AFTER HE MADE THE SALE, I OBSERVED
17  MOON, HE WOULD WALK OVER TO THE PORCH, 5607.  HE WOULD
18  CLIMB OVER THE RAILING BACK AND FORTH, YOUR HONOR.  AT
19  DIFFERENT TIMES I SAW HIM COUNTING THE PACKETS, THE
20  GREEN PACKETS THAT WAS INSIDE THE CLEAR BAGGIE.
21  YOUR HONOR, HE GAVE NUMEROUS PACKETS TO MALES AND
22  FEMALES.  AFTER THAT IT WAS A COUPLE MORE SALES.
23       HE WAS STANDING THERE WITH HODGES, YOUR HONOR.
24  NO, YOUR HONOR, DE LEE.  HODGES EXITED THE HOUSE AT
25  2:22 P.M.  HE EXITED 5607.  HE COMES OUT OF 5607,

PAGE 12

Off. Brian Monaghan - Direct                12
1
2   YOUR HONOR, HE HAS A BRIEF CONVERSATION WITH A BLACK
3   MALE WHO HAD A BLACK JACKET ON.  HODGES ACCEPED U.S.
4   CURRENCY FROM THAT MALE IN EXCHANGE FOR SMALL OBJECTS
5   HODGES REMOVED FROM HIS, I BELIEVE IT WAS HIS JACKET
6   POCKET, YOUR HONOR.
7        YOUR HONOR, ABOUT 2:26 P.M., MOON TAKES THE
8   BAGGIE WITH THE GREEN OBJECTS FROM, I'M NOT SURE
9   WHETHER IT WAS JACKET OR PANTS, AT WHICH TIME HE
10  HANDED IT TO DE LEE ON THE PORCH OF 5605.  MOON THEN
11  ENTERED A DARK-COLORED OLDSMOBILE.  I BELIEVE THE TAG
12  WAS -- IF I COULD REFER TO MY NOTES -- BZR-4983.  HE
13  LEAVES THE AREA.  HE NEVER COMES BACK.
14       YOUR HONOR, ABOUT 2:30, ANOTHER BLACK MALE
15  PULLED UP IN A SUBARU STATION WAGON.  THAT MALE IS
16  SITTING IN THE RED -- WITH THE RED SWEATSHIRT IN THE
17  SECOND SEAT.  HE GAVE US THE NAME KABIYAN DIGGS.
18  YOUR HONOR, I SAW HIM OPEN UP THE BACK OF HIS VEHICLE,
19  AT WHICH TIME HE TOOK OUT A GREEN TIMBERLAND BOX,
20  YOUR HONOR.  ALL HE DID WAS WALK INTO 5605 WITH THE
21  BOX, IN THERE A FEW MINUTES, CAME OUT AND LEFT THE
22  AREA.
23       MS. ROBINSON:  FOR THE RECORD, THE
24       WITNESS DID IDENTIFY KABIYAN DIGGS.
25  BY MS. ROBINSON:

PAGE 13

Off. Brian Monaghan - Direct                13
1
2   Q.   YOU MAY PROCEED, OFFICER MONAGHAN.
3   A.   YOUR HONOR ABOUT 3:56, I OBSERVED THAT DE LEE,
4   WHO WENT TO THE CORNER OF 56TH AND MASTER STREET, IT'S
5   A STOP AND GO, YOUR HONOR, IT'S ON THE SOUTHEAST
6   CORNER OF 56TH AND MASTER, YOUR HONOR, HE WAS INSIDE
7   THE STORE, DIFFERENT TIMES HE CAME OUT, HE MET UP WITH
8   TWO BLACK FEMALES, HE ACCEPTED U.S. CURRENCY FROM THE
9   BLACK FEMALES, HE WALKED TOWARDS THE REAR OF THE
10  STORE, ON 56TH STREET, AT WHICH TIME HE REMOVED A
11  CLEAR BAGGIE FROM HIS POCKETS, TOOK OUT SMALL OBJECTS,
12  WALKED BACK, HANDED THE OBJECTS TO THE BLACK FEMALE,
13  WHO LEFT THE AREA.
14       YOUR HONOR, ABOUT 3:58 I INSTRUCTED POLICE
15  OFFICER BRAD MITCHELL, BADGE NO. 4145, TO GO TO THE
16  AREA OF 56TH AND MASTER STREET AND MAKE A CONTROLLED
17  NARCOTICS PURCHASE, AND I GAVE HIM THE DESCRIPTION OF
18  DARNELL DE LEE.  YOUR HONOR, DE LEE WAS STANDING IN
19  THE DOOR.  MITCHELL WENT IN THE STORE.  I BELIEVE HE
20  HAD A BRIEF CONVERSATION WITH DE LEE.
21       AT THIS TIME DE LEE TOLD HIM TO HOLD ON.  HE
22  WENT OUT THE SIDE DOOR ON 56TH STREET, BACK TOWARDS
23  THE REAR OF THE STORE, YOUR HONOR, RIGHT ON 56TH
24  STREET.  HE REMOVED A CLEAR BAGGIE, TOOK OUT OBJECTS
25  FROM THAT CLEAR BAGGIE, WALKED BACK, AND INSTRUCTED

**PAGE 14**

Off. Brian Monaghan - Direct                          14
1  MITCHELL TO COME OUT THE SIDE DOOR, AT WHICH TIME
2  MITCHELL CAME OUT THE SIDE DOOR, MITCHELL HANDED $20
3  PRERECORDED BUY MONEY THAT I PRERECORDED MYSELF,
4  YOUR HONOR, ALONG WITH A NARCOTICS SUPERVISOR, IN
5  EXCHANGE FOR SMALL OBJECTS HE TOOK FROM THE CLEAR
6  BAGGIE.
7          YOUR HONOR, MITCHELL HANDED OVER TO ME FOUR
8  BLACK TINTED OBJECTS, ZIP-LOCK PACKETS CONTAINING AN
9  OFF-WHITE CHUNKY SUBSTANCE, ALLEGED CRACK COCAINE.
10 Q.   WHAT DID YOU DO WITH THOSE FOUR PACKETS,
11 OFFICER?
12 A.   R&D TEST ON THOSE ITEMS, WHICH I'M CERTIFIED TO
13 DO, THEY WERE POSITIVE FOR THE PRESENCE OF COCAINE
14 BASE.  I PLACED THEM ON PROPERTY RECEIPT -- IF I CAN
15 REFER TO MY NOTES.
16          MR. SCIOLLA:  WE'LL STIPULATE.
17          MS. ROBINSON:  THANK YOU.
18          THE WITNESS:  YOUR HONOR, THAT WAS -- I
19 WAS DONE MY SURVEILLANCE.  THAT WAS FINISHED
20 FOR THE DAY, YOUR HONOR.
21 BY MS. ROBINSON:
22 Q.   DIRECTING YOUR ATTENTION TO JANUARY 4TH OF
23 2001, YOU HAVE OCCASION TO SET UP A SURVEILLANCE IN
24 THE AREA OF 56TH AND MASTER STREETS AT APPROXIMATELY

**PAGE 15**

Off. Brian Monaghan - Direct             15
1  1:40 IN THE AFTERNOON?
2  A.   YES.  IT WAS ABOUT 1:30 BY THE TIME WE SET UP,
3  YOUR HONOR.  I WAS ALSO, AGAIN, WITH MY PARTNER,
4  POLICE OFFICER SEAN KELLY, BADGE NO. 7126.  YOUR
5  HONOR, ABOUT 1:41 I OBSERVED DARNELL DE LEE, HE WAS
6  STANDING ON THE PORCH AT 5605, YOUR HONOR.  OBSERVED A
7  GREEN BONNEVILLE, AND THAT BONNEVILLE, THE TAG WAS
8  PENNSYLVANIA DKC-3110, YOUR HONOR.  IT WAS TRAVELING
9  WESTBOUND ON 56TH STREET.  IT SLOWED DOWN IN FRONT OF
10 5605, ALL I COULD SEE, YOUR HONOR, WAS ONE OCCUPANT,
11 WAS THE DRIVER.
12          YOUR HONOR, I HEARD DARNELL DE LEE HOLLERING
13 AND POINT TOWARDS THE CORNER OF MASTER AND ITHAN
14 STREET.  AT THIS TIME, TORAIN -- AT THIS TIME THE
15 BLACK MALE PULLED HIS VEHICLE UP TO ITHAN AND MASTER
16 STREET, FACING NORTHBOUND ON ITHAN STREET, YOUR HONOR,
17 RIGHT OFF OF MASTER STREET.  I OBSERVED THE DEFENDANT
18 DARNELL GET INTO THAT VEHICLE ON THE PASSENGER SIDE.
19 HE WAS IN THERE FOR ABOUT TWO TO THREE MINUTES,
20 YOUR HONOR, AS HE EXITED, HE WAS PUTTING SOMETHING
21 INTO HIS JACKET POCKET.
22 Q.   AND AT THAT POINT WERE YOU ABLE TO SEE WHO WAS
23 THE DRIVER OF THAT VEHICLE?
24 A.   AS THAT TIME, NO, I COULD NOT TELL WHO WAS THE

**PAGE 16**

Off. Brian Monaghan - Direct             16
1  DRIVER OF THAT VEHICLE.
2  Q.   AND THEN WHAT HAPPENED?
3  A.   I INSTRUCTED POLICE OFFICER WALKER, BADGE
4  NO. 3730, THAT THE VEHICLE WAS COMING OUT ONTO MEDIA
5  STREET OFF OF ITHAN, AT WHICH TIME HE FOLLOWED THAT
6  VEHICLE TO 1621 NORTH CONESTOGA STREET.  YOUR HONOR,
7  AS DE LEE EXITED THAT VEHICLE, HE WALKED BACK TO 56TH
8  AND MASTER STREET, YOUR HONOR.  HE WAS ON THE
9  SOUTHEAST CORNER.  HE KIND OF, LIKE, RAN BACK TO THE
10 CORNER.  AND IF I CAN REFER TO MY NOTES, HE WAS IN
11 THIS CAR FOR ABOUT TWO TO THREE MINUTES, RAN BACK TO
12 THE CORNER.
13          YOUR HONOR, I OBSERVED HIM TAKE NUMEROUS SMALL
14 OBJECTS FROM HIS POCKET AND HE HANDED THE OBJECTS TO A
15 COUPLE BLACK MALES AND BLACK FEMALES THAT CAME TO THE
16 CORNER IN EXCHANGE FOR U.S. CURRENCY, YOUR HONOR.
17          APPROXIMATELY 1:43, YOUR HONOR, I OBSERVED, I
18 BELIEF IT'S A SEBRING, WAS TRAVELING WESTBOUND ON
19 MASTER STREET.  IT WAS BEING OPERATED BY A BLACK
20 FEMALE, YOUR HONOR.  IT STOPPED RIGHT IN FRONT OF
21 5607.  AT THIS TIME THE DEFENDANT IN THE GRAY SHIRT
22 EXITED THAT VEHICLE, WENT INTO 5607, YOUR HONOR,
23 OPENED UP THE DOOR WITH A KEY.
24          MS. ROBINSON:  INDICATING, FOR THE

**PAGE 17**

Off. Brian Monaghan - Direct             17
1  RECORD, ANTHONY HODGES.
2  BY MS. ROBINSON:
3  Q.   THEN WHAT?
4  A.   ABOUT 1:55, YOUR HONOR, ME AND POLICE OFFICER
5  KELLY, YOUR HONOR, WE WERE IN OUR VEHICLE AT THE TIME.
6  THE DEFENDANT, DE LEE, WAS STANDING RIGHT NEXT TO OUR
7  VEHICLE, YOUR HONOR, ALSO WITH ANOTHER, WITH THE MALE
8  STANDING OR SITTING BACK THERE IN THE RED SWEATSHIRT,
9  KABIYAN DIGGS.
10         HE STATED TO DIGGS THAT --
11         MR. MC MONAGLE:  OBJECTION, YOUR HONOR.
12         MR. SCIOLLA:  OBJECTION.
13         THE COURT:  OVERRULED.
14 BY MS. ROBINSON:
15 Q.   YOU MAY PROCEED.
16 A.   HE STATED TO DIGGS THAT KAREEM HAD ONE BUNDLE
17 ON HIM, THAT HE WAS COMING BACK, HE WOULD CALL AND
18 COME BACK WHEN THE REST WAS READY.
19 Q.   AND AFTER YOU HEARD THIS, WHAT WAS THE NEXT
20 THING THAT YOU SAW OR HEARD?
21         MR. SCIOLLA:  I WOULD RENEW MY OBJECTION,
22 JUDGE.
23         MR. MC MONAGLE:  I JOIN, JUDGE.
24         THE COURT:  OKAY.

SHEET 6   PAGE 18

PAGE 18

```
 1              Off. Brian Monaghan - Direct          18
 2                        -----
 3    BY MS. ROBINSON:
 4    Q.    YOU MAY CONTINUE.
 5              THE COURT:  PROCEED.
 6              THE WITNESS:  OKAY.  YOUR HONOR,
 7    APPROXIMATELY 2 P.M., I FOUND OUT THAT TORAIN
 8    WAS EXITING THE PROPERTY OF 1671 SOUTH
 9    CONESTOGA STREET.  POLICE OFFICER REYNOLDS,
10    4268, POLICE OFFICER WALKER, 7730, FOLLOWED HIM
11    OVER TO THIS PROPERTY, 1628 NORTH 55TH STREET.
12    YOUR HONOR, IT'S ON THE SOUTHWEST CORNER OF
13    55TH AND HUNTER STREET.  YOUR HONOR, HE OPENED
14    UP THE FRONT DOOR WITH A KEY.
15    BY MS. ROBINSON:
16    Q.    AND HOW FAR AWAY IS THIS LOCATION FROM THE 5600
17    BLOCK OF MASTER STREET?
18    A.    ABOUT THREE BLOCKS, THREE AND A HALF BLOCKS.
19    Q.    AND THEN AFTER YOU LEARNED THIS FROM THOSE
20    OFFICERS, WHAT WAS THE NEXT THING THAT YOU SAW OR
21    HEARD?
22    A.    YOUR HONOR, ABOUT 2:05 P.M., I OBSERVED DE LEE
23    WENT TO THE PAY PHONE, NORTHWEST CORNER, HE PICKED UP
24    THE PHONE.  I COULDN'T HEAR NO CONVERSATION OR
25    ANYTHING, YOUR HONOR.
```

PAGE 19

```
 1              Off. Brian Monaghan - Direct          19
 2    Q.    HAD YOU HEARD THE PHONE RING BEFORE HE DID
 3    THAT?
 4    A.    NO, I COULD NOT.  HE JUST WENT OVER AND PICKED
 5    IT UP.
 6              YOUR HONOR, THERE WAS -- DIGGS WAS WITH DE LEE.
 7    ALSO, IT WAS ANOTHER MALE THAT'S SITTING WITH THE
 8    GREEN SWEATER ON, TILLMAN, I BELIEVE HIS NAME, HE GAVE
 9    US, TILLMAN.  YOUR HONOR, THEY GOT INTO THE BUICK THAT
10    DE LEE WAS DRIVING.  THAT WAS THE DARK-COLORED BUICK
11    THAT I MENTIONED ON THE 3RD, YOUR HONOR.  THEY WENT TO
12    THE LOCATION OF 1628 NORTH 55TH STREET, YOUR HONOR,
13    AND I INSTRUCTED POLICE OFFICER WALKER AND REYNOLDS TO
14    KEEP AN EYE OUT FOR THAT BUICK.
15              POLICE OFFICER WALKER AND REYNOLDS BOTH
16    OBSERVED THEM, YOUR HONOR, I LATER FOUND OUT, ENTERING
17    1628 NORTH 55TH STREET.  YOUR HONOR, THEY WERE IN
18    THERE FOR ABOUT 20 MINUTES ALONG WITH THE DEFENDANT IN
19    THE RED SHIRT, TORAIN.
20              MR. SCIOLLA:  I'M GOING TO OBJECT TO
21    THAT, JUDGE.
22              THE COURT:  I GAVE YOU SOME LATITUDE.  I
23    THINK YOU'RE GOING --
24              MS. ROBINSON:  WELL --
25              THE COURT:  -- PRETTY FAR AFIELD.
```

