IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM TORAIN<br>     Plaintiff | : C.A. #14-1643<br>: |
| vs. | : |
| THE CITY OF PHILADELPHIA, et al.<br>     Defendants | : LEAD DOCKET NO.<br>: 13-2773 |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Defendants' Motion to Preclude the Testimony and Report of Joseph Pollini, and Plaintiff Kareem Torain's Opposition thereto, it is hereby ORDERED that the Defendants' Motion to Preclude is DENIED.

BY THE COURT:

_____
The Honorable R. Barclay Surrick

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM TORAIN | : |
|     Plaintiff | : C.A. #14-1643 |
| vs. | : |
| THE CITY OF PHILADELPHIA, et al. | : LEAD DOCKET NO. |
|     Defendants | : 13-2773 |

**PLAINTIFF KAREEM TORAIN'S OPPOSITION TO DEFENDANTS'
MOTION TO PRECLUDE THE TESTIMONY AND REPORT OF
<u>PLAINTIFF'S EXPERT JOSEPH POLLINI</u>**

Michael Pileggi, Esquire
303 Chestnut Street
Philadelphia, Pa 19106
(215) 627-8516
*Attorney for Plaintiff, Kareem Torain*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM TORAIN<br>Plaintiff<br>vs.<br>THE CITY OF PHILADELPHIA, et al.<br>Defendants | : C.A. #14-1643<br>:<br>:<br>: LEAD DOCKET NO.<br>: 13-2773 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' CITY OF PHILADELPHIA, BRIAN MONAGHAN, SEAN KELLY and GARY SINCLAIR'S MOTION TO PRECLUDE TESTIMONY AND REPORT OF PLAINTIFF'S EXPERT JOSEPH POLLINI**

Plaintiff, by and through counsel, Michael Pileggi, hereby files his Response in Opposition to Defendants, City of Philadelphia, Brian Monaghan, Sean Kelly and Gary Sinclair's Motion to Preclude pursuant to Federal Rules of Evidence 702.

**I. INTRODUCTION**

On January 3, 2022, in accordance with the Court's case management order, Kareem Torain served the Defendants the report of Joseph Pollini. See Expert Report of Joseph Pollini attached hereto as Exhibit "1". Defendants, City of Philadelphia, Police Officers Brian Monaghan, Sean Kelly and Gary Sinclair's[1] Motion to Preclude Plaintiff's expert report as well as any testimony of Joseph Pollini under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (ECF Doc. No. 60). In particular, Defendants move to strike Joseph Pollini's expert report from consideration and exclude Mr. Pollini from offering into evidence any testimony in subsequent proceedings. Specifically, Defendants argue that Mr. Pollini's expert report fails to meet the "fit" requirement of Rule 702 because

his opinions do not fit the facts of the case – the "narrow question of whether or not three officers decided to construct false evidence to spontaneously associate Plaintiff with narcotics activity that was separately surveilled." ECF Doc. No. 60 at 9, 12-13. Defendants' motion is wrong on both the facts and the law. The Defendants elected not to file their own expert report. Discovery is closed and trial is currently scheduled to commence on October 18, 2022.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires the Court to act as a gatekeeper and is applicable to scientific testimony and testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). A court must determine whether an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Rule 702 has a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (*quoting Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). As such, the "rejection of expert testimony is

---

[1] It is obvious at this juncture that the City of Philadelphia is declining to defend Police Officer Brian Reynolds, who is represented by conflict counsel and former Police Officer Jeffrey Walker, who is representing himself.

the exception and not the rule." *Dorman Prods. v. PACCAR, Inc.*, 201 F. Supp. 3d 663, 686 (E.D. Pa. 2016) (*quoting* Fed. R. Evid. 702 Advisory Committee Note).

Courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability and fit. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). A party that wishes to introduce expert testimony bears the burden of demonstrating that the testimony is admissible by a preponderance of the evidence. *Daubert*, 509 U.S. at 593, (*citing Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

First, an expert must be qualified. A qualified expert is required to have specialized knowledge in his or her area of testimony, which may be based in practical experience as well as academic training and credentials. *Elcock*, 233 F.3d at 741. The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; "'at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman....'" *Id.* (*quoting Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert. *See Waldorf*, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education' [ ] qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (*quoting* Fed. R. Evid. 702).

Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda*, 520 F.3d at 244. Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996).

