IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM TORAIN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-1643 |
| CITY OF PHILADELPHIA, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                   **JANUARY 12, 2023**

      This civil rights matter arises out of allegations that five Narcotics Field Unit (NFU) officers of the Philadelphia Police Department (PPD) made false statements and observations and fabricated probable cause to substantiate the arrest and prosecution of Plaintiff Kareem Torain, which resulted in his wrongful imprisonment for thirteen years. Plaintiff brings several constitutional claims against the individual defendants and asserts a municipal liability claim against the City of Philadelphia. In support of these claims, Plaintiff has provided the expert report of Joseph A. Pollini. Presently before the Court is Defendants City of Philadelphia, Brian Monaghan, Sean Kelly, and Gary Sinclair's Motion to Preclude the Testimony and Report of Plaintiff's Expert Joseph A. Pollini. (ECF No. 60.) Because Mr. Pollini's expert report does not meet *Daubert*'s requirements of either fit or reliability, we will grant the motion and exclude Mr. Pollini's expert report.

**I.      BACKGROUND**

      Shortly before Plaintiff's arrest, Monaghan and Kelly set up surveillance in the area of 5600 West Master Street in Philadelphia ("5600 Block"). (PPD Arrest Report ("PARS Report"), ECF No. 59-2, Ex. A, at 2.) The surveillance was initiated pursuant to information received from a confidential source about narcotics activity on this block. (*Id*; Monaghan Dep., ECF No.

61-5, Ex. 3, at 29:10-24, 30:1.)  While conducting this surveillance on January 4th, 2001, Monaghan and Kelly observed Plaintiff driving by the 5600 Block in a green Pontiac Bonneville. (Investigation Report, ECF No. 61-4, Ex. 2, at 2.)

Walker, after receiving a description of the vehicle via radio, followed the Bonneville to 1621 N. Conestoga Street and watched Plaintiff enter the building.  (PARS Report at 2.)  Later, Reynolds observed Plaintiff travel to 1628 South 55th Street.  (Investigation Report at 2; Reynolds Dep., ECF No. 61-6, Ex. 4, at 86:11-18.)  Defendants then observed Plaintiff enter the front door of the property at 1628 South 55th Street with a key.  (Reynolds Dep. at 86:11-18). Three individuals, including Darnell Delee (an individual who was observed engaging in narcotics activity at the 5600 Block properties), entered that same building shortly thereafter and exited the building twenty minutes later, with Delee placing a clear bag inside of his jacket. (Investigation Report at 3.)  Plaintiff then left the building and Reynolds pulled him over and arrested him.  (*Id*.)  Reynolds admits that he did not observe Plaintiff doing anything illegal, but was ordered by Monaghan to arrest him based on Walker's observations.  (Reynolds Dep. at 67:7-22.)  No narcotics or contraband were confiscated from Plaintiff.  (*Id*. at 74:11-19.)  Later that day, Defendants entered the 1628 South 55th Street property in order to "secure" it "pending [a] search and seizure warrant."  (*Id*. at 90:21-42, 91:1-5, 92:1-24; Investigation Report at 4.) Defendants seized two amber pill bottles with white caps and one Sentry 1150 safe from that property pursuant to Warrant #99028.[1]  (Property Receipt, ECF No. 61-11, Ex. 9.)

---

[1] The timing of the initial entry into the 1628 South 55th Street property, the seizure of the items, and the issuing of the warrant is disputed. (*See* Memorandum on Motions for Summary Judgment, filed concurrently herewith, at 4-5.)  For the sake of clarity (and because it is not relevant to the instant Motion), we have simplified the facts as they relate to the search and seizure.

