IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM TORAIN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-1643 |
| CITY OF PHILADELPHIA, ET AL. | : | |

MEMORANDUM

**SURRICK, J.**                                                                                    **April 27, 2023**

In this civil rights action, Plaintiff Kareem Torain alleges that Defendants Jeffrey Walker, Brian Reynolds, and Brian Monaghan—current and former Philadelphia Police Officers—maliciously prosecuted him without probable cause, in violation of Section 1983 and the Fourteenth Amendment. He also claims that the City of Philadelphia's custom of municipal acquiescence in the alleged misconduct and failure to discipline the misconduct, caused this violation of his constitutional rights. On March 15, 2023, Plaintiff served a subpoena for the in-person testimony of witness Staff Inspector Francis Healy, Esq. at trial on May 5, 2023. The City has moved to quash the subpoena, on the basis that the testimony Plaintiff is seeking is irrelevant, cumulative, may include matters of attorney-client privilege or work product, and because Plaintiff failed to disclose Mr. Healy in his Rule 26(a) Disclosures. For the following reasons, the Motion to Quash will be denied.

**I.      BACKGROUND**

Plaintiff asserts both individual liability claims against Defendant Officers and a municipal liability claim against the City of Philadelphia under Section 1983 and the Fourteenth Amendment. At issue in this Motion is only the municipal liability claim. For this reason, we will forego a factual recitation regarding the individual liability claims. A complete recitation of

the facts as to the individual Defendants can be found in our Memorandum dealing with summary judgment. (Memo. on Motions for Summary Judgment, ECF No. 79, at 3-5.) The relevant factual summary for the municipal liability claim follows.

In the late 1980s and early 1990s, the Narcotics Field Unit (NFU) of the Philadelphia Police Department (PPD) systemically violated citizens' civil rights, stole money and drugs, planted evidence on suspects, fabricated the legal basis for search and seizure warrants, and committed perjury. (PPD Integrity and Accountability Office (IAO) Enforcement of Narcotics Laws Report, ECF No. 61-25, at 3.) In 1995, six NFU officers were jailed, several hundred criminal convictions were overturned, and dozens of lawsuits were commenced against the City of Philadelphia. (*Id*.) As a result of the settlement of a class action lawsuit, the City created the IAO to monitor and audit PPD policies, practices, and operations as they relate to the detection of misconduct and corruption. (*Id*. at 3-4.) The IAO conducted a comprehensive audit and assessment of the NFU between the years of 1997 and 2002, with its findings summarized in the 2002 Enforcement of Narcotics Laws Report. It also investigated the PPD's disciplinary system between the years of 2000 and 2002, with its findings summarized in the 2003 Disciplinary Systems Report. These facts and reports form the basis of Plaintiff's municipal liability claim.[1] Specifically, Plaintiff alleges that the City was aware of NFU officers repeatedly concealing exculpatory evidence and fabricating evidence to support arrests and prosecutions and that it failed to take precautions against such violations in the future, which in part led to his injury.

In further support of these claims, Plaintiff subpoenaed Staff Inspector Healy on March 15, 2023, to elicit his testimony at trial regarding his personal knowledge of the series of events

---

[1] Plaintiff's remaining theories for municipal liability in this matter are limited to the custom theory and failure to supervise or discipline theory. (*See* Memo. on Motions for Summary Judgment at 15-23.)

that triggered the 39th District scandal, the fallout from the hundreds of arrests and prosecutions based on fabricated evidence and malicious prosecution claims, and the resulting creation of the IAO and subsequent reports.  Mr. Healy has served in a special advisory capacity to the Police Commissioner since May of 1998.  Significantly, he served in this role throughout the relevant years when the corruption in the NFU, the creation of the IAO, and production of the IAO reports were ongoing, as well as during the time when Plaintiff was arrested and prosecuted.

The City now moves to quash the subpoena directed to Mr. Healy, asserting that the testimony to be elicited from him at trial is irrelevant and cumulative, that he has no personal knowledge, that his testimony would involve inadmissible privilege and work product, and because Plaintiff failed to disclose him as a witness in his Rule 26 disclosures.  For the reasons stated herein, the Motion will be denied.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 establishes the rules for subpoenas served upon individuals and entities that are not parties to the underlying lawsuit.  Fed. R. Civ. P. 45.  "A subpoena under Rule 45 must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."  *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (citation and internal quotation marks omitted).  Therefore, "[i]n cases involving a trial subpoena, the first inquiry . . . [is] whether the proposed testimony is relevant and admissible." *Blue Gentian v. Tristar Prod., Inc.*, No. 13-1758, 2019 WL 13165269, at *2 (D.N.J. Jan. 18, 2019).  If the subpoena is within the general scope of discovery, then the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena.  *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). Courts are required to quash or modify a subpoena that:

>(i) fails to allow a reasonable time to comply;
>(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).  The decision to quash a subpoena under Rule 45 is subject to a district court's discretion.  *Wedgewood Vill. Pharm., Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005) ("We review the denial of a motion to quash [a] . . . subpoena for abuse of discretion.").