PAGE 20

```
 1              Off. Brian Monaghan - Direct          20
 2              DO YOU HAVE ANY OTHER OFFICERS OUTSIDE?
 3              MS. ROBINSON:  YES, I DO.  I HAVE OFFICER
 4    WALKER HERE.  HE WILL BE TESTIFYING.
 5              THE COURT:  HE WILL TESTIFY WHO HE SAW
 6    ENTER THE PROPERTIES.  I'M GOING TO PERMIT IT
 7    WITH THE ASSUMPTION THE OTHER OFFICER IS HERE.
 8    WE'LL REPEAT THE SAME TESTIMONY.
 9              MR. SCIOLLA:  I WOULD OBJECT.  I DON'T
10    KNOW THAT MR. TORAIN IS STILL IN THE PROPERTY
11    OR IF THERE ARE MORE PLACES TO GO WITHIN THAT
12    PROPERTY OR SOMEBODY COULD SEE MR. TORAIN WITH
13    THESE OTHER INDIVIDUALS IN THE PROPERTY.
14    BY MS. ROBINSON:
15    Q.    OFFICER MONAGHAN, IF YOU JUST LIMIT YOUR
16    TESTIMONY TO WHAT YOU ACTUALLY SAW.
17    A.    OKAY.
18    Q.    WHERE DID YOU REMAIN DURING THE COURSE OF YOUR
19    COMMUNICATING WITH OFFICERS WALKER AND REYNOLDS?
20    A.    STILL AT THE AREA OF 56TH AND MASTER STREET.
21    Q.    WERE DE LEE, TILLMAN, DIGGS, AND TORAIN OUT OF
22    YOUR VIEW?
23    A.    LITTLE BIT MORE THAN 20 MINUTES.
24    Q.    DID YOU HAVE OCCASION TO SEE DE LEE, TILLMAN
25    AND DIGGS RETURN?
```

PAGE 21

```
 1              Off. Brian Monaghan - Direct          21
 2    A.    YES, I DID.
 3    Q.    WHO WAS DRIVING THAT VEHICLE?
 4    A.    DE LEE WAS DRIVING.
 5    Q.    AND WAS IT THE SAME VEHICLE THEY HAD LEFT IN?
 6    A.    YES, IT WAS.
 7    Q.    WHAT HAPPENED WHEN THEY CAME BACK?
 8    A.    WHEN THEY CAME BACK, IT WAS ABOUT 2:37 P.M.
 9    THEY WENT TO THE PORCH OF 5605.  AT THAT TIME I
10    OBSERVED THE DEFENDANT MOON BACK THERE IN THE GRAY, HE
11    WAS STANDING THERE.  THERE WAS ALSO ANOTHER MALE WENT
12    BY THE NAME OF RONALD FREEMAN.  HE WAS ON THE PORCH
13    ALONG WITH ANTHONY HODGES IN THE GRAY SWEATSHIRT.
14              YOUR HONOR, AS DE LEE GOT OUT OF THE VEHICLE,
15    THEY ALL ENTERED 5606, THE PORCH AREA.  HE PULLED OUT
16    A CLEAR BAGGIE, HE REMOVED GOLF BALL SIZED OBJECTS
17    FROM THAT BAGGIE.
18              THE COURT:  WHO WAS THIS?  DE LEE?
19              THE WITNESS:  YES, IT WAS, YOUR HONOR.
20              MR. SCIOLLA:  YOUR HONOR, IF I MAY, I'M
21    SORRY, I DON'T WANT TO INTERRUPT.  WAS THE
22    TESTIMONY THAT MR. TORAIN CAME BACK AT THAT
23    TIME WITH THE OTHER TWO MEN?
24              MS. ROBINSON:  I DON'T THINK SO.
25              MR. SCIOLLA:  OKAY.  IT WAS UNCLEAR.  I
```

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 7    PAGE 22

**PAGE 22**

Off. Brian Monaghan - Direct

1  JUST WANT TO MAKE CERTAIN THE RECORD'S CLEAR.
2  THANK YOU.
3          THE WITNESS:  YOUR HONOR, HE HANDED THE
4  OBJECTS, THE GOLF BALL SIZED OBJECTS TO MOON,
5  FREEMAN, HODGES, AND DIGGS.  EACH RECEIVED THE
6  OBJECTS, YOUR HONOR.  HE ALSO HAD IN HIS
7  HAND --
8          MR. MC MONAGLE:  MOON, FREEMAN, HODGES,
9  AND DIGGS?
10         THE WITNESS:  YES.
11         YOUR HONOR, HE ALSO HAD IN HIS HAND A
12  CLEAR BAGGIE.  I COULD TELL THERE WAS GREEN
13  TINTED PACKETS IN THIS BAGGIE.  PUT IT IN HIS
14  JACKET POCKET, YOUR HONOR.
15         YOUR HONOR, FOR ABOUT, BETWEEN, LIKE,
16  2:37 AND 2:55 YOUR HONOR, I OBSERVED ALL FOUR
17  OF THOSE MALES, BLACK FEMALES AND BLACK
18  MALES WOULD APPROACH, THEY WERE BOTH STANDING
19  ON 5607, 5605, I BELIEVE HODGES WAS STANDING ON
20  5607, DE LEE AND MOON WAS ON 5605, FREEMAN WAS
21  WITH MOON, AND DE LEE AND DIGGS WAS STANDING
22  THERE WITH THE MALE IN THE GRAY SHIRT, HODGES,
23  YOUR HONOR.  I OBSERVED NUMEROUS MALES AND
24  FEMALES APPROACH THEM AT WHICH TIME,

**PAGE 23**

Off. Brian Monaghan - Direct

1  YOUR HONOR, THEY WOULD ACCEPT U.S. --
2          MR. GIOVANNI:  APPROACH WHO?  ALL OF
3  THEM?
4          THE WITNESS:  ALL DIFFERENT TIMES.
5          THE COURT:  DIFFERENT ONES AT DIFFERENT
6  TIMES?
7          THE WITNESS:  YES, YOUR HONOR.
8          THE COURT:  HOW CLOSE WERE THEY STANDING
9  TO EACH OTHER?
10         THE WITNESS:  ONE WOULD STAND AT THE TOP
11  OF THE STEPS.  AS SOON AS HE MADE THE SALE,
12  HE WOULD BACK AWAY, SOMEONE ELSE WOULD COME UP,
13  AND THE OTHER ONE WOULD MAKE THE SALE.
14         THE COURT:  A ROTATING LINE?
15         THE WITNESS:  NOT A ROTATING --
16         THE COURT:  NOT IN, LIKE, ROTATION?
17         THE WITNESS:  NOT BEING IN LINE,
18  JUST STANDING OFF.  WHEN ONE WOULD SELL, THE
19  OTHER ONE WOULD WALK UP AND SELL, ALSO.
20         THE COURT:  OKAY.
21         THE WITNESS:  AND THEY SOLD TO NUMEROUS
22  BLACK MALES AND FEMALES, YOUR HONOR.
23         YOUR HONOR, ABOUT 3:05, P.M. I OBSERVED
24  A GREEN BONNEVILLE WITH A PENNSYLVANIA TAG

**PAGE 24**

Off. Brian Monaghan - Direct

1  DNZ-7857 THAT WAS BEING OPERATED BY THE
2  DEFENDANT SITTING WITH THE WHITE T-SHIRT WITH
3  THE BEARD, YOUR HONOR, AND RIGHT BEHIND
4  COUNSEL.
5          MS. ROBINSON:  INDICATING THE DEFENDANT
6  RAYMOND HOWARD.
7          THE WITNESS:  YES.  GAVE US A NAME OF
8  HOWARD.  HE PULLED UP TO THAT LOCATION,
9  YOUR HONOR.  HE WAS WITH THE MALE THAT IS
10  SITTING TO THE FAR LEFT, YOUR HONOR, IN A WHITE
11  DRESS SHIRT WITH THE BEARD, AND HE GAVE US THE
12  NAME OF MAURICE GREY.  THEY PULLED UP ON THAT
13  LOCATION, YOUR HONOR, AT WHICH TIME THEY WALKED
14  UP TO THE PORCH, 5605 WEST MASTER.  THEY HAD A
15  BRIEF CONVERSATION WITH DE LEE, AT WHICH TIME
16  DE LEE REMOVED U.S. CURRENCY, YOUR HONOR, FROM
17  HIS POCKETS.  HE HANDED THE U.S. CURRENCY TO
18  THE DEFENDANT HOWARD.
19  BY MS. ROBINSON:
20  Q.   THEN WHAT DID THE MALES DO?
21  A.   AT THAT TIME, YOUR HONOR, IF I CAN REFER --
22  OKAY.  ABOUT 3:13, DE LEE AND FREEMAN GOT INTO THE
23  BUICK.  THEY LEFT THE AREA.  ABOUT 3:17 A MARKED
24  VEHICLE CAME TO THE INTERSECTION OF 56TH AND MASTER

**PAGE 25**

Off. Brian Monaghan - Direct

1  STREET WITH HIS LIGHTS ON AND HE HAD A SIREN,
2  YOUR HONOR, AT WHICH TIME I OBSERVED HOWARD AND DIGGS,
3  WHO WAS ON THE PORCH AT 5605, THEY JUMPED INTO THE
4  GREEN BONNEVILLE, YOUR HONOR, AND LEFT AT A HIGH RATE
5  OF SPEED.  THEY WERE LATER STOPPED, I BELIEVE IT WAS
6  THE 14 OR 1300 BLOCK OF ALLISON STREET, YOUR HONOR.
7          THE COURT:  THE MARKED VEHICLE, WAS THAT
8  COMPLETELY INDEPENDENT, JUST HAPPENED TO BE IN
9  THE AREA?
10         THE WITNESS:  I DON'T KNOW.
11         THE COURT:  ALL RIGHT.  HAD NOTHING TO DO
12  WITH YOUR SURVEILLANCE AND INVESTIGATION.
13         THE WITNESS:  YOUR HONOR, THE MALE HODGES
14  GOT INTO THE PLYMOUTH BREEZE AND LEFT THE
15  AREA WITH A BLACK FEMALE WHERE HE WAS LATER
16  STOPPED AT 56TH AND MARKET STREET BY OFFICERS.
17         ABOUT 3:27 I OBSERVED DARNELL DE LEE,
18  RONALD FREEMAN, THEY RAN SOUTHBOUND ON 56TH
19  STREET, ON THE PORCH.  AND AS THEY RAN UP ONTO
20  THE PORCH, HE HOLLERED, "YO, THE COPS DOWN AND
21  THEY'RE COMING," AT WHICH TIME I OBSERVED
22  MOON, DE LEE, FREEMAN, TILLMAN, AND A MALE WENT
23  BY THE NAME OF PICANOT, A JUVENILE,
24  YOUR HONOR, THEY ALL RAN FROM THAT PORCH.

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 8    PAGE 26

```
 1                 Off. Brian Monaghan - Direct        26
 2         THEY RAN NORTHBOUND ON ITHAN STREET,
 3         YOUR HONOR.  I NOTIFIED BACKUP OFFICERS OF THE
 4         DESCRIPTION AND WHERE THEY WERE RUNNING AT.
 5    BY MS. ROBINSON:
 6         Q.    AND DID YOU PARTICIPATE IN THE ARRESTS OF ANY
 7    OF THOSE INDIVIDUALS?
 8         A.    NO, I DID NOT.
 9         Q.    AND PROCEEDING ON TO YOUR PARTICIPATION,
10    OFFICER MONAGHAN, WHAT WAS THE NEXT THING THAT YOU
11    DID?
12         A.    AFTER I ASCERTAINED MOST OF THE MALES WERE
13    PRESENT, I SECURED -- WELL, I HAD SEARCH AND SEIZURE
14    WARRANTS, WARRANT NO. 99025 FOR THE PROPERTY OF 5605,
15    99026 FOR THE PROPERTY OF 5607, 99027 FOR THE PROPERTY
16    AT 5609 WEST MASTER STREET.. YOUR HONOR, INSIDE 5605 A
17    FEMALE BY THE NAME OF GLENDA DE LEE WAS STOPPED AND
18    DETAINED, YOUR HONOR.
19         Q.    DID YOU LATER ASCERTAIN HER RELATIONSHIP TO THE
20    CO-DEFENDANT, DARNELL DE LEE?
21         A.    IT WAS HIS MOTHER.
22         Q.    DID YOU ACTUALLY GO THROUGH THIS PROPERTY,
23    OFFICER MONAGHAN?
24         A.    YES, I DID.
25         Q.    AND WHAT, IF ANYTHING, DID YOU DO WITH RESPECT
```

PAGE 28

```
 1                 Off. Brian Monaghan - Direct        28
 2         PACKETS, THE FOURTH BAGGIE CONTAINED 30
 3         CLEAR TINTED ZIP-LOCK PACKETS, FOR A TOTAL OF
 4         177 PACKETS, YOUR HONOR.  YOUR HONOR, THAT WAS
 5         PLACED ON PROPERTY RECEIPT 2298950.
 6              YOUR HONOR, INSIDE THAT PROPERTY I
 7         RECOVERED ONE BOX CONTAINING NUMEROUS LIVE .45
 8         CALIBER AND .40 CALIBER BULLETS.  THAT WAS
 9         PLACED ON PROPERTY RECEIPT 2298592, AND ONE
10         CLEAR BAGGIE, I BELIEVE THERE WAS A SYMBOL ON
11         IT, CONTAINED NEW AND USED GREEN TINTED
12         ZIP-LOCK PACKETS.  YOUR HONOR, I ALSO RECOVERED
13         FROM THAT BEDROOM, YOUR HONOR, THERE WAS A
14         RECEIPT FROM THE FIRST JUDICIAL DISTRICT OF
15         PENNSYLVANIA IN THE NAME OF DARNELL DE LEE.
16         THERE WAS ALSO A LETTER ADDRESSED -- THERE WAS
17         A LETTER ADDRESSED TO DARNELL DE LEE FROM THE
18         LAW OFFICE OF GERALD STEIN AND A WADE CABLE
19         BILL WAS IN THE NAME OF GLENDA DE LEE THAT I
20         FOUND DOWNSTAIRS.
21    BY MS. ROBINSON:
22         Q.    DID YOU AT SOME POINT OBTAIN A KEY FOR THAT
23    PROPERTY?
24         A.    YES, I DID.  I BELIEVE IT WAS POLICE OFFICER
25    REYNOLDS THAT GAVE A KEY, THE KEY THAT WAS RECOVERED
```

PAGE 27

```
 1                 Off. Brian Monaghan - Direct        27
 2    TO KEYS?  WERE KEYS OBTAINED TO THIS PROPERTY?
 3         A.    I WAS GIVEN A KEY -- WELL, AT THIS TIME WHEN I
 4    WENT THROUGH THE PROPERTY, WE HAD TO ENTER BY FORCE
 5    AFTER KNOCKING AND ANNOUNCING.
 6              THE COURT:  5605?
 7              THE WITNESS:  5606, YOUR HONOR.
 8              YOUR HONOR, I WENT UP TO THE REAR BEDROOM
 9    OF 5605.  THERE WAS A PADLOCK ON THE DOOR.
10    YOUR HONOR, ALONG WITH HELP FROM OTHER MEMBERS
11    OF THE FIELD UNIT, WE OPENED UP THE DOOR OF THE
12    REAR BEDROOM.
13              INSIDE THE CLOSET, YOUR HONOR, THERE WAS
14    A PADLOCK ON THE DOOR, WE HAD TO OPEN UP -- WE
15    DIDN'T HAVE A KEEP AT THAT TIME.  YOUR HONOR,
16    INSIDE THE CLOSET I FOUND ONE BLUE BALLISTIC
17    VEST.  YOUR HONOR THAT WAS PLACED ON PROPERTY
18    RECEIPT 2298591.  YOUR HONOR, ON THE DRESSER
19    DRAWER THERE WAS A CLEAR BAGGIE.  INSIDE THAT
20    BAGGIE, YOUR HONOR, THERE WAS FOUR CLEAR
21    BAGGIES THAT WAS INSIDE IN A KNOT, YOUR HONOR,
22    THEY WERE INDIVIDUALLY TIED, YOUR HONOR.  ONE
23    BAGGIE CONTAINED 63 GREEN TINTED ZIP-LOCK
24    PACKETS, ANOTHER BAG, 53 ZIP-LOCK PACKETS,
25    ANOTHER BAG CONTAINED 31 CLEAR, TINTED ZIP-LOCK
```