Second, an expert must be reliable. The reliability requirement "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ["*Paoli II*"] (*quoting Daubert*, 509 U.S. at 590). The test of reliability is "flexible" and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 141–42. While there is not a definitive checklist of factors that courts must follow, the Supreme Court has offered several grounds to be considered in determining the reliability of proposed expert testimony. *Daubert*, 509 U.S. at 592–594. The Third Circuit has incorporated these elements into a more comprehensive, but non-exhaustive, set of factors that a District Court must weigh:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and

(8) the non-judicial uses to which the method has been put.

*Paoli II,* 35 F.3d at 742 n. 8.

However, these factors are "simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 152 (3d Cir. 1999). "[R]elevant reliability concerns may focus upon personal knowledge or experience" rather than "scientific foundations." *Id.* at 150.

Third, expert testimony must "fit" the subject matter at issue. Expert testimony fits the subject matter if it assists the trier of fact in understanding the evidence or to determine a fact in issue. *Daubert,* 509 U.S. at 591; *Schneider ex rel Est. of Schneider,* 320 F.3d at 405. "Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" *Oddi v. Ford Motor Co.,* 234 F.3d 136, 145 (3d Cir. 2000) (*quoting Paoli II,* 35 F.3d at 743). However, a Plaintiff does not have to prove his or her case twice. They "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Paoli II,* 35 F.3d at 744. "The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." *Kannankeril,* 128 F.3d at 806.

## III. ARGUMENT

### A. Qualification of Joseph Pollini

As an initial matter, Plaintiff's expert, Joseph Pollini is more than qualified to offer an expert opinion. "To qualify as an expert, Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd.*, 300 F.3d at 335 (*quoting Waldorf*, 142 F.3d at 625). Mr. Pollini is currently a full-time faculty professor at John Jay College of Criminal Justice where he teaches courses at both the undergraduate and graduate level of Police Science and Criminal Justice. He has served as the Police Studies Coordinator and Deputy Chairman of the Law/Police Science and Criminal Justice Administration Department at John Jay College for over 16 years. See a copy of Joseph Pollini's Curriculum Vitae attached hereto as Exhibit "2'.

Mr. Pollini is a retired member of the New York Police Department having served on the police force in various capacities for 33 years. During that period of time, he held the ranks of Police Officer, Investigator, Sergeant, Lieutenant, and Lieutenant Squad Commander. He served in numerous capacities as police officer, detective investigator, patrol sergeant, detective squad sergeant, Lieutenant Squad Commander of the Brooklyn Robbery Squad, 81 Detective Squad and the Cold case Homicide Squad. He has had experience over the years in investigating and arrests in thousands of cases involving assault, robbery, narcotics, kidnapping, homicide and other crimes. He also served as a member of the Hostage Negotiating Team for 17 years, as well as trained members of the FBI on kidnapping investigations tactics. He assisted the United States Marine Corps in developing a community policing program

that was used by Marines in Afghanistan. He has testified in Court numerous times regarding criminal matters and proper police procedures.

Although he did not serve in the Philadelphia Police Department, Joseph Pollini's experience sufficiently qualifies him as an expert with regard to police liability. He utilized a methodology that drew from his own personal knowledge and experience to the facts of this case. As catalogued in his Curriculum Vitae, Joseph Pollini has extensive experience in police procedures during his thirty-three-year career in law enforcement. He has taught in undergraduate and graduate levels in the areas of criminal justice at John Jay College of Criminal Justice and has testified as a police expert in several cases in New York State. Mr. Pollini is more than qualified to offer opinions and testimony with regard to law enforcement practices.

### B. Reliability

The reliability of the proffered expert testimony is determined by a lower standard than the "merits standard of correctness." *In re Paoli II*, 35 F.3d at 744. "[A] judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' *i.e.*, if it is based on the methods and procedures of science....[This standard may be met] even though the judge thinks the opinion to be incorrect." *Id.; see also Heller*, 167 F.3d at 152-53. "[A] district court must, [nevertheless], examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Id.* at 153. If there are good grounds, "[t]he analysis of the [expert's] conclusions themselves is for the trier of fact when the expert is subject to cross-examination." *Kannankeril*, 128 F.3d at 807.

The testimony is considered by the jury only if it is first determined that the testimony will assist the trier of fact; in other words, that there is a "valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 592; *see also In re Paoli II*, 35 F.3d at 743. Since the evidence sought to be precluded here is non-scientific in nature, the factors of *Daubert* and *In re Paoli* provide insufficient guidance for the court to perform its gatekeeping function. In this instance, "[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience." *Kumho*, 526 U.S. at 149. Rule 702, as amended December, 2000, provides that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendment.