Following a bench trial, Plaintiff was convicted of various drug crimes and criminal conspiracy. Plaintiff asserts that the outcome of his trial hinged on false and misleading information contained in the search warrant and supporting affidavit of probable cause, drafted and attested to by the officers, and the testimony of the officers at trial. Following his sentencing, Plaintiff filed several post-sentencing motions asserting that his counsel was ineffective. These were denied. *Torain v. Gavin*, No. 12-3308, 2013 U.S. Dist. LEXIS 92114, at *2 (E.D. Pa. June 28, 2013). He then filed a direct appeal in the Superior Court of Pennsylvania asserting that the trial court erred in several respects. This was also denied. *Id.* Defendant then filed a petition under the Post-Conviction Relief Act (PCRA) in 2006, which was subsequently amended by new counsel in 2007, followed by two supplemental PCRA petitions in 2008 and 2009. *Id.* at 2-3. The PCRA court denied Defendant's PCRA petition without a hearing in 2010. *Id.* at 3. Defendant then filed a notice of appeal to the Superior Court, which affirmed the PCRA court's dismissal in 2011. *Id.* at 4. He then filed a request for allowance of appeal to the Pennsylvania Supreme Court, which was denied a few months later. *Id.*

In 2012, Defendant filed a 2254 petition seeking habeas corpus relief claiming various defects in his trial, including insufficient evidence, a wrongfully denied suppression motion, and ineffective assistance of trial counsel. *Id.* In early 2013, Defendant filed a motion for leave to supplement his 2254 petition, which addressed new reports that the Philadelphia District Attorney had decided not to prosecute new cases requiring the testimony of Officer Reynolds and several other officers, not involved in this matter. *Id.* at 4-5. Several months later, Defendant filed a motion for judgment on the pleadings based on newly discovered evidence; specifically, that Officer Walker was arrested based on allegations that he had made false arrests, planted drugs on suspects, and stolen money from suspects. *Id.* at 5. Plaintiff's conviction was

ultimately reversed as a result of this newly discovered evidence regarding Officers Reynolds and Walker. Plaintiff was released from custody on February 28, 2014.

Based upon these facts, Plaintiff instituted this lawsuit on March 20, 2014, asserting that the officers involved in his arrest and prosecution made false statements and observations in the search warrant affidavit and at trial. Plaintiff's Amended Complaint asserts "false arrest, false imprisonment, malicious prosecution, [4th Amendment], [] access to the Courts, [] due process and equal protection" claims.[2] (Am. Compl., ECF No. 18-1, at ¶ 60.) Defendants now move to preclude Plaintiff's expert report by Mr. Pollini.

## II.     LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and the Federal Rules of Evidence, a trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997). The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. *Id.; see also* Fed. R. Evid. 401. "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir. 2008) (citing *Kannankeril,* 128 F.3d at 806). Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[2] Since the filing of this Motion, Plaintiff has withdrawn and voluntarily dismissed the following claims as to all Defendants: false arrest, false imprisonment, access to courts, and equal protection. (Notice of Voluntary Dismissal, ECF no. 74; Plf. Br. in Opp. to Summary Judgment, ECF No. 61, at 4 n.1.)

The Third Circuit has held that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003). The court is required to exclude opinion testimony that does not meet these three requirements. *Schneider,* 320 F.3d at 404 (*citing Daubert,* 509 U.S. at 592). The proponent of the evidence bears the burden of establishing the existence of each factor by a preponderance of the evidence. *Daubert,* 509 U.S. at 592.

### III.   DISCUSSION

Defendants Monaghan, Kelly, Sinclair, and the City of Philadelphia move to preclude Plaintiff's expert report and testimony of Mr. Pollini. They argue the report fails to satisfy all three *Daubert* requirements of fit, reliability, and qualification. We agree that Mr. Pollini's expert report fails both the fit and reliability requirements.[3] Therefore, the report and testimony are not admissible, and the Motion will be granted.