### III.  DISCUSSION

In its Motion, the City makes several arguments for why the subpoena directed to Mr. Healy should be quashed: because the testimony is irrelevant or cumulative, Mr. Healy does not have personal knowledge, his testimony may involve privilege or work product, and because Plaintiff failed to disclose Mr. Healy in his Rule 26 disclosures.  For the reasons stated herein, we conclude that Mr. Healy's testimony is relevant, not cumulative, and that he has personal knowledge.  Moreover, we are satisfied that any attorney-client privilege or work product materials that may arise during Mr. Healy's testimony at trial can be dealt with by way of objection.  Finally, we find that Plaintiff's failure to disclose Mr. Healy in his Rule 26 disclosures was harmless, as no prejudice will result.  For these reasons, the Motion will be denied.

#### A.  Mr. Healy's Testimony is Relevant and Otherwise Admissible

In support of their Motion to Quash, Defendants assert that the subpoena should be quashed because the testimony it elicits does not meet the basic requirements of admissibility. Specifically, Defendants argue that Mr. Healy has no relevant personal knowledge that would be admissible at trial.  Federal Rule of Evidence 602 requires that lay witnesses have first-hand

perceptions of the events which form the basis of their testimony. Here, we find that Mr. Healy has first-hand knowledge of the facts and events about which Plaintiff intends to elicit his testimony. Plaintiff proffers that Mr. Healy has personal knowledge as to the "series of events that triggered the 39th District scandal, the fallout from the commencement of hundreds of arrests and prosecutions based upon fabricated evidence[,]" along with the "factual historical basis of events leading up to and including the formation of the IAO, as well as the facts underlying the two reports issued by the IAO[,]" and other "evidence that suggests the City knew of police officers that regularly fabricated probable cause." (Pl. Br. in Opp., ECF No. 123, at 4.) Mr. Healy's personal knowledge of these facts and events stems from his position as the Special Advisor to the Police Commissioner, which he has held since May of 1998.[2] This testimony is relevant, as it would have a tendency to make it more likely that the City was on notice of the widespread misconduct in the NFU and that the City tolerated it during the years before, during, and after Plaintiff's arrest. Moreover, such testimony supports and is very relevant to Plaintiff's municipal lability claim. Therefore, we find that Mr. Healy does have relevant personal knowledge of facts that would support Plaintiff's municipal liability claim.

Next, Defendants assert that Mr. Healy's testimony will be cumulative and is therefore unnecessary. Federal Rule of Evidence 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Here, Defendants assert that Plaintiff's witness, Mr. Healy, would be cumulative

---

[2] Plaintiff also asserts that Mr. Healy held this position during—and therefore has personal knowledge of—the drafting and issuance of the reports by Ellen Green-Ceisler. While this may be true, the Court reminds the parties at this juncture that we have already ruled that these reports, and any reference to them, are inadmissible at trial. (Memorandum on Motions for Summary Judgment, ECF No. 79, at 16 n.7 (holding that the Green-Ceisler Expert Report and Deposition are inadmissible hearsay).) Therefore, Plaintiff should not elicit any testimony from Mr. Healy at trial regarding these reports.

because they have designated their own witness—Chief Inspector Flacco—as their Rule 30(b)(6) witness who will testify on the City's behalf as to institutional knowledge and procedures. Defendants argue that Mr. Flacco will testify about the IAO reports and the procedures in place at the time of Plaintiff's arrest and prosecution. Therefore, they assert, any historical or background testimony by Plaintiff's witness, Mr. Healy, based upon the IAO reports would be cumulative to Mr. Flacco's testimony and therefore should be excluded.

Plaintiff has the burden of proving his claims to the jury. He therefore must offer evidence and testimony to establish the facts that support his claim. Plaintiff has every right to present the testimony of his choice to support his municipal liability claim. In this instance, Plaintiff believes that Mr. Healy's experience as the Special Advisor to the Police Commissioner provides the basis for his testimony regarding the history of misconduct in the PPD NFU, the creation of the IAO and subsequent reports, and how the City handled misconduct by the officers, which he plans to use to build his municipal liability claim against the City. Simply because the Defendants assert there will be overlap between their own witness—Mr. Flacco— and Plaintiff's witness does not provide a basis upon which to automatically preclude the testimony of Plaintiff's witness. We reject this argument.