PAGE 29

```
 1                 Off. Brian Monaghan - Direct        29
 2    AT THE TIME OF ARREST OF DARNELL DE LEE.  AND I TRIED
 3    THE KEY, YOUR HONOR, AND THE KEY FIT THE DOOR, 5605.
 4    ALSO, THERE WAS A PADLOCK KEY THAT FIT THE PADLOCK.
 5    YOUR HONOR, I WAS ABLE TO OPEN THE PADLOCK.  IT WAS
 6    STILL LOCKED WHEN WE BUSTED THROUGH THE BEDROOM DOOR,
 7    AND IT OPENED UP THE PADLOCK OF THAT DOOR.
 8         Q.    AND DO YOU KNOW WHERE THE PADLOCK KEY WAS
 9    RECOVERED FROM?
10         A.    I'M NOT SURE.
11         Q.    NOW, MOVING ON TO THE NEXT PROPERTY, 5607
12    MASTER STREET, DID YOU PARTICIPATE IN THAT SEARCH OF
13    THAT PROPERTY?
14         A.    I WAS THERE BUT I DIDN'T PARTICIPATE IN THE
15    SEARCH.
16         Q.    AND WHO ACTUALLY DID THAT SEARCH?
17         A.    POLICE OFFICER GALAZKA, G-A-L-A-Z-K-A, BADGE
18    NO. 7481.
19         Q.    AND DID YOU, MOVING ON, HANDLE THE SEARCH AT
20    5609 MASTER STREET?
21         A.    YES, I DID.  AFTER I WAS FINISHED WITH 5605,
22    5609 WAS SECURED, YOUR HONOR.  IT APPEARED TO BE AN
23    ABANDONED HOUSE.  NO FURNITURE, TRASH ALL AROUND ON
24    THE PROPERTY, YOUR HONOR, NO LOCKS ON THE DOORS, OR
25    ANYTHING.  INSIDE I RECOVERED FIVE GREEN TINTED
```

COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 9   PAGE 30

```
                    Off. Brian Monaghan - Direct        30
 1
 2   ZIP-LOCK PACKETS, CONTAINED A GREEN WEED AND SEED
 3   SUBSTANCE, ALLEGED MARIJUANA. I PLACED THAT ON
 4   PROPERTY RECEIPT 2308203, AND NUMEROUS NEW AND UNUSED
 5   GREEN TINTED ZIP-LOCK PACKETS AND THREE BOXES OF
 6   VARIOUS LIVE ROUNDS THAT WAS PLACED ON PROPERTY
 7   RECEIPT 2308204.
 8       Q.   NOW, DID YOU HAVE OCCASION TO RECEIVE
 9   INFORMATION FROM OFFICER REYNOLDS AND ANY PHYSICAL
10   PROPERTY IN RELATION TO THE ADDRESS 1628 NORTH 55TH
11   STREET, APARTMENT 2?
12       A.   YES. ABOUT 3:55 I WENT TO THAT AREA WITH
13   POLICE OFFICER KELLY, 1658 NORTH 55TH STREET. THE
14   MIDDLE APARTMENT WAS BEING SECURED BY POLICE OFFICER
15   WALKER, YOUR HONOR. HE WAS STANDING IN THE HALLWAY OF
16   THAT PROPERTY, YOUR HONOR. I WAS GIVEN A KEY AT THAT
17   TIME BY POLICE OFFICER REYNOLDS THAT HE RECOVERED FROM
18   THE DEFENDANT KAREEM TORAIN AFTER HE WAS STOPPED AND
19   ARRESTED. YOUR HONOR, THAT KEY OPENED UP THE FRONT
20   DOOR OF 1628 NORTH 55TH STREET. IT ALSO OPENED UP THE
21   DOOR, IT WAS THE MIDDLE ROOM, YOUR HONOR, OF THAT
22   PROPERTY, FIRST FLOOR, MIDDLE ROOM.
23       YOUR HONOR, I SECURED SEARCH AND SEIZURE
24   WARRANT NO. -- IF I CAN REFER TO MY NOTES,
25   YOUR HONOR -- SEARCH AND SEIZURE WARRANT NO. 99028.
```

PAGE 31

```
                    Off. Brian Monaghan - Direct        31
 1
 2   YOUR HONOR. I EXECUTED THAT WARRANT AT 1 A.M. ON THE
 3   5TH. THAT WOULD BE FRIDAY, THE 5TH. YOUR HONOR,
 4   AFTER EXECUTING IT, I RECOVERED FROM INSIDE THAT
 5   PROPERTY, WHICH WAS INSIDE THE BOX SPRING AND
 6   MATTRESS, LAYING ON THE BED, YOUR HONOR, IT WAS A
 7   CERTIFY SAFE. INSIDE THERE WAS AN AMBER PILL BOTTLE,
 8   WHITE TOP. I PLACED IT ON PROPERTY RECEIPT 2308224.
 9       ALSO, YOUR HONOR, IN THAT BOX SPRING, THREE
10   CLEAR BAGGIES TIED IN A KNOT AT THE TOP, YOUR HONOR,
11   AND ALL TOGETHER -- IT WAS AN OFF-WHITE CHUNKY
12   SUBSTANCE, ALLEGED CRACK COCAINE INSIDE, YOUR HONOR,
13   FOR A TOTAL OF -- YOUR HONOR, I PUT DOWN 17 GRAMS, BUT
14   I'M NOT SURE OF THE GRAMS AT THIS TIME. THAT'S WHAT
15   WE MEASURED IT OUT TO BE, YOUR HONOR, IN OUR
16   HEADQUARTERS. AND IT WAS PLACED ON PROPERTY RECEIPT
17   2308223.
18       Q.   NOW, DID YOU HAVE OCCASION TO GO BACK TO YOUR
19   HEADQUARTERS AND START TO PROCESS ALL THE DIFFERENT
20   ITEMS THAT HAD BEEN RECOVERED BY YOURSELF AS WELL AS
21   YOUR FELLOW OFFICERS INVOLVED IN THE ARRESTS AND
22   SEIZURES FROM THESE HOMES AND DEFENDANTS?
23       A.   YES, I DID. I FOUND OUT INSIDE MY HEADQUARTERS
24   THAT THE DEFENDANT SITTING IN THE BACK WITH THE GRAY
25   SHIRT, HE WAS NEVER LOCATED, YOUR HONOR, AS HE RAN
```

PAGE 32

```
                    Off. Brian Monaghan - Direct        32
 1
 2   NORTHBOUND ON IYEAN STREET, YOUR HONOR. HE WAS LOST
 3   IN THE AREA.
 4       Q.   AND THAT WOULD BE THE DEFENDANT MOON?
 5       A.   YES.
 6       Q.   DO YOU KNOW WHEN HE WAS ARRESTED?
 7       A.   HE WAS ARRESTED ON THE 10TH, YOUR HONOR, INSIDE
 8   OF 1401 ARCH STREET WHILE HE WAS AT HIS PROBATION
 9   OFFICER'S OFFICE.
10       Q.   DO YOU KNOW WHETHER OR NOT THE DEFENDANT WAS
11   RELEASED AT THIS POINT DURING THE PROCESSING OF THIS
12   CASE?
13       A.   YOUR HONOR PLEASES, POLICE OFFICER FRANCIS, HE
14   STOPPED THE DEFENDANT GREY. INSIDE THE VEHICLE,
15   YOUR HONOR --
16            MR. SCIOLLA:  YOUR HONOR, I WOULD OBJECT.
17   I DON'T KNOW WHAT RELEVANCE --
18            THE COURT:  DOES IT MATTER?
19   BY MS. ROBINSON:
20       Q.   WELL, DID YOU HAVE OCCASION TO HAVE A
21   CONVERSATION WITH DEFENDANT GREY AT SOME POINT DURING
22   JANUARY 4TH?
23            MR. STERN:  I OBJECT.
24            THE COURT:  OVERRULED.
25            CONVERSATION HE HAD, THAT THIS OFFICER
```

PAGE 33

```
                    Off. Brian Monaghan - Direct        33
 1
 2   HAD WITH THE DEFENDANT.
 3            THE WITNESS:  YOUR HONOR, HE WAS RELEASED
 4   FROM THE 19TH DISTRICT. HE CALLED OUR
 5   HEADQUARTERS. HE WANTED HIS MONEY BACK.
 6   BY MS. ROBINSON:
 7       Q.   DID YOU TALK TO DEFENDANT GREY?
 8       A.   I DID NOT. MY SUPERVISOR DID. BUT I WAS RIGHT
 9   THERE STANDING NEXT TO HIM WHEN HE CALLED.
10       Q.   AND WHAT HAPPENED?
11       A.   YOUR HONOR, WE TOLD HIM HE COULD COME DOWN TO
12   OUR HEADQUARTERS TO GET HIS MONEY, YOUR HONOR.
13            THE COURT:  AND THEN HE WAS ARRESTED;
14   RIGHT?
15            THE WITNESS:  YES, YOUR HONOR.
16            THE COURT:  OKAY. I FIGURED THAT OUT.
17            THE WITNESS:  YOUR HONOR, WHEN POLICE
18   OFFICER FRANCIS HANDED ME THE EVIDENCE BACK, IT
19   WAS SEALED, THAT HE RECOVERED FROM THE
20   DEFENDANT, INSIDE THAT EVIDENCE BAG,
21   YOUR HONOR, THAT I DIDN'T KNOW AT THE TIME
22   UNTIL I GOT BACK TO HEADQUARTERS, THERE WAS A
23   CLEAR BAGGIE WITH A 112 XANEX, AND 14 YELLOW
24   TINTED ZIP-LOCK PACKETS.
25   BY MS. ROBINSON:
```

## COURT OF COMMON PLEAS - MINUSCRIPT

SHEET 10    PAGE 34

PAGE 34

```
                Off. Brian Monaghan - Direct        34
 1
 2      Q.   HOW MUCH MONEY WAS IN THERE?
 3      A.   IF I CAN REFER TO MY NOTES. I BELIEVE, LIKE,
 4           $68.
 5      Q.   DID THE DEFENDANT, IN FACT, APPEAR TO CLAIM HIS
 6           $68?
 7      A.   YES. IT WAS PLACED ON PROPERTY RECEIPT
 8           2308220. YES. HE DID WITH HIS FATHER AT ABOUT 10
 9           P.M. THAT NIGHT, YOUR HONOR, WHEN HE WAS ARRESTED.
10                THE COURT:  WHICH DEFENDANT WAS THIS?
11           DEFENDANT GREY?
12                THE WITNESS:  YES, YOUR HONOR.  HE'S
13           SITTING ON THE FAR LEFT IN THE WHITE SHIRT.
14                MS. ROBINSON:  IF I MAY JUST HAVE ONE
15           MOMENT.
16                      -----
17                     (PAUSE)
18                      -----
19                MS. ROBINSON:  I HAVE NO MORE QUESTIONS.
20                THE COURT:  OKAY.
21                      -----
22                  CROSS-EXAMINATION
23                      -----
24      BY MR. CAMPBELL:
25      Q.   OFFICER, AM I CORRECT YOU CONDUCTED THE
```

PAGE 36

```
                Off. Brian Monaghan - Cross         36
 1
 2                     THE COURT:  THAT'S FINE.  WHEN YOU CHECK ----
 3           YOUR PACKAGE, ASSUMING YOU FIND THEM, KEEP
 4           THEM AND GIVE THEM TO THE D.A. -----
 5                THE WITNESS:  OKAY.
 6      BY MR. CAMPBELL:
 7      Q.   AND YOU WERE USING VISUAL AIDS, I THINK YOU
 8           SAID?
 9      A.   ON THE 2ND.
10      Q.   ON THE 2ND.
11           WAS YOUR SURVEILLANCE LOCATION THE SAME ON EACH
12           DATE?
13      A.   NO. NO, IT WAS NOT.
14      Q.   SO LET'S START WITH THE 2ND.  ON THE 2ND YOU
15           USED VISUAL AIDS.
16           APPROXIMATELY HOW FAR WERE YOU FROM THE
17           PROPERTY AT 5605?
18      A.   DIRECTLY RIGHT ACROSS THE STREET.
19                THE COURT:  WERE YOU IN A CONFIDENTIAL
20           LOCATION ANY OF THE THREE DAYS?
21                THE WITNESS:  NO, YOUR HONOR.
22                THE COURT:  YOU CAN TELL THEM EXACTLY
23           WHERE YOU WERE EACH DAY?
24                THE WITNESS:  YES, YOUR HONOR.
25                THE COURT:  ALL RIGHT.
```

PAGE 35

```
                Off. Brian Monaghan - Cross         35
 1
 2           SURVEILLANCE ON JANUARY 2ND, 3RD, AND 4TH?
 3      A.   THAT'S CORRECT.
 4      Q.   ALL RIGHT.  AND THEN ON THE 5TH YOU EXECUTED
 5           SEARCH AND SEIZURE WARRANTS; RIGHT?
 6      A.   ON THE 4TH EXCUTED SEARCH AND SEIZURE WARRANTS.
 7      Q.   ON THE 4TH.  I'M SORRY.
 8           NOW, DURING YOUR SURVEILLANCES, YOU WERE ALWAYS
 9           IN THE COMPANY OF YOUR BROTHER OFFICER SEAN KELLY?
10      A.   THAT'S CORRECT.
11      Q.   WAS HE THE RECORDER, I TAKE IT?
12      A.   WHAT DO YOU MEAN BY "RECORDER"?
13      Q.   ALL RIGHT, WELL, WAS ANYONE -- DID YOU TAKE
14           CONTEMPORANEOUS NOTES?     what about you
15      A.   YES, I DID.
16      Q.   ALL RIGHT.  AND DO YOU HAVE THOSE NOTES WITH
17           YOU TODAY, BY THE WAY?
18      A.   NO, I DON'T.  NOT TODAY.
19                MR. CAMPBELL:  ALL RIGHT.  I WOULD JUST
20           ASK THE NOTES BE MADE AVAILABLE AS PART OF
21           DISCOVERY.
22                THE COURT:  HAVE THOSE NOTES BEEN -----
23           PRESERVED?
24                THE WITNESS:  I'M NOT SURE, YOUR HONOR.
25           I'LL HAVE TO CHECK MY PACKAGE THAT I HAVE. ----
```

PAGE 37

```
                Off. Brian Monaghan - Cross         37
 1
 2                      -----
 3      BY MR. CAMPBELL:
 4      Q.   WHERE EXACTLY WERE YOU?
 5      A.   ON THE 2ND I WAS PARKED RIGHT ACROSS THE
 6           STREET, ON THE OPPOSITE SIDE OF THE STREET IN FRONT OF
 7           5605.  ON THE 3RD AND 4TH I WAS PARKED ON THE
 8           NORTHEAST CORNER, INSIDE OUR VEHICLE, OF 56TH AND
 9           MASTER STREET.
10      Q.   OKAY.  WINDOWS WERE ROLLED UP, I TAKE IT?
11      A.   YES.
12      Q.   OKAY.  I'M TALKING ABOUT THE 2ND?
13      A.   YES.
14                MR. CAMPBELL:  ALL RIGHT.  COURT'S
15           INDULGENCE FOR ONE MOMENT.
16                      -----
17                     (PAUSE)
18                      -----
19      BY MR. CAMPBELL:
20      Q.   AND YOU STATED THAT ON THE SECOND YOU SAW
21           MR. HODGES INVOLVED IN NUMEROUS TRANSACTIONS, YOU PUT
22           IT?
23      A.   YES, I DID.
24      Q.   OBJECTS IN EXCHANGE FOR U.S. CURRENCY?
25      A.   THAT'S CORRECT.
```

SHEET 11    PAGE 38

PAGE 38

```
                 Off. Brian Monaghan - Cross        38
 1
 2    Q.    ON NONE OF THOSE OCCASIONS WERE YOU ABLE TO SEE
 3    WHAT THE SMALL OBJECTS WERE; IS THAT CORRECT?
 4    A.    NO. I COULDN'T TELL AT THAT TIME.
 5    Q.    OKAY. AND YOU COULDN'T TELL WHAT THE
 6    DENOMINATIONS WERE ON THE BILLS?
 7    A.    NO, I COULD NOT.
 8    Q.    AND YOU COULD NOT HEAR ANY CONVERSATIONS
 9    BETWEEN MR. HODGES AND ANYONE ELSE ON THAT DAY; IS
10    THAT CORRECT?
11    A.    THAT'S CORRECT.
12    Q.    WOULD YOU SAY ABOUT THE SAME THING ABOUT YOUR
13    OBSERVATIONS ON THE 3RD AND THE 4TH WITH RESPECT TO
14    MR. HODGES?
15    A.    I COULD NOT HEAR BUT I COULD SEE WHAT THEY WERE
16    SELLING.
17    Q.    WHAT EXACTLY DID YOU SEE?  WHITE OBJECTS?
18    A.    GREEN OBJECTS.
19    Q.    GREEN OBJECTS.  OKAY.
20          AND YOU STILL COULDN'T TELL THE DENOMINATIONS
21    ON THE BILLS ON THE 3RD OR THE 4TH?
22    A.    NO. I COULDN'T TELL.
23    Q.    ALL RIGHT.  AND AM I CORRECT ON THE THIRD YOU
24    SAW ONLY ONE EXCHANGE INVOLVING MR. HODGES?
25    A.    ON THE 3RD?
```