Plaintiff's expert here relied on his professional experience, training and skills to reach his conclusions. He reviewed the Complaint and depositions and accompanying exhibits for Plaintiff, Kareem Torain and Defendants Monaghan, Reynolds, Walker, Kelly and Sinclair, the deposition of Ellen Green- Ceisler, Expert Report of Ellen Green-Ceisler and the Integrity and Accountability Office ("IAO") *Enforcement of Narcotics Laws* Report and *Disciplinary System* Report, as well as the Expert Report of R. Paul McCauley.[2] Mr. Pollini also reviewed Philadelphia Police Department ("PPD") files, policies and procedures and testimony from *U.S. v. Dennis Freeman* case, court documents in *McIntyre v. Thomas Liciardello, et al.*, 2020 WL 605717 (Lead Docket, 13-2773) (E.D. Pa., February 7, 2020) and various PPD documents and reports specific to the Torain investigation, arrest and conviction. Mr.

---

[2] Paul McCauley submitted his expert report in the lead NFU case of *James McIntyre v. Thomas Liciardello, et al.*, 2020 WL 605717 (Diamond, J. February 7, 2020, C.A. 13-2773).

Pollini's opinions based on his considerable experience, training and skills to the facts provided to him should be found to have utilized a reliable methodology in this case.

**C. Fit**

This is the requirement that the Defendants takes exception to in arguing that Mr. Pollini's report and testimony should be precluded. The Defendants argue that the expert's "sweeping legal conclusions about the Philadelphia police Department do not fit the specific facts of the case". (ECF Doc. No. 60 at 10). They base this conclusory statement on their own self-serving theory of Plaintiff's case and on an erroneous set of facts. For example, they posit that "[t]his case is [sic] hinges on the narrow question of whether or not three officers decided to construct false evidence to spontaneously associate Plaintiff with narcotics activity that was separately being surveilled". *Id.* at 14-15. First, the case involves five Defendant police officers who all falsified information, documents and testimony in order to wrongfully convict the Plaintiff. Defendants Monaghan, Kelly and Sinclair fail to acknowledge that they were partnered with Jeffrey Walker and Brian Reynolds in this case or that Corporeal Sinclair was required to supervise and prevent the misconduct of his subordinates. The copious evidence of record shows that not only did Corporeal Sinclair fail to prevent the illegal acts of all the Defendants, but rather participated personally in the misconduct. More importantly, they choose to ignore the devasting exculpatory testimony of Jeffrey Walker that all the Defendants participated in the misconduct in this and other cases. Plaintiff has extensively documented all of the falsifications and the personal involvement of each and every one of the Defendants in Plaintiff's

Counterstatement of Undisputed Facts and Response in Opposition to Defendants' Motion for Summary Judgment. See (ECF Doc. No. 61-1).

Second, Plaintiff and the Defendants do not share the same theory of the case. Based on the record, Plaintiff's theory is that these Defendants conspired to arrest and prosecute the Plaintiff because they believed that he was an individual who was involved in a prior investigation that Defendants Reynolds and Walker were involved in (Dennis Freeman). See ECF Doc. No. 61-1¶¶ 136-159). They arrested Plaintiff without probable cause and sought to justify the arrest after the fact, in order to link the Plaintiff to the narcotics organization on 5600 block of West Master Street. *Id.* They submitted false investigative reports and false testimony in an effort to conceal their misconduct.

Here, Mr. Pollini reaches his conclusions by applying his significant experience, training and skills to the facts provided to him. In formulating his opinions and making his report, the expert reviewed numerous materials, including deposition transcripts of all the parties, other experts, Torain's case file, various Police Department directives, Integrity and Accountability ("IAO") Reports, including investigative and audit reports regarding *Enforcement of Narcotics Laws* and *Disciplinary System* within the Philadelphia Police Department and relevant case law (*McIntyre v. Liciardello, et al.*, 2020 WL 605717 (E.D. Pa., Feb. 7, 2020). See *Enforcement of Narcotics Laws* attached hereto as Exhibit "3" and *Disciplinary System* attached hereto as Exhibit "4", respectively. This is an acceptable methodology used by police practices experts. See *Kumho,* 526 U.S. at 149.

### 1. The IAO Reports and the Green-Ceisler Testimony

Defendants also object to Mr. Pollini's reliance on the reports of the IAO as authored by then Director Ellen Green-Ceisler. Defendants argue for preclusion that the reports are from previous litigation and unrelated to the consolidated cases pending in the *McIntyre* litigation. (ECF Doc. No. 60 at p. 6). Defendants are correct that these documents are from previous litigation, but are incorrect that the information derived from the reports and testimony of Ms. Green-Ceisler are irrelevant to the *McIntyre* litigation as well as in this case.