#### A.   Fit

We will begin with the fit requirement. For expert testimony to meet the fit requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citations and internal quotation marks omitted). Plaintiff, as the proponent of the evidence, bears the burden of establishing that his expert's report meets this requirement. Here, Plaintiff makes no arguments as to how Mr. Pollini's report is relevant or fits to the facts of this case. Rather, he spends the entire "fit" portion of his opposition arguing the admissibility of the

---

[3] Because we find that Mr. Pollini's report fails on two of the three *Daubert* requirements, we need not reach the issue of whether he meets the qualification requirement as well.

underlying reports Mr. Pollini relied on in making his report (the IAO Reports and the testimony of Ellen Green-Ceisler). (Plf. Br. in Opp., ECF No. 62, at 11-16.) However, the admissibility of these documents is not the subject of the instant motion, and their admissibility does not in any way speak to the fit of Mr. Pollini's expert testimony in this case.[4]

Plaintiff's failure to present any arguments on the fit of Mr. Pollini's expert report is particularly troubling here because nearly the entire report relates to the issue of misuse of confidential informants within the PPD, which we have already ruled is irrelevant to the facts of this case. (*See* Order on Plf.'s Mot. to Compel, ECF No. 57, at 3.) In Plaintiff's own words, "[t]his case involves five Defendant police officers who all falsified information, documents and testimony in order to wrongfully convict the Plaintiff." (Plf. Br. in Opp. at 11.) The case also includes municipal liability claims against the City of Philadelphia on a custom theory and failure to supervise and discipline theories, all based on the fabrication of evidence and probable cause in the PPD NFU. Therefore, in order to meet the "fit" requirement of *Daubert*, Plaintiff's expert report should discuss these issues. It does not.

For example, in the "list of violations" that Mr. Pollini identifies in the NFU, nine of fourteen explicitly reference misuse of confidential informants or sources. (Expert Report of Joseph A. Pollini, ECF No. 60-1, at 19.) The remaining five, upon further elaboration in the body of the report, are also analyzed in the context of the misuse of informants or sources. (*Id*. at 20, ¶ 25; 22, ¶ 28-29; 26, ¶ 33; 27, ¶ 34.) In fact, the entire expert report discusses violations as they relate to confidential informants, until the conclusion section, where Mr. Pollini lists several unsupported conclusions about fabrication of evidence, probable cause, and search and seizure

---

[4] However, we do rule on the admissibility of these documents in our Memorandum on Defendants' Motions for Summary Judgment, as is required before they can be considered part of the record at that stage. (See Memorandum on Motions for Summary Judgment at n.7.)

warrants.  Even in his list of conclusions, nearly half directly relate to the misuse of confidential informants or are solely supported and analyzed in the report in regard to confidential informants.  (*Id*. at 34-35, ¶ 39-40, 42-43, 45-46.)  The remaining conclusions are relevant to the issues at hand, but they are not supported or discussed at all in the report.  (*Id*. at ¶ 38, 41, 44, 47-51.)  For example, nowhere in the report does Mr. Pollini discuss a failure to follow "standard police training, policy, procedures, and practices" (¶ 38, 49), a lack of routine integrity tests for NFU officers (¶ 41), "deficient investigations, supervision, and discipline" (¶ 44, 47, 50), "failure to have appropriate training . . . and supervision regarding reasonable suspicion, probable cause, . . . and search warrants" (¶ 48), or customs in the PPD relating to "fabrication [and] unlawful searches and seizures" (¶ 51) in a context other than as they relate to confidential informants.

While Plaintiff fails to address why confidential informants are relevant to this matter, he does state the following as his theory of the case: "[t]hese Defendants conspired to arrest and prosecute the Plaintiff because they believed that he was an individual who was involved in a prior investigation that Defendant Reynolds and Walker were involved in (Dennis Freeman). They arrested Plaintiff without probable cause and sought to justify the arrest after the fact, in order to link Plaintiff to the narcotics organization of 5600 Block of West Master Street."  (Plf. Br. in Opp. at 12.)  While not explicitly stated, we presume that Plaintiff's theory is that the alleged connection between these investigations provides the nexus for the relevance of confidential informants here.

In previous filings, Plaintiff has alleged that his investigation was a "continuation" of the Freeman investigation, in which a confidential source gave a tip and was allegedly misused.[5]

---

[5] We reiterate, Plaintiff does not make this argument directly in his opposition to the instant Motion.  Rather, we understand this to be his theory based on previous arguments and filings.