   **B.**  **Privilege and Work Product Concerns May Be Addressed at Trial**

Next, Defendants assert that Mr. Healy's testimony presents a risk of implicating attorney-client privilege and work product and, therefore, that the subpoena should be quashed. We disagree. While we agree that any privileged material or work product are generally not admissible at trial, it is not appropriate at this juncture to quash a subpoena and preclude the entire testimony of a witness on the basis that it *might* involve privilege concerns. Plaintiff has advised that he does not intend to question Mr. Healy about any facts that might implicate

privilege. The most appropriate course of action at this juncture is to address these concerns via objections during trial. Defendants, of course, are free to renew their privilege or work product-based objections at trial during Mr. Healy's testimony and the Court will rule on them at that time.

### C. Plaintiff's Failure to Disclose Mr. Healy Under Rule 26(a) was Harmless

Finally, Defendants argue that the subpoena for Mr. Healy's testimony at trial should be quashed because Plaintiff failed to disclose Mr. Healy as a witness in his Rule 26 Disclosures. Defendants assert that this failure surprised and will prejudice them at trial, due to the lack of notice. Under Federal Rule of Civil Procedure 26(a)(1)(A)(i), all parties must disclose the name and information of any "individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Further, under Federal Rule of Civil Procedure 37(c)(1), if a party fails to identify a witness as required by Rule 26(a), that "party is not allowed to use that . . . witness . . . at trial, unless the failure was substantially justified or is harmless." In determining whether a failure to disclose under Rule 26 is harmless, the court should consider the following factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Here, we find that because Plaintiff previously subpoenaed Mr. Healy in early February of 2023 (nearly 3 months before the currently scheduled trial), Defendants were on notice of Plaintiff's intent to use Mr. Healy as a witness and, therefore, Plaintiff's failure to disclose him under Rule 26 was harmless in this case.

In making this determination, we first analyze the prejudice or surprise to the City caused by Plaintiff's failure to disclose Mr. Healy and the ability to cure the prejudice. Under these circumstances, there is little prejudice to the City, as they were previously on notice of Plaintiff's intent to use Mr. Healy as a witness at trial. On February 6, 2023, in advance of the previously scheduled February 21, 2023 trial date, Plaintiff first subpoenaed Mr. Healy. The City received the subpoena from Plaintiff via email and responded with various objections. The trial date was then continued to the current trial date of May 2, 2023. From the parties' submissions, it appears nothing further was communicated about the February 6 subpoena. Plaintiff then re-subpoenaed Mr. Healy on March 15, 2023. Defendants then filed the instant Motion to Quash nearly one month later, arguing prejudice and surprise due to lack of notice. However, Defendants could not have been surprised by the March 15, 2023 subpoena. Even though trial was postponed, Defendants were on notice of Plaintiff's intent to use Mr. Healy as a witness and could have brought the matter—specifically, Plaintiff's failure to disclose Mr. Healy under Rule 26—to the Court via a Motion under Rule 37. Defendants had the opportunity to act when they realized Plaintiff was planning to use a witness at trial that had not previously been disclosed, and they failed to do so for nearly three months.

It is certainly true that, had the trial gone forward in February, Defendants would have been prejudiced by Plaintiff's failure to disclose and late identification of Mr. Healy as a witness. However, Defendants were no longer surprised by Plaintiff's intent to use Mr. Healy as a witness when he was subpoenaed a second time. Any prejudice is significantly diminished now. They had nearly 3 months between the February 6 subpoena and the instant trial to either depose Mr. Healy or bring the matter to the Court's attention. This is compounded by the fact that

Defendants waited nearly a month after the March 15 subpoena to make this Motion, when they had already expressed these same objections in February.

Next, we consider whether allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court. Allowing Mr. Healy to testify would not disrupt the orderly or efficient trial of this case. Moreover, it will not disrupt the orderly trial of other cases in this court. Permitting Mr. Healy to testify will not encourage the late identification or non-disclosure of witnesses in other cases.

Finally, we will consider whether there was any bad faith or willfulness in Plaintiff's failure to comply with his discovery obligations. While Plaintiff does not address his failure to disclose Mr. Healy, Defendants also do not point to any evidence of bad faith or willfulness here. Clearly this factor would have been more relevant had this Motion been made in February, but because Defendants have been on notice of Plaintiff's intent to call Mr. Healy at trial for several months, it has minimal relevance in our present analysis.

For these reasons, we find that Plaintiff's failure to disclose Mr. Healy under Rule 26(a) was harmless, as Defendants were on notice for several months of Plaintiff's intent to call him as a witness at trial.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Quash will be denied. An appropriate Order follows.

BY THE COURT:

 /s/ R. Barclay Surrick
**R. BARCLAY SURRICK, J.**