PAGE 39

```
                 Off. Brian Monaghan - Cross        39
 1
 2    Q.    YES, AT 2:22 P.M.
 3    A.    THAT'S CORRECT.  WHEN HE CAME OUT OF THE HOUSE.
 4    Q.    OKAY. AND ALSO AT THE TIME, I MAY HAVE ASKED
 5    YOU ALREADY, YOU COULDN'T HEAR ANY CONVERSATION
 6    BETWEEN MR. HODGES AND ANYONE ELSE; RIGHT?
 7    A.    NO, I COULDN'T.
 8    Q.    AND, OFFICER, YOU MENTIONED THAT ON THE
 9    4TH HE OPENED A CAR DOOR WITH A KEY; IS THAT CORRECT?
10    A.    HE OPENED HIS HOUSE WITH A KEY.
11    Q.    HIS HOUSE WITH A KEY.
12          DID YOU EVER RECOVER THAT KEY?
13    A.    YES, I DID.  ONE OF THE ARRESTING OFFICERS DID,
14    YES.
15    Q.    WAS THAT IN YOUR PRESENCE?
16    A.    NO, IT WAS NOT.
17          MR. CAMPBELL: I WOULD ASK THAT BE
18    STRICKEN.  THE QUESTION WAS WHETHER HE
19    RECOVERED THE KEY.
20          THE COURT: OVERRULED.  I THOUGHT THE
21    TESTIMONY WAS PRETTY CLEAR, SOMEONE RECOVERED,
22    SUBSEQUENTLY GAVE IT TO YOU.  THAT'S HOW HE
23    HAD THE KEY, HE COULD CHECK IT AGAINST THE
24    PADLOCK THAT REMAINED LOCKED WHEN HE BROKE THE
25    DOOR DOWN.
```

PAGE 40

```
                 Off. Brian Monaghan - Cross        40
 1
 2
 3    BY MR. CAMPBELL:
 4    Q.    OFFICER, AFTER THE SEARCH AND SEIZURE WARRANT
 5    WAS EXECUTED AT 5605, YOU STATED THAT YOU FOUND ALL
 6    KINDS OF CONTRABAND IN THE SECOND FLOOR BEDROOM; IS
 7    THAT CORRECT?
 8    A.    OF 5605?
 9    Q.    YES.
10    A.    YES.
11    Q.    AND YOU FOUND PROOF OF RESIDENCE FOR GLENDA
12    DE LEE?
13    A.    THAT WAS DOWNSTAIRS.  I BELIEVE IT WAS A WADE
14    CABLE BILL.
15    Q.    YOU FOUND NO PROOF OF RESIDENCE FOR MR. HODGES;
16    IS THAT RIGHT?
17    A.    THAT'S RIGHT.
18    Q.    IN FACT, TO YOUR KNOWLEDGE, NO PROOF OF
19    RESIDENCY WAS RECOVERED FOR MR. HODGES AT 5607 OR
20    5609, EITHER; IS THAT RIGHT?
21    A.    THAT'S CORRECT.
22          MR. CAMPBELL: THAT'S ALL I HAVE.
23          THE COURT: OKAY. THANK YOU.
24          MR. SCIOLLA?
25    BY MR. SCIOLLA:
```

PAGE 41

```
                 Off. Brian Monaghan - Cross        41
 1
 2    Q.    GOOD MORNING, OFFICER MONAGHAN.  HOW ARE YOU?
 3    A.    GOOD MORNING.
 4    Q.    THESE SURVEILLANCES WERE THE 2ND, 3RD, AND 4TH
 5    OF JANUARY?
 6    A.    THAT'S CORRECT.
 7    Q.    AND THE 1ST OF JANUARY YOU DIDN'T DO ANY
 8    SURRVEILLANCE, YOU WERE IN THE MUMMER'S DAY PARADE;
 9    RIGHT?
10    A.    NO.
11    Q.    YOU DIDN'T SEE MR. TORAIN ON THE 2ND OR THE
12    3RD; CORRECT?
13    A.    THAT'S CORRECT.
14    Q.    HE DIDN'T ENTER THIS PLAY UNTIL THE 4TH?
15    A.    THAT'S CORRECT.
16    Q.    ON THAT DATE HE DRIVES UP, THERE'S A BRIEF TWO
17    OR THREE MINUTES STAY AT THE CORNER, MR. DE LEE GETS
18    IN THE CAR AND EXITS THE CAR?
19    A.    THAT'S CORRECT.
20    Q.    AND THEN LATER THAT SAME DAY SOMEBODY, OFFICER
21    REYNOLDS, I GUESS IT IS, MAKES A CAR STOP OF
22    MR. TORAIN?
23    A.    THAT'S CORRECT.
24    Q.    AND IN THAT CAR STOP HE TAKES FROM MR. TORAIN A
25    SET OF KEYS, ONE OF WHICH APPARENTLY SUBSEQUENTLY IS
```

Off. Brian Monaghan - Cross                    42

```
 1                    Off. Brian Monaghan - Cross            42
 2    PROVEN TO BE CAPABLE OF PROVIDING ACCESS TO 1628 NORTH
 3    55TH STREET; CORRECT?
 4    A.    CORRECT.
 5    Q.    THE CAR STOP THAT TOOK PLACE, WHICH I DON'T
 6    BELIEVE YOU TESTIFIED TO ON DIRECT, BUT THE CAR STOP
 7    OF MR. TORAIN BY OFFICER REYNOLDS, THAT DIDN'T
 8    DISCLOSE OR DISLODGE ANY DRUGS OR CONTRABAND; IS THAT
 9    CORRECT?
10              MS. ROBINSON:  OBJECTION.
11              THE COURT:  WELL, IF HE KNOWS, OF COURSE,
12    HE CAN ANSWER.
13              THE WITNESS:  NO DRUGS, JUST U.S.
14    CURRENCY.
15    BY MR. SCIOLLA:
16    Q.    ABOUT 50 BUCKS?
17    A.    I BELIEVE SO.  A PAGER AND A NEXTEL PHONE, I
18    BELIEVE.
19    Q.    AND THEN HE'S TAKEN BACK TO 1628 NORTH 55TH
20    STREET, AT WHICH TIME THE PROPERTY IS SECURED FOR YOU
21    TO OBTAIN A WARRANT WHICH YOU HAD SUBSEQUENTLY
22    OBTAINED ABOUT 1:00 IN THE MORNING; IS THAT RIGHT?
23    A.    HE'S TAKEN INTO CUSTODY.  I'M NOT SURE IF HE
24    WAS TAKEN BACK TO THAT PROPERTY AT THAT TIME.
25    Q.    BUT THE PROPERTY IS SECURED WHILE YOU WENT TO
```

```
 1                    Off. Brian Monaghan - Cross            43
 2    APPLY FOR A WARRANT?
 3    A.    THAT'S CORRECT.
 4    Q.    AND THEN EXECUTION OF THAT WARRANT DISCLOSES
 5    TWO VIALS AND THREE BAGGIES OF THE CRACK COCAINE
 6    SUBSTANCE?
 7    A.    THAT'S CORRECT.
 8    Q.    AND THE 1628 NORTH 55TH STREET PROPERTY, THAT'S
 9    THE SAME PROPERTY THAT YOU TESTIFIED TO THAT EARLIER
10    ON THE 4TH THREE OTHER MALES WENT TO THAT PROPERTY?
11    A.    THAT'S CORRECT.
12    Q.    AND AT THAT POINT IN TIME THERE'S NO TESTIMONY
13    THAT ANYONE COULD SEE WHERE THEY WENT WITHIN THAT
14    PROPERTY; IS THAT RIGHT?
15    A.    I COULD NOT.
16    Q.    AND THE DRUGS THAT ARE FOUND INSIDE THAT
17    PROPERTY ARE FOUND INSIDE A MIDDLE ROOM ON THE FIRST
18    FLOOR; CORRECT?
19    A.    CORRECT.
20    Q.    AND THERE'S NO IDENTIFICATION, DOCUMENTATION
21    WITH REGARD TO MR. TORAIN FOUND IN THAT PROPERTY?
22    A.    THAT'S CORRECT.
23              MR. SCIOLLA:  I HAVE NO FURTHER
24    QUESTIONS.
25    BY MR. STERN:
```

```
 1                    Off. Brian Monaghan - Cross            44
 2    Q.    OFFICER, I REPRESENT MAURICE GREY,
 3    ACCORDING TO YOUR TESTIMONY AND PAPERWORK, THE
 4    ONLY TIME THAT YOU OBSERVED MY CLIENT DURING YOUR
 5    SURVEILLANCE WAS ON JANUARY 4TH, 2001; ISN'T THAT
 6    CORRECT?
 7    A.    THAT'S CORRECT.
 8    Q.    AND YOU ONLY OBSERVED HIM IN 5605, 3:17 P.M.;
 9    ISN'T THAT CORRECT?
10    A.    I BELIEVE IT WAS.
11    Q.    AND THE ONLY THING YOU OBSERVED HIM DOING THAT
12    DAY WAS, ONE, SITTING IN A BONNEVILLE; IS THAT
13    CORRECT?
14    A.    HE WAS EXITING THE BONNEVILLE.
15    Q.    HE EXITED THE BONNEVILLE.  HE STOOD ON THE
16    PORCH OF 5605?
17    A.    THAT'S CORRECT.
18    Q.    AND YOU SAW THE DEFENDANT HOWARD HAVE A
19    CONVERSATION WITH SOMEBODY ELSE, ISN'T THAT A FACT?
20    A.    DR LEE, YES.
21    Q.    MY CLIENT WAS JUST STANDING THERE, IS THAT A
22    FACT?
23    A.    THAT'S CORRECT.
24    Q.    HE NEVER RECEIVED ANY MONEY, IS THAT A FACT?
25    A.    THAT'S CORRECT.
```

```
 1                    Off. Brian Monaghan - Cross            45
 2    Q.    DURING THAT 12 MINUTES OF OBSERVATION, YOU
 3    NEVER SAW HIM ENGAGE IN ANY TRANSACTIONS; IS THAT
 4    CORRECT?
 5    A.    THAT'S CORRECT.
 6    Q.    YOU NEVER OBSERVED ANY BAG OR DRUG
 7    PARAPHERNALIA ON HIM DURING THAT?
 8    A.    NO, I DID NOT.
 9    Q.    NEXT THING YOU SEE HIM DOING IS JUST STANDING
10    ON THE CORNER; ISN'T THAT CORRECT?
11    A.    NO.  I BELIEVE HE LEFT AND GOT INTO THE
12    BONNEVILLE.
13    Q.    SO HE GOT OFF THE PORCH AND GOT IN THE
14    BONNEVILLE, IS THAT YOUR TESTIMONY?
15    A.    YES, IT IS.
16    Q.    AND THEN THE NEXT THING YOU KNOW, THE CAR'S
17    JUST SPEEDING OFF?
18    A.    AFTER THE OFFICER ACTIVATED HIS LIGHTS IN THE
19    MIDDLE OF THE BLOCK AND MADE A U-TURN, THEY GOT IN A
20    VEHICLE, LEFT THE AREA.
21    Q.    MY CLIENT'S WHAT?  A PASSENGER, NOW?
22    A.    YES, HE WAS.
23    Q.    ALWAYS BEEN THE PASSENGER?
24    A.    YES, HE WAS.
25    Q.    UP TO THIS POINT YOU DIDN'T DETERMINE HIM DOING
```

SHEET 13   PAGE 46

**PAGE 46**

Off. Brian Monaghan - Cross                                46

2  ANYTHING CRIMINAL IN NATURE, ISN'T THAT A FACT?
3          MS. ROBINSON: OBJECTION.
4          THE COURT: SUSTAINED.
5  BY MR. STERN:
6  Q.   WHAT LAW DID YOU SEE HIM BREAK UP TO THAT POINT
7  IN TIME?
8          MS. ROBINSON: OBJECTION. CALLS FOR A
9  CONCLUSION.
10         THE COURT: SUSTAINED.
11 BY MR. STERN:
12 Q.   UP TO THE POINT -- STRIKE THAT.
13      DID YOU SEE THE VEHICLE BEING STOPPED?
14 A.   NO, I DID NOT.
15 Q.   AND YOU SAID EVENTUALLY BACK AT THE POLICE
16 STATION, YOU SAID SOME NARCOTICS OR ALLEGED NARCOTICS
17 WAS RECOVERED FROM MY CLIENT?
18 A.   YES, THEY WERE.
19 Q.   AND THEY WERE YELLOW TINTED PACKETS?
20 A.   I BELIEVE THEY WERE. YES.
21 Q.   AND YOU'RE AWARE THAT A SEARCH OF ALL THE REST
22 OF THE HOUSE AND ALL THE OTHER -- REST OF THE HOUSE
23 WHERE WAS NO YELLOW TINTED PACKET?
24 A.   I'M AWARE.
25 Q.   EVERYTHING WAS A DIFFERENT COLOR?

**PAGE 47**

1          Off. Brian Monaghan - Cross                     47
2          MS. ROBINSON: OBJECTION. ASKED AND
3  ANSWERED.
4          THE COURT: OVERRULED. HE CAN ANSWER
5  AGAIN.
6          THE WITNESS: YES.
7          THE COURT: AND YOU DIDN'T SEE ANY YELLOW
8  PACKETS BEING EXCHANGED DURING YOUR THREE
9  DAYS OF SURVEILLANCE, OFFICER?
10         THE WITNESS: THAT'S CORRECT, YOUR HONOR.
11 I COULDN'T TELL.
12         MR. STERN: NO FURTHER QUESTIONS.
13         THE COURT: HOW MANY PACKETS WERE THERE?
14         MS. ROBINSON: FOURTEEN. AND I
15 BELIEVE 112 XANEX.
16         THE COURT: OKAY.
17         MR. SPINA: MAY I, JUDGE?
18         THE COURT: YOU MAY.
19 BY MR. SPINA:
20 Q.   OFFICER, WHEN YOU SET UP YOUR SURVEILLANCE ON
21 JANUARY 2ND, FROM THE PAPERWORK IT LOOKS LIKE YOU
22 FIRST STARTED TAKING NOTES AT ABOUT 3:45 P.M.; IS THAT
23 ACCURATE?
24 A.   YES. WHEN I FIRST SET UP, IT WAS A LITTLE BIT
25 BEFORE.

**PAGE 48**

1          Off. Brian Monaghan - Cross                     48
2  Q.   LOOKS LIKE YOU WERE ON THAT LOCATION UNTIL 5:15
3  OR 5:30 BEFORE YOU END YOUR SURVEILLANCE THAT DAY?
4  A.   YES.
5  Q.   YOU WERE THERE ABOUT TWO HOURS THAT DAY?
6  A.   CLOSE TO IT.
7  Q.   DURING THE TWO HOURS IS IT FAIR TO SAY YOU
8  DON'T SEE MR. HOWARD IN THAT AREA?
9  A.   NO, I DO NOT.
10 Q.   NOR DO YOU SEE THIS VEHICLE THAT MR. --
11 IN WHICH RAYMOND HOWARD PULLS UP IN ON THE 4TH? YOU
12 DON'T SEE THAT IN THE AREA ON THE 2ND?
13 A.   NO, I DIDN'T.
14 Q.   THEN YOU INDICATE ON THE 2ND -- I'M SORRY --
15 ON THE 3RD, THE VERY NEXT DAY, YOU GO BACK AND MAKE A
16 SURVEILLANCE OF THE SAME EXACT AREA?
17 A.   THAT'S CORRECT.
18 Q.   AND LOOKS LIKE, FROM THE PAPERWORK, YOU BEGIN
19 THE SURVEILLANCE ABOUT 11 IN THE MORNING?
20 A.   YES, IT WAS.
21 Q.   AND FROM THE PAPERWORK IT APPEARS THAT THEY
22 CONCLUDE THAT SURVEILLANCE ABOUT 4 OR MAYBE 4:15 IN
23 IN AFTERNOON?
24 A.   YEAH. IT WOULD BE CLOSE, ABOUT 4:15.
25 Q.   YOU WERE THERE THAT ENTIRE 5 OR 5-1/2 HOURS?

**PAGE 49**

1          Off. Brian Monaghan - Cross                     49
2  A.   YES.
3  Q.   DURING THAT ENTIRE TIME MR. HOWARD NEVER
4  APPEARS NOR THE CAR WHICH HE'S SEEN IN ON THE 4TH
5  APPEARS?
6  A.   THAT'S CORRECT.
7  Q.   THEN YOU SAID YOUR SURVEILLANCE ON THE -- YOUR
8  POLICY, I THINK YOU SAID YOU SET UP YOUR SURVEILLANCE
9  ABOUT 1:40 P.M.
10 A.   ABOUT 1:40. YES.
11 Q.   FROM 1:40 TO 3:05 THERE'S NO MR. HOWARD?
12 A.   THAT'S CORRECT.
13 Q.   AND THERE'S NO MR. HOWARD, A GREEN BONNEVILLE
14 IS NOT AT THAT LOCATION?
15 A.   NO, IT WAS NOT.
16 Q.   AND THERE'S ANOTHER GREEN BONNEVILLE THAT YOU
17 SAW SOMEONE ELSE OPERATING THAT SAME DAY, BUT THAT'S
18 NOT THE SAME GREEN BONNEVILLE WE'RE TALKING ABOUT
19 HERE?
20 A.   NO, IT'S NOT.
21 Q.   DIFFERENT VIN NUMBER, DIFFERENT PLATE,
22 DIFFERENT CAR?
23 A.   THAT'S CORRECT.
24 Q.   YOU SAID YOU SAW MR. HOWARD PULL UP ABOUT 3:05
25 IN THE BONNEVILLE WITH MR. GREY?