The *Enforcement of Narcotics Laws* Report and the *Disciplinary System* Reports address the specific concerns in this case, and in some instances target some of the same police officers' conduct in this case and are otherwise highly relevant. In sum, the reports demonstrate that the City was on notice during the Torain arrest for the need of adequate training, supervision and discipline to Narcotics officers. The IAO reports constitute public reports and should be admissible under the Federal Rules of Evidence 803(8)(A)(iii)-(B).

### A. The IAO Reports Are Relevant

Under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The IAO Reports — which audited the Philadelphia Police Department Policies and Procedures in a wide range of Narcotic enforcement operations and the disciplinary system — clearly satisfies the requirements of Rule 401. Its conclusions and recommendations bear directly on the probability that the Department had insufficient training

programs, supervisory review, inadequate corruption control, the misuse of informants, failures to investigate, discipline and correct police misconduct which are clearly facts relevant to Plaintiff's *Monell* claims. See Exhibit "1" at ¶¶ 38-51.

### B. The IAO Reports Should Be Admitted Pursuant to Federal Rules of Evidence 803(8)

Hearsay—an out of court statement offered for the truth of the matter asserted—is only admissible as evidence in certain circumstances. Fed. R. Evid. 802 (permitting hearsay where provided for by the Federal Rules of Evidence, statute, or rules prescribed by the Supreme Court of the United States). Federal Rule of Evidence 803 permits the admission of hearsay that consists of "a record or statement of a public office if it sets out [...] in a civil case [...], factual findings from a legally authorized investigation and the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii)-(B).

Both the *Enforcement of Narcotics Laws* Report and the *Disciplinary System* Reports satisfy all the relevant portions of Fed. R. Evid. 803(8). See ECF Doc. No. 61-1 ¶¶ 206-217. There has been no challenge to the legality of Ms. Green-Ceisler's audits or their qualifications as "public statement[s]" within the meaning of the Rule, and the Defendants have not proffered any evidence that would indicate a lack of trustworthiness. Accordingly, the Court should find that the Reports qualify for admission under Fed. R. Evid. 803(8).

### C. The IAO Reports Are Admissible Under Federal Rules of Evidence 702

Rule 702 provides the framework by which a district court evaluates the admissibility of expert testimony. Under the Rule, a witness, qualified "by knowledge, skill, experience, training or education," may testify if his or her testimony is the "product of reliable principles and methods" and he or she has "reliably applied the principles and methods to the facts." Fed. R. Evid. 702. Defendants assert that the Reports should be excluded because the reports are unrelated to the consolidated cases under the lead case *McIntyre v. Liciardello* and were authored many years ago.

In *Clark v. Clabaugh*, 20 F.3d 1290 (3d Cir. 1994), a case that interpreted an earlier but substantially similar version of Rule 803(8), the Third Circuit considered whether the trial court abused its discretion in admitting a report prepared by the Pennsylvania State Police in the wake of racial strife in Hanover, Pennsylvania. *Id.* at 1294. In determining that it was admissible, the Third Circuit noted that the Report, as the product of officers charged with a legal duty to conduct the investigation, "is presumed admissible under 803(8)(C), including its opinions, conclusions and recommendations, unless the defendants demonstrate its untrustworthiness." *Id.* The Court explained further that admission of the report pursuant to 803(8)(C) "does not on its face require that one who undertakes the investigation and authors the report to be qualified as expert before the report becomes admissible." *Id.* However, in order to make a challenge to qualifications, the Court held, a party challenging a report "must come forward with some evidence which would impugn [the report's] trustworthiness." *Id.* at 1295. Ultimately, the Third Circuit upheld the admission of

the report based on the district court's finding that "no special bias impeded a fair investigation or entered into the preparation of [the report]." *Id.*

Like the objecting party in *Clark*, the Defendants here, have failed to offer any evidence that would impugn the impartiality, reliability, or trustworthiness of the investigation. Put simply, Defendant has pointed to absolutely no evidence that Ellen Green-Ceisler did anything that would raise suspicions about the veracity of the IAO Reports she authored.

## IV. CONCLUSION

For the foregoing reasons, the Court should respectfully deny Defendants' Motion to Preclude the testimony and expert report of Joseph Pollini.

/s/ Michael Pileggi
Michael Pileggi
303 Chestnut Street
Philadelphia, Pa 19106
(215) 627 8516
*Attorney for Plaintiff Kareem Torain*