(*See* Plf. Mot. Compel, ECF No. 49, at 6-8; Expert Report at 29.)  Plaintiff asserts that the connection between the two investigations lies with the green Pontiac Bonneville that Plaintiff was driving in this case when he was observed and followed by Defendants.  Specifically, he asserts that the same vehicle was first observed in the Freeman investigation, driven by a black male, who was never identified in connection with that investigation.  Therefore, Plaintiff argues, Reynolds and Walker made the connection between the green Bonneville driven by the unidentified black male in the Freeman investigation and Plaintiff driving the green Bonneville in this matter, believing that Plaintiff was the same unidentified black male from the Freeman investigation.  However, Plaintiff cites no record evidence—and we have found none—that supports this theory of the case.  In fact, Reynolds specifically testified at his deposition that he did *not* make this connection when he first observed plaintiff, followed him, and arrested him.  (Reynolds Dep., ECF No. 61-6, Ex. 4, at 180:24, 181:1-8.)

      Plaintiff's assertions that the confidential informant who gave a tip in the Freeman investigation had anything to do with his case are mere speculation.  The probable cause challenges raised in this case relate directly to the reported observations by Defendants leading up to Plaintiff's arrest.  There is no evidence that Defendants relied on a confidential informant's information, whether in this matter or in another matter, to identify Plaintiff or effectuate his arrest.  Accordingly, we find that the misuse of confidential informants does not relate to any issue in the case, is not relevant, and therefore will not be helpful to the jury.  For these reasons, Mr. Pollini's expert report does not meet the "fit" requirement and fails the *Daubert* test for admissibility.

---

For the sake of completeness, we address the substance of this argument even though Plaintiff fails to raise it in this particular filing.

B.     Reliability

Mr. Pollini's report fails the "reliability" requirement as well.  In order for an expert report to be deemed reliable, it must be grounded in acceptable principles and methodology and "provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness reached them." Fed. R. Evid. 702; *Jackson v. Mill*, No. 96-3751, 1997 U.S. Dist. LEXIS 17499, at *3 (E.D. Pa. Nov. 4, 1997).  Mr. Pollini offers no analysis or explanation for how he arrives at his conclusions, and there does not appear to be any discernible methodology applied by Mr. Pollini in offering his opinions.  The vast majority of his report is a clear copy and paste from record documents (depositions, investigation reports) and Ellen Green-Ceisler's expert report from a separate litigation.  While it is well-established that experts may rely on record evidence and other experts' opinions in forming their own, even if they are not in and of themselves admissible, experts may not be "used as a vehicle for circumventing the rules of hearsay." *Wisconsin v. Indivior Inv.*, No. 13-2445, 2020 U.S. Dist. LEXIS 219949, at *26 (E.D. Pa. Nov. 24, 2020).  Experts may not simply "parrot" the ideas of other experts and should not "become the mouthpiece of the witness on whose statements the expert purports to base his opinion."  *Id*; *Hunter-McLeod v. Dollar Gen.*, No. 13-3113, 204 U.S. Dist. LEXIS 129177, at *16 (E.D. Pa. Sep. 16, 2014).

This is exactly the case here.  For example, from page four to eighteen of Mr. Pollini's report, the report quotes—essentially word-for-word—the Investigation Report, Walker's deposition transcript, Walker's affidavit, and Monaghan's deposition transcript.  (Expert Report at 4-18.)  Even more striking, pages twenty-nine to thirty-four is a near complete copy of the Integrity and Accountability Office's (IAO) Enforcement of Narcotics Laws Report and Ellen Green-Ceisler's deposition from a separate litigation (which we have already ruled inadmissible),

with little to no analysis by Mr. Pollini.  (*Compare* Expert Report at 29-34 *with* IAO Enforcement of Narcotics Laws Report, ECF No. 61-25 *and* Green-Ceisler Dep., ECF No. 61-26.)  It is clear that Mr. Pollini is simply parroting the opinions of another expert and would become a mouthpiece for other witnesses that he relies on to allegedly base his opinions.  For these reasons, Mr. Pollini's report fails the reliability prong of the *Daubert* test as well and is therefore inadmissible.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's expert report by Mr. Pollini does not meet the admissibility requirements of *Daubert* and we grant the Motion to preclude the report.  An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**