SHEET 14  PAGE 50

PAGE 50

Off. Brian Monaghan - Cross                50

1
2    A.    YES.
3    Q.    WAS THERE ANYONE ELSE IN THE VEHICLE WHEN THEY
4    ARRIVED?
5    A.    NO.
6    Q.    YOU SAID MR. HOWARD WALKED UP TO THE PORCH,
7    5606 MASTER STREET, THERE'S SOME KIND OF CONVERSATION
8    WITH MR. LEE WHERE YOU CAN'T HEAR THE CONTENT?
9    A.    YES.
10   Q.    THIS DAY YOU'RE ACTUALLY PARKED ON THE
11   SOUTHEAST CORNER OF 56TH AND MASTER, LITTLE BIT
12   FURTHER THAN YOUR PREVIOUS LOCATION ON THE PREVIOUS
13   DAY, WHICH WAS RIGHT ACROSS THE STREET?
14   A.    ON THE 2ND IT WAS RIGHT ACROSS THE STREET.
15   ON THE 3RD AND 4TH IT WAS ON THE SAME CORNER.
16   Q.    SO YOU INDICATED THAT THEY HAD A CONVERSATION
17   THAT YOU CAN'T HEAR AND YOU SAW MR. DE LEE HAND MY
18   CLIENT SOME MONEY?
19   A.    THAT'S CORRECT.
20   Q.    THERE'S NO EXCHANGE OF ANY PACKETS OR GOLF BALL
21   SIZE BAGS AT THAT POINT?
22   A.    NO, IT WAS NOT.
23   Q.    WOULD YOU SAY DURING THE ENTIRE TIME YOU
24   OBSERVED MR. HOWARD ON THE PORCH THERE'S ACTUALLY NO
25   TRANSACTION OCCURRING AT 5605 MASTER STREET?

PAGE 51

Off. Brian Monaghan - Cross                51

1
2    A.    NO, THERE WAS NOT.
3    Q.    BY ANY OF THESE DEFENDANTS, THAT YOU COULD SEE,
4    ANYBODY, AT LEAST WHILE MR. HOWARD IS THERE.  NONE OF
5    THOSE PEOPLE NAMED IN THIS INVESTIGATION EXCHANGED ANY
6    KIND OF NARCOTICS, AS LEAST FOR THAT FIVE MINUTES THAT
7    MR. HOWARD'S THERE?
8    A.    THAT'S CORRECT.
9    Q.    YOU SAID MR. HOWARD WALKS TO THE CORNER WITH --
10   STRIKE THAT.
11          YOU SAID HE DIDN'T WALK TO THE CORNER, HE
12   WALKED BACK TO THE VEHICLE, THE BONNEVILLE?
13   A.    YES.
14   Q.    AND HE ENTERED THE BONNEVILLE?
15   A.    THAT'S CORRECT.
16   Q.    THE MONEY YOU SEE, HE DOESN'T EXCHANGE THAT
17   WITH MR. GREY?  NO EXCHANGE WITH MR. GREY?
18   A.    THAT'S CORRECT.
19   Q.    AND MR. GREY DOESN'T GIVE OR RECEIVE OR DISPLAY
20   ANYTHING FROM MR. HOWARD?
21   A.    THAT'S CORRECT.
22   Q.    OKAY.  AS FAR AS YOU CAN SEE, WHAT WAS LATER
23   RECOVERED FROM HIM HE DIDN'T OBTAIN WHILE HE WAS
24   STANDING ON MASTER STREET?
25          MS. ROBINSON:  OBJECTION TO THE FORM OF

PAGE 52

Off. Brian Monaghan - Cross                52

1
2    THE QUESTION.
3          THE COURT:  DID YOU UNDERSTAND THAT?  I
4    UNDERSTOOD IT.
5          THE WITNESS:  YOUR HONOR, ONLY THING I
6    SAW MR. HOWARD RECEIVE WAS A BUNDLE OF U.S.
7    CURRENCY.
8    BY MR. SPINA:
9    Q.    I MEAN MR. GREY.  DID YOU SEE -- I KNOW YOU SAY
10   AT SOME POINT LATER SOME OBJECTS LATER WERE RECOVERED
11   FROM MR. GREY.
12          MY QUESTION WAS, DID YOU SEE MR. GREY OBTAIN
13   ANY OF THESE THINGS WHILE THERE ON MASTER STREET?
14   A.    NO, I DID NOT.
15   Q.    SO WOULD IT BE FAIR TO SAY, AS FAR AS YOU CAN
16   TELL, THE THINGS THAT WERE LATER RECOVERED FROM
17   MR. GREY WERE NOT OBTAINED AT A TIME OR IN A POSITION
18   WHERE MR. HOWARD SAW IT?
19   A.    THAT WOULD BE -- YES.
20   Q.    SO SUBSEQUENTLY YOU SAID THEY ENTERED INTO THE
21   CAR AND THE CAR WAS STOPPED AND SOME ITEMS WERE
22   RECOVERED FROM MR. HOWARD AND SOME ITEMS WERE
23   RECOVERED FROM MR. GREY?
24   A.    THAT'S CORRECT.
25   Q.    I KNOW YOU WEREN'T THERE TO SEE IT, OKAY, BUT

PAGE 53

Off. Brian Monaghan - Cross                53

1    SUBSEQUENTLY, LATER ON IN YOUR INVESTIGATION SOME
2    MONEY IS TURNED OVER TO YOU THAT WAS RECOVERED FROM
3    MR. HOWARD?
4    A.    THAT'S CORRECT.
5    Q.    AND THERE WERE NO DRUGS RECOVERED FROM
6    MR. HOWARD, AS FAR AS YOU'RE AWARE OF; CORRECT?
7    A.    CORRECT.
8    Q.    AND NO PACKAGE MATERIAL FROM MR. HOWARD, AS FAR
9    AS YOU KNOW OF?
10   A.    NO, THERE WAS NOT.
11   Q.    AND NO KEYS WERE RECOVERED FROM MR. HOWARD THAT
12   FIT ANY OF THESE LOCKS OR PADLOCKS OR DOOR LOCKS AT
13   ANY OF THESE LOCATIONS; AM I CORRECCT?
14   A.    THAT'S CORRECT.
15   Q.    AND THERE'S NO DOCUMENTATION RECOVERED FROM ANY
16   OF THESE HOUSES OR ANY CARS THAT WERE SEARCHED THAT
17   INDICATED THAT MR. HOWARD HAD ANY INTEREST IN ANY OF
18   THESE PLACES?
19   A.    NO, SIR.
20          MS. ROBINSON:  OBJECTION TO "INTEREST".
21          THE COURT:  THERE WAS NO DOCUMENTATION IN
22   HIS NAME RECOVERED FROM ANY OF THE LOCATIONS,
23   IS THAT A FAIR CHARACTERIZATION AND STATEMENT?
24          MS. ROBINSON:  YES.

SHEET 15   PAGE 54

```
                                          54
 1            Off. Brian Monaghan - Cross
 2            THE COURT:  AND THAT WOULD BE YES FROM
 3   THE OFFICER, ALSO?
 4            THE WITNESS:  YES.
 5            THE COURT:  THANK YOU.
 6            MR. SPINA:  THANK YOU, YOUR HONOR.
 7   THAT'S ALL I HAVE.
 8            THE COURT:  HOW MUCH MONEY WAS RECOVERED
 9   FROM MR. HOWARD?
10            THE WITNESS:  YOUR HONOR, I BELIEVE IT
11   WAS $1123.
12            MR. SPINA:  AS A MATTER OF FACT, I HAVE
13   ONE MORE QUESTION.
14            MS. ROBINSON:  I'LL HAVE OFFICER
15   FITZGERALD WHO ARRESTED MR. HOWARD --
16            MR. SPINA:  I JUST HAVE ONE MORE
17   QUESTION.
18            THE COURT:  GO AHEAD.
19   BY MR. SPINA:
20   Q.     OFFICER MONAGHAN, YOU SAID YOU SAW MY CLIENT
21   RECEIVE MONEY.
22            AT THAT POINT IN TIME YOU SAY YOU COULDN'T TELL
23   HOW MUCH MONEY HE WAS RECEIVING?
24   A.     NO, JUST LOOKED LIKE A WAD, A BUNDLE.
25   Q.     LOOKED LIKE A WAD?
```

PAGE 55

```
                                          55
 1            Off. Brian Monaghan - Cross
 2   A.     YES.
 3   Q.     IT DIDN'T NECESSARILY LOOK LIKE TWO WADS OF
 4   MONEY?
 5   A.     NO.
 6            MR. SPINA:  OKAY.  THAT'S ALL I HAVE.
 7            MR. MC MONAGLE:  MAY I, YOUR HONOR?
 8            THE COURT:  YES.
 9   BY MR. MC MONAGLE:
10   Q.     OFFICER, GOOD MORNING.  GOOD AFTERNOON, I
11   SHOULD SAY.  COUPLE QUESTIONS REGARDING MR. TILLMAN.
12   THAT'S THE GENTLEMAN IN THE GREEN BACK THERE.
13            FAIR TO SAY THAT BASED ON YOUR OBSERVATIONS YOU
14   DIDN'T SEE HIM AT ANY POINT IN TIME IN POSSESSION OF
15   ANY DRUG PARAPHERNALIA OF ANY KIND, IS THAT FAIR?
16   A.     THAT'S CORRECT.
17   Q.     AND YOU DIDN'T SEE HIM RECEIVE ANY MONEY OF ANY
18   KIND, DID YOU?
19   A.     NO, I DID NOT.
20   Q.     FAIR TO SAY WHEN YOU CONDUCTED YOUR SEARCHES,
21   YOU DID NOT FIND ANY KEYS TO ANY VEHICLES OR ANY
22   PROPERTIES INVOLVED THIS INVESTIGATION?  FAIR TO SAY?
23            DEFENDANT TILLMAN:  THEY TOOK MY --
24            MR. MC MONAGLE:  HOLD IT.  DON'T TALK,
25   I'LL TALK.
```

PAGE 56

```
                                          56
 1            Off. Brian Monaghan - Cross
 2            THE WITNESS:  I'M NOT AWARE OF ANYTHING
 3   THAT WAS RECOVERED.  I BELIEVE MAYBE A JACKET.
 4   BY MR. MC MONAGLE:
 5   Q.     OKAY.  BUT NOTHING THAT IN ANY WAY WAS ANY KEYS
 6   OR ITEMS LIKE THAT THAT FIT ANY OF THE DOORS INVOLVED
 7   IN THIS INVESTIGATION?
 8   A.     NO.  THERE WAS NONE.
 9   Q.     SAME WOULD HOLD TRUE WITH THE VEHICLES, IS THAT
10   FAIR?
11   A.     THAT'S CORRECT.
12   Q.     AND DO YOU KNOW FROM YOUR INDEPENDENT KNOWLEDGE
13   WHEN HE WAS SEARCHED, WHETHER ANYTHING WAS RECOVERED
14   FROM HIS PERSON?
15   A.     I'M NOT POSITIVE.
16   Q.     OKAY.  THAT COVERS IT AS TO MR. TILLMAN.
17            AS TO MR. DIGGS, YOU REFERRED IN YOUR REPORT
18   THAT SOME POINT IN TIME IN YOUR INVESTIGATION YOU SAW
19   HIM INVOLVED IN TRANSACTIONS?
20   A.     THAT'S CORRECT.
21   Q.     WHEN HE WAS WITH UNIDENTIFIED INDIVIDUALS?
22   A.     YES.
23   Q.     WERE THESE INDIVIDUALS STOPPED AND SEARCHED?
24   A.     NO, THEY WERE NOT.
25   Q.     IT'S FAIR TO SAY WE DON'T KNOW WHAT, IF
```

PAGE 57

```
                                          57
 1            Off. Brian Monaghan - Cross
 2   ANYTHING, THEY HAD ON THEIR PERSONS WHEN, IF, IN FACT,
 3   THIS TRANSACTION DID TAKE PLACE?
 4   A.     THAT'S CORRECT.
 5            MR. MC MONAGLE:  OKAY.  NO FURTHER
 6   QUESTIONS.
 7            THE COURT:  THANKS.  YOU'RE EXCUSED.
 8            THE WITNESS:  THANK YOU, YOUR HONOR.
 9                     -----
10            (WITNESS EXCUSED.)
11                     -----
12            MS. ROBINSON:  YOUR HONOR, COMMONWEALTH
13   CALLS OFFICER JEFF WALKER.
14            MR. MC MONAGLE:  OFFER.
15            MS. ROBINSON:  HE FOLLOWED TORAIN.
16            MR. SCIOLLA:  HE'S ALREADY TESTIFIED --
17            MS. ROBINSON:  HE OBSERVED RECOVERY OF
18   THE KEY.
19            MR. SCIOLLA:  I STIPULATE HE TAKES THE
20   KEY FROM MR. TORAIN, THAT HE WILL TESTIFY HE
21   TOOK THE KEY FROM MR. TORAIN THAT HIT 1628
22   NORTH 55TH.
23            MS. ROBINSON:  THAT HE FOLLOWS DIGGS,
24   TILLMAN, AND DE LEE TO THE LOCATION OF 1628
25   NORTH 55TH.
```



SHEET 16    PAGE 58

58

1
2      MR. MC MONAGLE: THAT'S BEEN TESTIFIED
3
4      TO.
5           MS. ROBINSON: AND OFFICER WALKER CAN SEE
6      IN AND SEE HE'S GOING TO THE MIDDLE APARTMENT
7      ON THE FIRST FLOOR, APARTMENT NO. 2. THAT IS
8      THE LOCATION WHERE ALL THOSE INDIVIDUALS ARE,
9      AND THAT HE SEES MR. TORAIN USE A KEY IN ORDER
10     TO ACCESS THAT LOCATION, AND IN FACT, THEN
11     HE'S ARRESTED. MR. TORAIN HAS A KEY TO 1628
12     NORTH 55TH STREET.
13          MR. SCIOLLA: FOR PURPOSES OF THIS
14     HEARING, JUDGE, I'LL STIPULATE THAT'S WHAT
15     OFFICER -- WHAT'S HIS NAME?
16          MS. ROBINSON: JEFF WALKER.
17          MR. SCIOLLA: -- WOULD TESTIFY.
18          THE COURT: JUST MR. TORAIN ENTERED THAT
19     PROPERTY WITH USE OF THE KEY, OR DOES HE SEE
20     THE OTHER TWO INDIVIDUALS?
21          MR. SCIOLLA: THREE.
22          MS. ROBINSON: NO. HE SEES HIM ENTER
23     1628 NORTH --
24          THE COURT: ONLY TORAIN.
25          MS. ROBINSON: ONLY SEES TORAIN.

PAGE 60

60

1
2           THE COURT: OFFICER, FOR PURPOSES OF THIS
3      HEARING, LOOKS LIKE MOST OF YOUR TESTIMONY IS
4      BEING STIPULATED TO. THERE'S ONLY ONE
5      QUESTION, I GUESS, THAT WE'RE NOT REAL CLEAR
6      ON, AND THAT'S, WHEN YOU SEE MR. TORAIN ENTER
7      THE PROPERTY ON NORTH 55TH STREET, I UNDERSTAND
8      WHEN YOU WENT TO THAT LOCATION HE WAS WITH
9      MR. DIGGS AND MR. DE LEE; IS THAT CORRECT?
10          OFF. WALKER: YES.
11          THE COURT: AND HE ENTERED THE PROPERTY
12     WITH THE KEY AND YOU OBSERVED HIM ACTUALLY
13     GOING INTO THE MIDDLE FIRST FLOOR UNIT?
14          OFF. WALKER: FIRST I OBSERVED MR. TORAIN
15     ENTER THE PROPERTY BY HIMSELF.
16          THE COURT: OKAY.
17          THE WITNESS: LATER I OBSERVED THREE
18     MALES ENTER THE PROPERTY OF 1628 NORTH 55TH
19     STREET.
20          THE COURT: DO YOU ACTUALLY --
21          THE WITNESS: THREE MALES WERE ALL
22     TOGETHER.
23          THE COURT: TORAIN ENTERED THE PROPERTY
24     BY HIMSELF FIRST. THE QUESTION, I GUESS, WE
25     HAD IS, COULD YOU TELL, ONCE YOU SEE THEM ENTER



PAGE 59

59

1
2           THE COURT: OKAY.
3           MS. ROBINSON: AND THEN -- IF I MAY JUST
4      HAVE ONE MINUTE. HE ALSO ARRESTS HIM, RECOVERS
5      THE PAGER, THE KEY, AND $250 ON HIM, AND ALL
6      THREE OF THOSE MALES WENT INTO THAT LOCATION.
7      IF I COULD JUST HAVE A MOMENT TO CLARIFY.
8           MR. SCIOLLA: THE QUESTION IS, DID THEY
9      GO INTO THE APARTMENT OR JUST INTO THAT
10     PROPERTY.
11          THE COURT: THAT'S CORRECT. BRING HIM
12     IN. ALLISON CAN GET HIM.
13          MS. ROBINSON: OH, OKAY.
14          THE COURT: JUST HAVE HIM STAND RIGHT
15     THERE NEXT TO YOU AND I'LL ASK HIM.
16          MS. ROBINSON: DO YOU WANT HIM SWORN?
17          THE COURT: POLICE OFFICER JEFFREY
18     WALKER.
19          -----
20          POLICE OFFICER JEFFREY WALKER, BADGE
21     NO. 3730, NARCOTICS UNIT, PHILADELPHIA POLICE
22     DEPARTMENT, CALLED AS A WITNESS ON BEHALF OF
23     THE COMMONWEALTH, HAVING BEEN DULY SWORN, WAS
24     EXAMINED AND TESTIFIED AS FOLLOWS:
25          -----

PAGE 61

61

1
2      THAT PROPERTY, WHERE THEY GO IN THE PROPERTY?
3           OFF. WALKER: WHEN TORAIN ENTERED THE
4      PROPERTY, I EXITED THE VEHICLE, CONDUCTED A
5      FOOT SURVEILLANCE OF THE APARTMENT. I OBSERVED
6      A LIGHT GOING ON AS WELL AS I OBSERVED HIM IN
7      THROUGH THE WINDOW.
8           THE COURT: THE ONLY ONE YOU ACTUALLY SAW
9      INSIDE THAT PROPERTY WAS MR. TORAIN?
10          OFF. WALKER: THAT'S CORRECT.
11          THE COURT: YOU NEVER ACTUALLY SAW DIGGS
12     OR DE LEE IN THAT PROPERTY?
13          OFF. WALKER: I SAW THEM GOING --
14          THE COURT: IN THAT PARTICULAR UNIT?
15          OFF. WALKER: THAT'S CORRECT.
16          THE COURT: YOU HAVE NO WAY OF KNOWING
17     WHETHER THEY WENT INTO THAT INDIVIDUAL UNIT
18     WE'RE TALKING ABOUT OR THEY DIDN'T?
19          OFF. WALKER: NO. I HAVE NO WAY OF
20     KNOWING.
21          MR. SCIOLLA: IF I MAY.
22          -----
23          CROSS-EXAMINATION
24          -----
25



**PAGE 62**

```
                Off. Jeffrey Walker - Cross              62

 1
 2   BY MR. SCIOLLA:
 3      Q.      YOU ACTUALLY SAW THREE PEOPLE ENTER THE
 4   PROPERTY?
 5      A.      YES. ALL AT THE SAME TIME. WOULD BE DARNELL,
 6   DE LEE, TILLMAN, AND -- REFER TO MY NOTES?
 7      Q.      DIGGS?
 8      A.      TILLMAN, DIGGS AND DE LEE.
 9      Q.      AND WHEN THEY WENT INTO THE PROPERTY, HOW DID
10   THEY GET IN THE FRONT DOOR?
11      A.      THEY JUST WALKED -- I DON'T KNOW IF THEY
12   ENTERED WITH A KEY OR NOT.
13      Q.      DID YOU SEE MR. TILLMAN -- EXCUSE ME.  DID YOU
14   SEE MR. TORAIN USE A KEY TO ENTER 1620 NORTH 55TH
15   STREET?
16      A.      THAT'S CORRECT.
17      Q.      SO HE OPENED THE DOOR TO 1628 55TH STREET WITH
18   A KEY, AND THEN ABOUT HOW MANY MINUTES LATER DID YOU
19   SAY YOU SAW THESE THREE MEN IN THE PROPERTY?
20      A.      MAYBE ABOUT, TEN, TEN OR FIFTEEN MINUTES LATER.
21      Q.      HOW DID THEY GET IN?
22      A.      THEY JUST WALKED INTO THE PROPERTY.  I DON'T
23   KNOW IF THEY ENTERED WITH A KEY OR NOT.
24      Q.      YOU DIDN'T SEE THEM USE A KEY ON THE FRONT
25   DOOR?
```

**PAGE 63**

```
                Off. Jeffrey Walker - Redirect            63

 1
 2      A.      NO.
 3      Q.      NOW, THEY'RE IN THE FRONT AND YOU HAVE NO IDEA
 4   WHERE THEY GO ONCE THEY'RE IN THE PROPERTY?
 5      A.      NO.  THEY'RE IN THE PROPERTY FOR APPROXIMATELY
 6   ABOUT 20 MINUTES.
 7      Q.      AND WHEN THEY EXITED, MR. TORAIN EXIT WITH
 8   THEM?
 9      A.      NO, HE DIDN'T.
10              MR. SCIOLLA:  NO FURTHER QUESTIONS,
11   YOUR HONOR.
12              MR. MC MONAGLE:  NO QUESTIONS.
13              -----
14              REDIRECT EXAMINATION
15              -----
16   BY MS. ROBINSON:
17      Q.      YOU WERE PRESENT WHEN OFFICER REYNOLDS TOOK THE
18   KEY OFF OF TORAIN?
19      A.      YES.
20              THE COURT:  OKAY.  I THINK THAT COVERS
21   OFFICER WALKER'S TESTIMONY.
22              THANK YOU.
23              -----
24              (WITNESS EXCUSED.)
25              -----
```



**PAGE 64**

```
                                                          64

 1
 2              MS. ROBINSON:  YOUR HONOR, THE
 3   COMMONWEALTH WOULD CALL OFFICER FITZGERALD
 4   OKAY.
 5              MR. MC MONAGLE:  OFFER.
 6              MS. ROBINSON:  TWO SEPARATE BUNDLES FROM
 7   THE DEFENDANT HOWARD, THE AMOUNT, $585, ONE
 8   BUNDLE, $553 IN ANOTHER, FOR A TOTAL OF
 9   $1138, AND HE ALSO OBTAINED THE KEY TO 5705,
10   FROM THE CO-DEFENDANT DE LEE, WHICH OPERATED
11   THE FRONT DOOR AND THE KEY TO THE PADLOCK.
12              THE COURT:  OKAY.
13              MR. CAMPBELL:  5605.
14              MS. ROBINSON:  5705.
15              MR. CAMPBELL:  5605.
16              THE COURT:  YOU'RE SAYING 57.
17              MS. ROBINSON:  OH, I'M SORRY.  IT'S 5605.
18   THANK YOU, MR. CAMPBELL.  I'M SORRY.  RIGHT.
19   '05 PROPERTY.  HE DID THE ARREST OF DE LEE.
20              MS. ROBINSON:  MR. SPINA MIGHT HAVE SOME
21   QUESTIONS FOR HIM BECAUSE HE RECOVERED THE --
22              MR. SPINA:  ONLY THING I'M READING FROM
23   THE '49, WHEN HE ARRESTED MR. DE LEE, HE ALSO
24   RECOVERED $850 FROM HIS POSSESSION.  THAT'S
25   STIPULATED TO.  THAT'S WHAT IT READS HERE.
```

**PAGE 65**

```
                                                          65

 1
 2   THEN I WOULD AGREE THAT HE RECOVERED MONEY FROM
 3   MY CLIENT AS WELL.
 4              MS. ROBINSON:  RIGHT.  AND HE ALSO
 5   RECOVERED THE $20 BUY MONEY OFF OF DE LEE.
 6              MR. SPINA:  RIGHT.
 7              MS. ROBINSON:  BRAD MITCHELL, OFFICER
 8   BRAD MITCHELL.
 9              IS THAT STIPULATED TO, GENTLEMEN?
10              MR. SPINA:  YES.
11              MS. ROBINSON:  COMMONWEALTH WOULD
12   CALL OFFICER JEFF GALAZKA.
13              MR. MC MONAGLE:  OFFER.
14              MS. ROBINSON:  OKAY.  HE DID 5607 MASTER
15   STREET, AND WOULD TESTIFY HE ARRESTED --
16              MR. CAMPBELL:  56.  THERE'S A TYPO.
17              MS. ROBINSON:  -- EILEEN HODGES, THE
18   MOTHER OF ANTHONY HODGES, AND INSIDE A DRAWER
19   IN THE LIVING ROOM HE RECOVERS $268.  HE
20   ALSO RECOVERS THREE WEAPONS AND SOME LIVE
21   ROUNDS, WHICH ARE DELINEATED IN THE '49; AND HE
22   ALSO RECOVERS FROM ANTHONY HODGES' SECOND
23   FLOOR, MIDDLE BEDROOM, A BAGGIE THAT CONTAINS
24   76 PACKETS OF MARIJUANA AND ONE CHUNK OF CRACK,
25   WHICH WAS PLACED ON PROPERTY RECEIPT 2298586,
```

SHEET 18   PAGE 66

PAGE 66

```
66
 1
 2        AND THE DEFENDANT, ANTHONY HODGES, WHEN HE WAS
 3    PROCESSED --
 4               -----
 5            (COUNSEL CONFER.)
 6               -----
 7        MS. ROBINSON: THAT WOULD BE THE
 8    EXTENT OF THE TESTIMONY FOR GALAZKA.
 9        IS THAT ACCEPTABLE?
10        MR. MC MONAGLE: YEAH.
11        MS. ROBINSON: AND THEN OFFICER FRANCIS.
12    WOULD CALL HIM TO TESTIFY THAT HE ARRESTED
13    MAURICE GREY, AND THAT'S ALREADY BEEN
14    DELINEATED, WHAT WAS CONFISCATED FROM HIM, 14
15    YELLOW PACKETS, 112 XANEX, AND $68 IN U.S.
16    CURRENCY. HE ALSO PARTICIPATED IN ARRESTING
17    RAYMOND HOWARD WITH FITZGERALD. HE ALSO
18    ARRESTED MR. DIGGS, WHO HAD ON HIS PERSON 1478
19    XANAX PILLS AND A CELL PHONE, AND I BELIEVE
20    $313 IN U.S. CURRENCY.
21        MR. STERN: JUST SO IT'S CLEAR,
22    EVERYTHING THAT WAS RECOVERED FROM MR. GREY,
23    THAT WAS IN HIS POCKETS OR IT WASN'T IN PLAIN
24    VIEW, IS THAT WHAT YOU'RE --
25        MS. ROBINSON: YES.
```

PAGE 67

```
67
 1
 2        MR. STERN: OKAY.
 3        MS. ROBINSON: IF I MAY JUST HAVE A
 4    MOMENT WITH RESPECT TO THE 75-229. I THINK
 5    THAT I'LL JUST GO ON THE SEIZURES, JUDGE.
 6               -----
 7        (MS. ROBINSON LEFT THE COURTROOM.)
 8               -----
 9        THE COURT: SO FAR IS EVERYTHING
10    STIPULATED TO?
11        MR. MC MONAGLE: YES;
12        MR. SCIOLLA: YES.
13        THE COURT: MR. CAMPBELL?
14        MR. CAMPBELL: I'M --
15        THE COURT: OR WAS THERE ONE THING?
16        MR. CAMPBELL: I DIDN'T STIPULATE TO PART
17    OF A '229.
18        THE COURT: THAT'S WHAT SHE'S CHECKING ON
19    NOW. ALL RIGHT.
20        MR. SCIOLLA: DOES YOUR HONOR WANT
21    ARGUMENT NOW?
22        THE COURT: I THOUGHT MS. ROBINSON WOULD
23    WANT TO BE IN THE ROOM FOR IT.
24        MR. SCIOLLA: JUST ASKED.
25               -----
```

PAGE 68

```
68
 1
 2            (MS. ROBINSON ENTERED THE COURTROOM.)
 3               -----
 4        MS. ROBINSON: I JUST HAVE TO TALK TO
 5    MR. CAMPBELL FOR A SECOND.
 6               -----
 7            (COUNSEL CONFER.)
 8               -----
 9        MS. ROBINSON: JUDGE, THERE'S AN ADDENDUM
10    TO THE STIPULATION FROM OFFICER WALKER THAT HE
11    RECOVERED A KEY TO 5707 FROM MR. HODGES, AND
12    OFFICER GALAZKA, PART OF THE STIPULATION ON
13    THAT IS THAT WHEN HE WALKED IN, EILEEN HODGES
14    SAID THAT THAT WAS HER SON'S BEDROOM, THE
15    SECOND FLOOR MIDDLE BEDROOM, WHERE THE DRUGS
16    WERE RECOVERED.
17        THE COURT: OKAY?
18        MS. ROBINSON: NOW, WITH RESPECT TO THE
19    SEIZURES; YOUR HONOR, WITH RESPECT TO THE FOUR
20    THAT WERE PERFORMED BY OFFICER MITCHELL,
21    2298585, THEY TESTED POSITIVE FOR COCAINE, THAT
22    WEIGHT, LESS THAN TWO GRAMS.
23        WITH RESPECT TO THE DRUGS FROM 5607
24    MASTER STREET, HODGES' RESIDENCE, THE CHUNK IN
25    HIS BEDROOM, THAT WAS ON 2298586, TESTED
```

PAGE 69

```
69
 1
 2    POSITIVE, IT WEIGHED 8.9136 GRAMS.
 3        WITH RESPECT TO THE 177 PACKETS, THAT
 4    BROKE DOWN IN QUANTITIES OF 63, 53, 31, AND 30,
 5    THAT WERE TAKEN FROM DARNELL DE LEE'S PADLOCKED
 6    SECOND FLOOR BEDROOM AT 5605 MASTER STREET,
 7    PROPERTY RECEIPT 2298590, THEY ALL TESTED
 8    POSITIVE, AND THE NET WEIGHT WAS 29.410 GRAMS
 9        WITH RESPECT TO THE 14 XANAX PILLS TAKEN
10    FROM DEFENDANT DIGGS, PROPERTY RECEIPT 2298596,
11    TESTED POSITIVE FOR XANAX, WHICH IS KNOWN AS
12    ALAZALAM, SCHEDULE III TO IV DRUG.
13        WITH RESPECT TO MARIJUANA FROM 5609
14    MASTER STREET, I BELIEVE IT WAS 5 PACKETS,
15    PROPERTY RECEIPT 2308203, TESTED POSITIVE FOR
16    MARIJUANA. NET WEIGHT OF LESS THAN 30 GRAMS.
17    ALSO, THE MARIJUANA FROM 5607 MASTER WAS
18    MARIJUANA, AND IT WAS MORE THAN 30 GRAMS BUT
19    LESS THAN TWO POUNDS.
20        WITH RESPECT TO THE ITEMS RECOVERED FROM
21    MAURICE GREY, PROPERTY RECEIPT 2308219, THE 14
22    PACKETS TESTED POSITIVE FOR CRACK COCAINE, NET
23    WEIGHT LESS THAN TWO GRAMS, AND THE 112 XANAX
24    PILLS.
25        WITH RESPECT TO KAREEM TORAIN, THAT
```

**PAGE 70**

1
2 LOCATION, 1628 55TH STREET, SOUTH 55TH STREET,
3 PROPERTY RECEIPT 2308223, FOR THOSE THREE BAGS,
4 THEY TESTED POSITIVE FOR CRACK COCAINE.
5 NET WEIGHT WAS 16.84 GRAMS. THE TOTAL AMOUNT
6 OF ALL THE CRACK COCAINE, THIS WAS 54.41 GRAMS
7 OF CRACK, AND THE TOTAL AMOUNT OF THE MARIJUANA
8 WAS MORE THAN 30 GRAMS AND LESS TAN TWO POUNDS.
9 AND THE TOTAL QUANTITY OF XANAX PILLS WAS 126.
10          THAT WOULD BE THE COMMONWEALTH'S CASE AT
11 THE PRELIMINARY HEARING AND THAT ALL THOSE
12 QUANTITIES WERE POSSESSED WITH THE INTENT TO
13 DISTRIBUTE.
14          MR. CAMPBELL:  WITH RESPECT TO ANTHONY
15 HODGES, YOUR HONOR, I WOULD ASK THAT HE BE
16 DISCHARGED WITH RESPECT TO ALL ITEMS FOUND IN
17 5605 MASTER STREET, AND I WOULD ASK FOR A
18 SPECIFIC FINDING. HE DOES HAVE PROBLEMS WITH
19 RESPECT TO 5607 MASTER STREET, GIVEN THE
20 STIPULATION AS TO WHAT THE TESTIMONY WOULD BE.
21 BUT I BELIEVE THAT PRIMA FACIALLY, DESPITE THE
22 OBSERVATIONS, THE COMMONWEALTH FAILS TO MEET
23 ITS BURDEN. IT WAS RECOVERED FROM SOMEONE ELSE
24 FOR THAT PROPERTY. THERE WAS PROOF OF
25 RESIDENCY RECOVERED FOR SOMEONE ELSE IN THAT

**PAGE 71**

1
2 PROPERTY AND NO PROOF OF RESIDENCY AT ALL WITH
3 RESPECT TO THAT PROPERTY FOR MR. HODGES.
4          I WOULD ASK FOR A SPECIFIC FINDING, FOR
5 WHAT IT'S WORTH, DISCHARGING HIM. THERE'S NO
6 EVIDENCE THAT HE CONSTRUCTIVELY POSSESSED
7 ANYTHING IN THAT HOUSE OR EXERCISED DOMINION OR
8 CONTROL.
9          MS. ROBINSON:  JUDGE, YOU WANT ME TO
10 RESPOND TO ALL OF THEM?
11          THE COURT:  NO.  DO IT INDIVIDUALLY.
12          MS. ROBINSON:  JUDGE, THE COMMONWEALTH'S
13 THEORY IS THAT ALL THREE PROPERTIES ARE BEING
14 USED TOGETHER, THAT WITH RESPECT TO THESE
15 INDIVIDUALS, THEY ARE USING 5605 AND 5607 AND
16 5609 AS THE STASH, MARIJUANA HOUSE AND A CRACK
17 HOUSE, AND THAT THEY'RE USING ALL THE
18 PROPERTIES AND INTERMINGLING THEM AND HELPING
19 EACH OTHER OUT. THEREFORE, YOU HAVE A
20 CONSPIRACY TO SELL BOTH MARIJUANA AND CRACK
21 FROM THE PORCH, OR PORCHES, IN THIS LOCATION.
22 ONCE YOU'RE IN, YOU'RE IN.
23          THE DEFENDANT HODGES LIVES AT ONE OF THE
24 HOUSES, BUT HE'S PARTICIPATING IN THE SALES.
25 HE'S OBSERVED ON JANUARY 2ND ACTIVELY ENGAGED

**PAGE 72**

1
2 IN THIS WITH DARNELL DE LEE. HE'S, AGAIN, OUT
3 THERE, HE'S SELLING, HE'S PARTICIPATING IN
4 THIS. AND THEN YOU HAVE THE ACTUAL DRUGS THAT
5 ARE RECOVERED FROM INSIDE OF THE LOCATION.
6 THEY DON'T KEEP ALL OF THE DRUGS AT ONE
7 LOCATION, YOUR HONOR, AND THEREFORE, THEY ARE
8 PARTICIPATING IN THIS. AND THE FLOW OF ALL OF
9 THE DRUGS THAT IS COMING AROUND AND HOW THEY'RE
10 HELPING EACH OTHER MOVE THE MONEY, SELL THE
11 DRUGS TOGETHER, THEY'RE CLEARLY COOPERATING.
12          THE COURT:  OKAY. THAT'S FINE. YOU GET
13 ONE SHOT. HAVE A SEAT.
14          MR. SCIOLLA.
15          MR. SCIOLLA:  JUDGE, ONCE AGAIN, THE
16 COMMONWEALTH WANTS YOU TO BE THE SEAMSTRESS IN
17 PUTTING THIS QUILT TOGETHER. I ASK FOR A TOTAL
18 DISCHARGE OF MR. TORAIN. I DON'T SEE HOW
19 THERE'S ANY COLLUSION WHATSOEVER WAS GOING ON
20 ON THE STREETS THAT THEY SAY THEY HAD
21 SURVEILLED ON THE 2ND AND 3RD. MY CLIENT'S
22 THERE TWO TO THREE MINUTES IN THE CAR. ANOTHER
23 GENTLEMAN GETS IN THE CAR AND LEAVES THE CAR.
24 NO TESTIMONY THAT ANY EXCHANGE IS SEEN GIVEN BY
25 BY MR. TORAIN TO THIS OTHER GENTLEMAN.

**PAGE 73**

1
2          THAT OTHER GENTLEMAN LEAVES, WALKS TO THE
3 CORNER, AND SUPPOSEDLY STARTS TO CONTINUE OR
4 CONTINUES TO SELL DRUGS, WHICH HE HAD BEEN SEEN
5 DOING PRIOR THERETO. THERE'S A HEARSAY
6 GRATUITOUS STATEMENT. I DON'T KNOW THE CHARGES
7 HAVE BEEN ESTABLISHED THAT WOULD BE ADMISSIBLE
8 THROUGH ANY CONSPIRACY EXCEPTION.
9          TO THE EFFECT TORAIN ONLY HAS ONE BUNDLE,
10 DID HE HAVE ONE BUNDLE, DOES HE HAVE A BUNDLE
11 AND HE GAVE IT, DOES HE HAVE A BUNDLE SOMEWHERE
12 ELSE? I HAVE NO IDEA. NEITHER DOES THIS
13 COURT. UNLESS YOU WANT TO STICK THE NEEDLE IN
14 AND SOMEHOW PULL THIS FABRIC TOGETHER FOR THEM,
15 THEN I GUESS YOU CAN JUMP TO WHATEVER
16 CONCLUSION THE GOVERNMENT WANTS YOU TO JUMP TO.
17 BUT THAT STATEMENT, IF, IN FACT, THE COURT DOES
18 LET IT IN, I'M NOT SURE THE CORPUS WAS
19 ESTABLISHED TO ALLOW THAT STATEMENT TO COME IN
20 AGAINST MR. TORAIN.
21          THEN YOU'VE GOT 1628 NORTH 55TH STREET.
22 I'D LOVE TO SEE THE PROBABLE CAUSE FOR THAT
23 AFFIDAVIT. HE'S SEEN, SUPPOSEDLY, DRIVING OVER
24 TO -- HE GOES TO ANOTHER LOCATION FIRST, 1631,
25 AND THEN HE'S SEEN AT 1628. HE'S THERE ABOUT

SHEET 20   PAGE 74

**PAGE 74**

```
 1                                              74
 2      TEN MINUTES, ACCORDING TO THE OFFICER, AND
 3   SUBSEQUENTLY THREE OTHER YOUNG MEN SHOW UP AT
 4   THAT LOCATION.  INTERESTINGLY ENOUGH, THE
 5   TESTIMONY IS THAT TORAIN HAD A KEY TO THE
 6   OUTSIDE DOOR, AND THEY ASSUMED THAT IT'S TORAIN
 7   THAT HAS THE KEY TO THE SECOND FLOOR OF THIS,
 8   OR THE MIDDLE ROOM, BECAUSE A LIGHT GOES ON,
 9   AND HE SAYS HE COULD SEE HIM THROUGH THE
10   WINDOW, BUT HE DOESN'T SEE THE OTHER THREE
11   GUYS, ONLY SEES TORAIN.
12          THEY MAKE A CAR STOP.  AGAIN, LOVE TO
13   HEAR THE PROBABLE CAUSE FOR THE CAR STOP.  THEY
14   THEN SAY THAT THEY SEE MR. TORAIN.  THEY TAKE A
15   KEY CHAIN OFF MR. TORAIN.  COMMONWEALTH VERSUS
16   RODRIGUEZ HAS BEEN LAW IN OUR STATE FOR THE
17   LAST 20 YEARS AND HAS BEEN REPEATEDLY UPDATED?
18   AND THAT SIMPLY SAYS THAT POSSESSION OF A KEY
19   TO AN APARTMENT IN WHICH DRUGS ARE FOUND IS NOT
20   PROOF POSITIVE OF CONTROL AND DOMINION.
21          INDEED, THE TESTIMONY FROM THE POLICE
22   OFFICER IS THAT THE DRUGS ARE FOUND INSIDE A
23   SAFE.  NO IDENTIFICATION IN THE SAFE.  HE'S
24   GOT, SUPPOSEDLY, A KEY TO THE FRONT DOOR AND
25   KEY TO THE APARTMENT DOOR, BUT WE DON'T KNOW
```

**PAGE 75**

```
 1                                              75
 2   HOW THE SAFE WAS LOCKED.  WAS IT A KEY?  WAS IT
 3   A COMBINATION?  WAS IT SOMETHING ELSE?  WE
 4   DON'T KNOW.  WE HAVE NO IDEA.  WE DO, AND I
 5   GUESS THE GOVERNMENT'S GOING TO SUGGEST, AND I
 6   WOULD SUGGEST THAT MY ESTEEMED CO-COUNSEL WILL
 7   ARGUE THE POINT, IF THEY ARE GOING TO SUGGEST
 8   THAT THEY SHOULD HOLD THE OTHER THREE YOUNG MEN
 9   RESPONSIBLE FOR THE 17 OR 16 WHATEVER GRAMS OF
10   CRACK COCAINE INSIDE THE MIDDLE ROOM OF 1628
11   NORTH 55TH STREET, THEY'RE GOING TO DO SO ON
12   THE BASIS OF THEIR OWN TESTIMONY THAT THESE
13   THREE YOUNG MEN WENT INTO THE HOUSE AND THEN
14   CAME OUT OF THE HOUSE.
15          SO THEY'RE GOING TO SUGGEST ON ONE HAND
16   YOU SHOULD HOLD THE OTHER THREE GUYS
17   RESOPNSIBLE BECAUSE, SUPPOSEDLY, THEY WERE
18   INSIDE THE MIDDLE ROOM, BUT SUGGEST TO YOU THAT
19   IF YOU DON'T, IT MUST BE TORAIN'S DRUGS BECAUSE
20   HE HAD A KEY TO THE FRONT DOOR AND A KEY TO THE
21   MIDDLE BEDROOM, OR TO THIS MIDDLE ROOM.
22          SO I WOULD SUBMIT, JUDGE, WITH REFERENCE
23   TO ALL OF THE DRUGS THAT WERE BEING DEALT AT
24   56TH AND MASTER, AS OFFICER MONAGHAN TESTIFIES,
25   HAVE NOTHING TO DO WITH THIS DEFENDANT, NOTHING
```

**PAGE 76**

```
 1                                              76
 2   WHATSOEVER.  THERE'S NO DELIVERIES, THERE'S NO
 3   RETRIEVALS, NO MONEY EXCHANGES, NO PACKAGE
 4   EXCHANGES.  THERE'S HIM AT THE CORNER IN A CAR
 5   TWO MINUTES, AND THERE'S A STATEMENT SUPPOSEDLY
 6   BY SOME OTHER CO-DEFENDANT.
 7          SO WITH REGARD TO 56TH AND MASTER, I
 8   WOULD SUBMIT THAT MR. TORAIN HAS -- THE
 9   COMMONWEALTH HAS FAILED TO PROVE ANY CONCLUSION
10   ON A PRIMA FACIE LEVE.  WITH REGARD TO 1628,
11   COMMONWEALTH VERSUS RODRIGUEZ, I WOULD SUBMIT,
12   DOES NOT MAKE POSSESSION OF A KEY EQUIVALENT TO
13   DOMINION AND CONTROL OVER, APPARENTLY, DRUGS
14   THAT WERE SECRETED OR HIDDEN OR NOT IN PLAIN
15   VIEW.  AND IF THE COMMONWEALTH DOES ARGUE THE
16   OTHER THREE MEN SHOULD BE HELD, I WOULD SUBMIT
17   INSOFAR AS THE EVIDENCE SUBMITTED TODAY BY
18   COMMONWEALTH, MR. TORAIN SHOULDN'T BE HELD FOR
19   ANY CHARGES.  EVERYTHING SHOULD BE DISCHARGED.
20          THE COURT:  YOU CAN STAY SEATED IF YOU
21   WANT.
22          MS. ROBINSON:  THE KEY PIECE OF EVIDENCE
23   AGAINST MR. TORAIN FITS WHAT IS OBSERVED BY
24   OFFICER MONAGHAN, IS DE LEE GETS IN ON THE
25   PASSENGER SIDE OF THE CAR.  THE DEFENDANT
```

**PAGE 77**

```
 1                                              77
 2   TORAIN IS THE OPERATOR OF THE CAR, AND THAT
 3   WHEN DE LEE EXITS THE CAR, HE'S PUTTING A
 4   BUNDLE INTO HIS JACKET.
 5          MR. SCIOLLA:  OBJECTION.  THAT'S NOT THE
 6   TESTIMONY.  AN OBJECT.  HE SAID THERE WAS AN
 7   OBJECT BEING PLACED IN HIS JACKET.  THAT'S ALL
 8   HE TESTIFIED TO.  HE DIDN'T SAY ANYTHING ABOUT
 9   A BUNDLE.  DIDN'T IDENTIFY THE OBJECT.
10          MS. ROBINSON:  WELL --
11          MR. SCIOLLA:  LET'S BE FAIR.
12          MS. ROBINSON:  IF I MAY.  WHEN HE GOES
13   BACK TO THE CORNER, JUST A COUPLE MINUTES AFTER
14   TORAIN DRIVES FURTHER DOWN ITHAN STREET, HE
15   SAYS TO DIGGS, THE CO-DEFENDANT, KAREEM, WHO'S
16   THE ONLY KAREEM IN THIS GROUP AND WHO TURNS OUT
17   TO BE THE OPERATOR OF THE GREEN BONNEVILLE,
18   ONLY HAD A BUNDLE ON HIM AND WOULD CALL WHEN
19   THE REST WAS READY.
20          MR. SCIOLLA:  THAT'S NOT WHAT HE SAID.
21          THE COURT:  BUT, MR. SCIOLLA, I
22   UNDERSTAND HER ARGUMENT I HAVE NOTES.  I
23   REMEMBER.
24          MR. SCIOLLA:  I DON'T HAVE ANY PROBLEM
25   ABOUT THE ARGUMENT.  I HAVE A PROBLEM WITH
```

**PAGE 78**

```
 1                                          78
 2          TESTIMONY.
 3              THE COURT: WELL, IT'S HER
 4      CHARACTERIZATION OF THE TESTIMONY.
 5              MR. SCIOLLA: HE NEVER SAID HE ONLY HAD
 6      ONE BUNDLE.
 7              MS. ROBINSON: AND THEN WHAT YOU HAVE IS
 8      THAT A SHORT WHILE LATER, DE LEE GOES TO THE
 9      PHONE. HE'S NOT OBSERVED MAKING A CALL. THE
10      INFERENCE IS THAT THE PHONE --
11              THE COURT: WELL, ACTUALLY. I WROTE
12      DOWN, KAREEM ONLY HAS ONE BUNDLE.
13              MR. SCIOLLA: BUT NOT ON HIM.
14              THE COURT: KAREEM ONLY HAS ONE BUNDLE,
15      AND HE WOULD RETURN WHEN THE NEXT WAS READY, OR
16      SOMETHING TO THAT EFFECT.
17              MR. SCIOLLA: RIGHT. DIDN'T SAY THAT HE
18      HAD ONE BUNDLE ON HIM.
19              THE COURT: OKAY. HE ONLY HAD ONE
20      BUNDLE.
21              MR. SCIOLLA: JUST SORT OF HANGS OUT.
22              THE COURT: OKAY.
23              MS. ROBINSON: WHAT YOU HAVE, A SHORT
24      WHILE AFTER THAT, AS SOON AS THAT CALL'S MADE,
25      DIGGS, TILLMAN, AND DE LEE GET IN THE CAR AND
```

**PAGE 79**

```
 1                                          79
 2      GO STRAIGHT TO THE LOCATION WHERE TORAIN IS.
 3      OFFICER WALKER'S OBSERVING IT. THEY COME BACK,
 4      DE LEE STARTS HANDING OUT WHAT APPEAR TO BE
 5      BUNDLES, AND THEY ALL START SELLING. AND IT
 6      FITS WITH THE FACT THAT KAREEM, THIS DEFENDANT,
 7      KAREEM, TORAIN HAD THOSE BUNDLES, WAS PREPARING
 8      THEM, OBTAINING THEM, AND THEN DISTRIBUTING
 9      THEM TO THESE OTHER INDIVIDUALS AND
10      FACILITATING THE ONGOING DRUG OPERATION IN
11      THESE FORCE FRONTS ON MASTER STREET.
12              THE COURT: OKAY. NEXT.
13              MR. STERN: CAN I REMAIN SEATED?
14              THE COURT: YOU MAY.
15              MR. STERN: JUDGE, IF I MAY, I WOULD
16      CONCEDE IN THIS MATTER IT WOULD BE APPROPRIATE
17      TO REMAND ON K&I.
18              THE COURT: OKAY.
19              MR. STERN: NO PROBLEM.
20              THE COURT: K&I ONLY. OCCASIONALLY YOU
21      GET ONE. DON'T LOOK SO SHOCKED.
22              MR. SPINA: MY CLIENT REALLY IS IN A
23      DIFFERENT POSITION THAN EVERYONE HERE. THE
24      ONLY EVIDENCE AGAINST HIM, QUITE FRANKLY, ALL
25      THROUGHOUT THOSE HOURS OF SURVEILLANCE ON
```

**PAGE 80**

```
 1                                          80
 2      JANUARY THE 2ND AND JANUARY THE 3RD, HE'S NOT
 3      THERE, HIS VEHICLE IS NOT THERE. FOR A
 4      TWO-MINUTE PERIOD ON THE FOURTH HE PULLS UP IN
 5      A MOTOR VEHICLE AT A TIME WHEN, ACCORDING TO
 6      THE OFFICER, NO TRANSACTIONS ARE TAKING PLACE,
 7      NOBODY'S MAKING ANY SALES.
 8              MY CLIENT WALKS UP ON A PORCH, SEES
 9      MR. DE LEE THERE, IT'S A VERY BRIEF
10      CONVERSATION, AFTER WHICH MR. DE LEE HANDS MY
11      CLIENT SOME MONEY. THAT'S IT. MY CLIENT THEN
12      WALKS OFF THE PORCH, GETS IN HIS CAR, AND IS
13      STOPPED. HE'S FOUND TO HAVE MONEY ON HIS
14      PERSON. HE HAS NO DRUGS LIKE EVERYONE ELSE, NO
15      PARAPHERNALIA, NO CELL PHONES, NO PAGERS,
16      NOTHING AT ALL. THERE'S NO TRANSACTIONS DONE
17      IN FRONT OF HIM, NO GOLF BALL SIZED BAGS.
18      NOTHING TAKES PLACE OTHER THAN HE WALKS UP AND
19      RECEIVES SOME MONEY. THAT'S IT. NOT A MILLION
20      DOLLARS, NOT $600.
21              HE RECEIVES SOME MONEY FROM MR. DE LEE,
22      WHO I WOULD ALSO NOTE FOR THE COURT, WILL
23      STIPULATE TO, AT THE TIME OF HIS ARREST,
24      MOMENTS LATER, HAS IN HIS POSSESSION $850,
25      MR. DE LEE, INCLUDING THE $20 BUY MONEY THAT HE
```

**PAGE 81**

```
 1                                          81
 2      RECEIVED FROM POLICE OFFICER MITCHELL JUST THE
 3      DAY BEFORE, AND ALSO $280. SO IS THE
 4      COMMONWEALTH'S THEORY MY CLIENT IS SOMEHOW THE
 5      MONEY MAN? BECAUSE QUITE FRANKLY, MR. DE LEE
 6      IS ARRESTED WITH A LOT OF MONEY RIGHT AFTER HE
 7      GIVES MY CLIENT SOME MONEY. MR. DE LEE IS
 8      ARRESTED WITH $1130, INCLUDING BUY MONEY FROM
 9      THE DAY BEFORE.
10              AND NO ONE IS SUGGESTING THAT ANYBODY'S
11      SPECIFIC MONEY'S GIVEN TO MY CLIENT, ANY
12      SPECIFIC DENOMINATIONS. HE RECEIVES SOME
13      MONEY, STEPS OFF THE PORCH, AND GETS IN HIS
14      CAR. AND THAT'S IT FOR MR. HOWARD, AND
15      MR. DE LEE, WHO GAVE HIM THIS MONEY, HAS $1100
16      MOMENTS LATER WHEN HE'S STOPPED, INCLUDING BUY
17      MONEY. I'M NOT REALLY SURE HOW MR. HOWARD
18      KNOWS THAT DRUG TRANSACTIONS ARE TAKING PLACE
19      WHEN HE'S THERE. NONE OF THESE GUYS ARE THERE
20      AT THIS TIME. ALL THESE GENTLEMEN HAVE LEFT.
21      MY CLIENT ARRIVES. DIGGS AND HODGES AND
22      WHOEVER ELSE, THEY'RE NOT THERE. HE SEES
23      MR. DE LEE, BRIEF CONVERSATION, RECEIVES MONEY.
24      THE COMMONWEALTH WOULD BE ASKING YOU, A LEAP OF
25      FAITH --
```

PAGE 82

82

THE COURT: I UNDERSTAND YOUR ARGUMENT.
WHAT'S YOUR POSITION ON HIM?
MS. ROBINSON: JUDGE, IF I MAY, HE'S
RECEIVING THE MONEY FROM DE LEE WHO CLEARLY IS
IN CHARGE OF THE DRUG SELLING, AND THE MONEY IS
A SUBSTANTIAL QUANTITY OF MONEY, AND IT'S
PACKAGED IN SUCH A WAY TO INDICATE THAT IT WAS
FROM SALES OF DIFFERENT BUNDLES OF DRUGS. IT'S
$553, YOUR HONOR, IT'S A SUBSTANTIAL QUANTITY
OF MONEY, AND IT'S IN TWO BUNDLES, AND IT'S IN
A FASHION, HE MUST BE TRUSTED BY THE
CO-DEFENDANT DE LEE. AND HANDING IT TO HIM,
APPEARS TO BE AN OBVIOUS COLLECTION OF THE
MONEY, AND THAT THIS INDIVIDUAL IS ACTUALLY
HIGHER UP IN THE ORGANIZATION THAT HE WOULD BE
TRUSTED WITH THE MONEY FROM DARNELL DE LEE IN
THIS FASHION. AND THE MONEY IN ITSELF, THE WAY
IT'S PACKAGED, HOOKS HIM IN.
MR. SPINA: OFFICER MONAGHAN ACTUALLY
SAID MY CLIENT WAS GIVEN ONE THING OF MONEY.
ONE THING.
MS. ROBINSON: ONE THING OF MONEY.
THE COURT: THE OFFICER CUTS AGAINST YOUR
THEORY. YOUR THEORY SEEMS TO BE --

PAGE 83

83

MR. SPINA: EXACTLY.
THE COURT: -- THAT HE'S PACKAGED THE
MONEY AND THAT HE RECEIVES THE PREPACKAGED AS
IF ONE'S FOR ONE DAY'S SALES ONE'S FOR ANOTHER
DAY'S SALES, WHATEVER YOUR THEORY MIGHT BE.
AND THE TESTIMOY WAS REAL CLEAR HE HANDED ONE
WAD OF MONEY, AND THE MONEY WAS FOUND DIVIDED
INTO, IF YOU WANT TO USE THE WORD WAD, SINCE
THAT WAS THEIR WORD, TWO SEPARATE WADS.
MS. ROBINSON: THE STIPULATION IS THAT
OFFICER FITZGERALD WOULD TESTIFY IT WAS IN TWO
SEPARATE BUNDLES AND IT DID APPEAR TO OFFICER
MONAGHAN TO BE ONE BIG BUNDLE.
MR. SPINA: I ASKED COULD IT HAVE BEEN
TWO.
MS. ROBINSON: THAT'S WHAT HE SAW,
BUT, IN FACT, IT TURNED OUT TO BE TWO.
MR. SPINA: IT DIDN'T TURN OUT, IN FACT,
TO BE ANYTHING. WHAT DID YOU SEE? I SAW HIM
GIVE HIM ONE THING OF MONEY. COULD IT HAVE
BEEN TWO? HE SAID NO. DOESN'T MEAN IT COULD
BE TWO.
MS. ROBINSON: THERE WAS A STIPULATION
THAT OFFICER FITZGERALD ARRESTED YOUR CLIENT

PAGE 84

84

AND HE RECOVERED --
MR. SPINA: I AGREE.
MS. ROBINSON: -- TWO SETS OF MONEY.
THAT'S WHAT HE RECOVERED.
MR. SPINA: DOESN'T MEAN IT CAME FROM
DE LEE.
THE COURT: WHERE IS FITZGERALD?
MS. ROBINSON: RIGHT OUT THERE.
THE COURT: BRING HIM IN. I HAVE ONE
QUESTION FOR HIM.
HAVE A SEAT.
MR. SPINA: YES, MA'AM.

     (POLICE OFFICER FITZGERALD ENTERED THE
COURTROOM.)

MS. ROBINSON: OFFICER FITZGERALD,
HER HONOR -- WOULD YOU LIKE THE OFFICER SWORN?
THE COURT: YOU NEED HIM SWORN?
MR. SPINA: NO, JUDGE.
THE COURT: OFFICER, TELL ME ABOUT THE
MONEY YOU RECOVERED FROM MR. HOWARD.
OFF. FITZGERALD: FROM MR. HOWARD?
THE COURT: YES.

PAGE 85

85

OFF. FITZGERALD: MR. HOWARD WAS STOPPED
INSIDE THE VEHICLE. HE WAS THE OPERATOR OF THE
GREEN PONTIAC BONNEVILLE, AND U.S. CURRENCY WAS
RECOVERED FROM HIM IN TWO DIFFERENT BUNDLES. I
CAN GIVE YOU THE EXACT AMOUNT.
THE COURT: ONE WAS $585 AND ONE WAS
$553.
OFF. FITZGERALD: I BELIEVE THE TOTAL WAS
$1,123.
THE COURT: BUT PACKAGED IN TWO SEPARATE
BUNDLES?
OFF. FITZGERALD: TWO SEPARATE BUNDLES.
THE COURT: AND DO YOU REMEMBER WHERE THE
MONEY WAS RECOVERED?
OFF. FITZGERALD: I BELIEVE PANTS POCKET,
YOUR HONOR.
THE COURT: SEPARATE PANTS POCKETS?
OFF. FITZGERALD: I'M NOT CERTAIN.
THE COURT: OKAY.
THE COURT: ALL YOU REMEMBER, TWO
SEPARATE AND DISTINCT BUNDLES?
OFF. FITZGERALD: THAT'S CORRECT.
THE COURT: RUBBER BANDS?
OFF. FITZGERALD: FOLDED IN SEPARATE

SHEET 23   PAGE 86

PAGE 86

```
 1                                          86
 2              PILES.
 3                    THE COURT: OKAY. THAT'S FINE.
 4              MR. SPINA: THAT'S MY ARGUMENT, JUDGE.
 5              MR. MC MONAGLE: JUDGE, I'LL START WITH
 6        MR. TILLMAN.
 7              MS. ROBINSON: I'LL SPARE MR. MC MONAGLE.
 8        I HAVE NO ARGUMENT ON MR. TILLMAN.
 9              THE COURT: SO MR. TILLMAN, YOU AGREE YOU
10        HAVE NO EVIDENCE?
11              MS. ROBINSON: I WOULD JUST SAY THE
12        COMMONWEALTH HAS NOT MET ITS BURDEN.
13              THE COURT: THAT'S FINE. AND THAT'S
14        OKAY. YOU KNOW WHAT WE'RE GOING TO DO ON MR.
15        TILLMAN. COMMONWEALTH AT THIS JUNCTURE IS
16        GOING TO WITHDRAW PROSECUTION BASED ON THEIR
17        TESTIMONY.
18              MS. ROBINSON: FINE. AND AS TO MR. GREY,
19        THE COMMONWEALTH IS GOING TO WITHDRAW
20        PROSECUTION ON ALL CHARGES BUT K&I.
21              THE COURT: FINE.
22              MS. ROBINSON: AS TO THE COCAINE AND
23        XANAX.
24              THE COURT: ALL RIGHT. SO IT SHOULD BE
25        REMANDED ON K&I ON COCAINE AND XANAX.
```

PAGE 87

```
 1                                          87
 2              MS. ROBINSON: EXACTLY.
 3              THE COURT: OKAY. THAT'S FINE. AND THAT
 4        WILL MAKE IT REAL EASY.
 5              MR. MC MONAGLE: LASTLY, AS TO DIGGS, MY
 6        ARGUMENT AS TO DIGGS, IT'S A CLOSE ONE, BECAUSE
 7        I ASKED THE OFFICER WHETHER OR NOT THESE
 8        ALLEGED TRANSACTIONS HE WAS INVOLVED IN
 9        RESULTED IN ANY STOPS OR SEARCHES OF ANY KIND
10        OF CONTRABAND. HE SAID NO. SO WE DON'T HAVE
11        ANY KIND OF IDEA AS TO WHAT EXACTLY IS
12        INVOLVED. HE IS FOUND WITH, I THINK, 14
13        XANAXES ON HIS PERSON. SO I WOULD ASK YOU TO
14        HOLD HIM FOR COURT AS TO THAT AND THAT ALONE.
15        AND I DON'T KNOW 14 XANAXES MAKES OUT
16        POSSESSION WITH INTENT TO DELIVER.
17              MS. ROBINSON: IF I MAY, YOUR HONOR,
18        DIGGS --
19              THE COURT: HE WAS OUT THERE A WHOLE LOT
20        MORE. I SAVED YOU ON ONE, I'LL SAVE YOU ON THE
21        OTHER. I DON'T HAVE ANY PROBLEM SENDING IN
22        MR. HODGES, I HAVE NO PROBLEM SENDING IN
23        MR. TORAIN. I HAVE NO --
24              MR. SCIOLLA: ON EVERYTHING, JUDGE?
25              THE COURT: EVERYTHING.
```

PAGE 88

```
 1                                          88
 2              THE PROBLEMS I HAD YOU ALREADY ADDRESSED.
 3        BUT FOR MR. HOWARD, WHO I ALSO --
 4              MS. ROBINSON: DIGGS IS EVERYTHING?
 5              THE COURT: YES. THE ONES I'M SENDING IN
 6        AT THIS JUNCTURE IS EVERYTHING. WE ALREADY
 7        ESTABLISHED MR. GREY. GET A DATE ON MR. GREY,
 8        K&I. AND WE ESTABLISHED MR. TILLMAN,
 9        WITHDRAWING PROSECUTION BASED ON THE TESTIMONY.
10        THE ONLY ONE I HAVE A PROBLEM WITH IS
11        MR. HOWARD.
12              MS. ROBINSON: I WOULD ALSO JUST POINT
13        OUT ON MR. HOWARD, HE IS ALSO THE OPERATOR AND
14        HE DID DRIVE OFF AT A HIGH RATE OF SPEED, WHICH
15        IS ALSO AN INDICIA, CONSCIOUSNESS OF GUILT.
16              MR. MC MONAGLE: CAN I USE SOME OF MY
17        ARGUMENT FOR --
18              THE COURT: I DON'T THINK YOU HAVE IT ON
19        MR. HOWARD, EITHER, BASED ON WHAT I HEARD. YOU
20        MAY KNOW MORE THAN I DO, BUT BASED ON WHAT I
21        HEARD HERE, YOU KNOW, COULD HAVE OWED HIM MONEY
22        FOR ANY NUMBER OF THINGS. HE'S THERE FOR SUCH
23        A LIMITED OPPORTUNITY, ONCE OUT OF THE
24        THREE-DAY PERIOD OF TIME.
25              MR. SPINA: THANK YOU, YOUR HONOR.
```

PAGE 89

```
 1                                          89
 2              THE COURT: NOW, I NEED A REMAND DATE, IF
 3        I CAN, AS TO GREY, AND I'M SURE YOU'RE --
 4              THE TIPSTAFF: EVERYONE REMAIN SEATED A
 5        MOMENT.
 6              ON THE THREE THAT YOU HELD FOR COURT, THE
 7        ARRAIGNMENT DATE WILL BE 11/13/01, 504, CJC,
 8        11:30 A.M.
 9              THE COURT: TEN DAYS TO FILE A MOTION TO
10        QUASH THE TRANSCRIPTS.
11              NOW, MR. TILLMAN, YOU'RE BACK THERE,
12        YOU'RE EXCUSED.
13              MR. GREY, YOU NEED A SUBPOENA. OKAY.
14        AND MR. DIGGS WILL NEED A SUBPOENA.
15        COMMONWEALTH, I'M SURE, WILL FILE AN ORAL
16        1013.
17              THE TIPSTAFF: YOUR HONOR, REMAND DATE,
18        DECEMBER 20TH, 1003. BACK HERE.
19              THE COURT: ALL RIGHT. MR. GREY, DON'T
20        GO ANYWHERE YET.
21
22              (HEARING CONCLUDED.)
23
24
25
```

Bonnie Smith, RPR, Official Court Reporter
(215) 683-8045

CERTIFICATE

I hereby certify that the proceedings and testimony taken by and before me are contained fully and accurately in the notes of testimony, and that the foregoing is a true and correct transcript of the same.

*Bonnie Smith*
Bonnie Smith
Court Reporter

*August 15, 2002*
Date